## THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| STEVE SNYDER-HILL, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02993 |
| v. | Judge Michael H. Watson |
| | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |

## PLAINTIFFS' MOTION TO ADMIT PERKINS COIE REPORT

Pursuant to Federal Rules of Evidence 103 and 104, Plaintiffs Steve Snyder-Hill et al. hereby move this Court to hold that the report issued by Perkins Coie LLP in 2019 regarding Dr. Strauss's abuse and OSU's knowledge thereof is admissible. The grounds for this Motion are set forth more fully in the accompanying Memorandum of Law in Support.

Dated: December 21, 2023
      New York, New York

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP

By: /s/ Sonya Levitova
Ilann M. Maazel (admitted *pro hac vice*)
Debra L. Greenberger (admitted *pro hac vice*)
Sonya Levitova (admitted *pro hac vice*)
600 Fifth Avenue
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: slevitova@ecbawm.com

SCOTT ELLIOTT SMITH, LPA
Scott E. Smith (0003749)
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700

1

Fax: (614) 486-4987
E-Mail:ses@sestriallaw.com

PUBLIC JUSTICE
Adele P. Kimmel (admitted *pro hac vice*)
Alexandra Brodsky (admitted *pro hac vice*)
1620 L Street, NW, Suite
630 Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net

*Attorneys for Plaintiffs*

**THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| STEVE SNYDER-HILL, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02993 |
| v. | Judge Michael H. Watson |
| | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ADMIT
PERKINS COIE REPORT**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

Plaintiffs submit this memorandum of law in support of their motion to hold that the 2019 report issued by Perkins Coie LLP about OSU's knowledge of Dr. Strauss's abuse is admissible.

## PRELIMINARY STATEMENT

In April 2018, approximately 40 years after students first began complaining about Dr. Strauss's abuse, OSU announced that it was opening an investigation into the allegations of his misconduct dating back to the 1970s and OSU's knowledge of that abuse. OSU's counsel then hired Perkins Coie LLP to conduct that investigation, which resulted in a 182-page report by Perkins Coie documenting Dr. Strauss's sexual abuse, OSU's knowledge of that abuse, and its inaction ("the Perkins Coie Report" or "the Report").[1] Perkins Coie has stated in related litigation that it acted as an agent of OSU's attorneys in preparing the Report. The Report concluded that Dr. Strauss sexually abused at least 177 former students and that OSU personnel at the time knew of concerns about Dr. Strauss's conduct but failed to investigate or act meaningfully in response. Based on the Report's conclusions, in 2019 and 2020, OSU's president condemned "Strauss' reprehensible conduct and the university's failure at the time to prevent the abuse," took responsibility for OSU's "unacceptable" "fundamental failure at the time to prevent this abuse," admitted Dr. Strauss abused at least 177 former students, and apologized to Dr. Strauss's victims— all statements accepting the Report's findings as true and adopting them. Having taken such positions publicly, the Federal Rules of Evidence bar OSU from distancing itself from the Report's findings in this litigation.

Because Plaintiffs contend that OSU was aware that Dr. Strauss was acting inappropriately but failed to investigate, remedy, or respond to those complaints—precisely the conclusion reached

---

[1] Caryn Trombino & Markus Funk, Perkins Coie LLP, *Report of the Independent Investigation: Sexual Abuse Committed by Dr. Richard Strauss at The Ohio State University* (May 15, 2019) [hereinafter "Report"].

1

by the Report—the Report is highly relevant to a determination of OSU's liability. As a party's statement, the Report is not hearsay under Federal Rule of Evidence 801(d)(2). OSU adopted the Report through its public statements supporting the Report's findings—and courts have admitted investigative reports as party admissions under Rule 801(d)(2)(B). Because Perkins Coie acted as OSU's agent in issuing the Report and OSU authorized Perkins Coie to issue the Report, it is also admissible under Rule 801(d)(2)(C) and (D), consistent with caselaw holding attorney and expert statements admissible against a party. Finally, even if the Report is deemed hearsay, Rule 807's residual exception supports admission given the Report's trustworthiness. Resolving this threshold issue of admissibility would conserve the Court's and the parties' resources by narrowing discovery and focusing necessary discovery on the truly disputed issues.

## FACTS

In April 2018, OSU requested that an outside investigator be appointed to look into allegations of sexual misconduct by Dr. Strauss and said it would "report the outcome of the investigation publicly upon its completion."[2] A month later, OSU announced that the outside firm originally appointed to investigate at its request would not be able to continue due to conflicts of interest, and that Perkins Coie, engaged by OSU's appointed counsel Porter Wright Morris & Arthur LLP, would take over the investigation.[3] The two partners leading the investigative team were Markus Funk, a former federal prosecutor, and Caryn Trombino, a former federal

---

[2] Ohio St. Univ., *Investigation underway into allegations of sexual misconduct against former wrestling team physician* (Apr. 5, 2018), https://news.osu.edu/investigation-underway-into-allegations-of-sexual-misconduct-against-former-wrestling-team-physician/.

[3] *See* Ohio St. Univ., *Ohio State shares updates on independent investigation of allegations involving former university physician* (May 3, 2018), https://news.osu.edu/ohio-state-shares-updates-on-independent-investigation-of-allegations-involving-former-university-physician/.

government ethics attorney; the two had "extensive relevant experience."[4] Over the next year, Perkins Coie investigated and drew factual conclusions on "two fronts": (1) allegations that "Strauss committed acts of sexual misconduct against members of the OSU community while he was employed by the University"; and (2) OSU's "knowledge of such allegations against Strauss" during that time.[5] The firm itself described the investigation as "made exponentially more complex by the historical nature of the conduct in question, the resulting limitations in availability of numerous key witnesses and records, and the inherently personal and sensitive nature of the subject matter."[6]

After reviewing thousands of pages of documents (over 30 gigabytes of data in total) and conducting approximately 600 interviews with 520 different individuals, Perkins Coie finalized and issued the Report on May 15, 2019.[7] The investigation cost $6.2 million.[8] As Perkins Coie explained, "[t]he realities of investigating 'historical' conduct—as opposed to conduct that occurred within the last two decades—presented numerous logistical and practical challenges." The investigative team "piec[ed] together information that was dispersed across various records . . . in places such as the University Archives, or . . . obtained in witness interviews."[9] The Report was completed only with OSU's "concerted efforts to accommodate" Perkins Coie: OSU provided Perkins Coie with "significant assistance" in identifying and locating former personnel

---

[4] *Id.*

[5] Report at 1.

[6] *Id.* at 8-9.

[7] *Id.* at 17-18.

[8] Jennifer Smola, *Sex abuse probe costs OSU $6.2M*, Columbus Dispatch (updated June 7, 2019), https://www.dispatch.com/story/news/education/campus/2019/06/07/sex-abuse-probe-costs-osu/4949089007/.

[9] Report at 16.

believed to have relevant information, encouraged those employees to cooperate, and provided Perkins Coie with "complete access to University records, and to current University personnel," including access to more than 825 boxes of hard-copy records.[10]

The Report concluded that Dr. Strauss sexually abused at least 177 former students during his employment at OSU from 1978 to 1998, and that OSU personnel at the time knew of concerns about Dr. Strauss's conduct as early as 1979 but failed to investigate or act meaningfully in response until 1996.[11] Over 50 members of the OSU Athletics Department staff during Strauss's time at OSU corroborated student accounts of the abuse; for instance, at least 4 described reports made to Head Team Physician Dr. Bob Murphy, 6 described reports made to Head Team Physician Dr. John Lombardo, and *22* coaches described their awareness of rumors or complaints about Strauss dating back to the late 1970s.[12]

When the Report was published, OSU began acknowledging that it had failed to prevent Dr. Strauss's abuse. In a May 17, 2019 message to the OSU community about the Report (also included in a public news release), then-OSU President Drake stated for the first time that the "institution's fundamental failure at the time to prevent this abuse was unacceptable—as were the inadequate efforts to thoroughly investigate complaints raised by students and staff members."[13] He wrote to alumni the same day that "Strauss' actions and the university's inaction at the time were unacceptable," and offered, "*[o]n behalf of Ohio State*," "profound regret and sincere

---

[10] *Id.* at 8, 18.

[11] *Id.* at 1-4.

[12] *Id.* at 88, 100-113.

[13] Ohio St. Univ., *Independent investigation finds Ohio State doctor Richard Strauss abused students from 1979 to 1998* (May 17, 2019), https://news.osu.edu/independent-investigation-finds-ohio-state-doctor-richard-strauss-abused-students-from-1979-to-1998.

apologies to each person who endured Strauss' abuse."[14] A subsequent May 31, 2019 news release about OSU's Board of Trustees' decision to revoke Dr. Strauss's emeritus status also mentioned the Report after describing Dr. Strauss as having "sexually abused at least 177 former students during his time at Ohio State from 1978 through 1998"—adopting the Report's conclusion about Dr. Strauss's abusing students.[15] And in 2020, President Drake again emphasized in multiple public news releases that "Strauss' conduct was reprehensible, . . . the university's failures at the time are completely unacceptable,"[16] and "[t]he university of decades ago failed these individuals – our students, alumni and members of the Buckeye community."[17] OSU subsequently convened a Task Force on Sexual Abuse, which was "created as part of the response to the abusive actions of Richard Strauss."[18]

## ARGUMENT

## I.    THE COURT SHOULD RESOLVE THIS MOTION IN LIMINE NOW TO MANAGE DISCOVERY EFFICIENTLY

A motion in limine is a pre-trial "request for guidance by the court regarding an evidentiary question," and in limine orders can exclude evidence or, as here, include it. *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984); *see Braun v. Coulter Ventures*,

---

[14] President Michael V. Drake, Ohio St. Univ., *A Message from President Drake: Strauss Investigation Update* (May 17, 2019), https://president.osu.edu/strauss-update-alumni-may-2019 (emphasis added).

[15] Ohio St. Univ., *Ohio State University trustees revoke Richard Strauss' emeritus status, approve construction projects* (May 31, 2019), https://news.osu.edu/ohio-state-university-trustees-revoke-richard-strauss-emeritus-status-approve-construction-projects/; Report at 1.

[16] Ohio St. Univ., *Ohio State announces settlement of 11 of 18 lawsuits brought by survivors of deceased sex abuser Richard Strauss* (Mar. 6, 2020), https://news.osu.edu/ohio-state-announces-settlement-of-11-of-18-lawsuits-brought-by-survivors-of-deceased-sex-abuser-richard-strauss/.

[17] Ohio St. Univ., *Ohio State, 162 survivors finalize $40.9 million settlement in Strauss case* (May 8, 2020), https://news.osu.edu/ohio-state-162-survivors-finalize-409-million-settlement-in-strauss-case/.

[18] Ohio St. Univ. Task Force on Sexual Abuse, *Report*, 52 (Nov. 5, 2020), https://www.compliance.osu.edu/assets/resources/task_force_report.pdf.

*LLC*, No. 2:19-cv-05050, 2023 WL 348225, at *1 (S.D. Ohio Jan. 20, 2023). Rulings on admissibility need not be deferred until the eve of trial; courts may "deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); s*ee also* Fed. Prac. & Proc. Evid. § 5037.18 n.26 (2d ed.) ("Lawyers seek advance rulings to help them plan their case for trial[.]").

Rather than asking the Court to rule on "broad categories of evidence," a disfavored practice, Plaintiffs' request to resolve the Report's admissibility at this juncture is a narrow, targeted effort to avoid needless discovery. *Sperberger*, 519 F.2d at 712. As Plaintiffs explained in the parties' joint Rule 26(f) report, *see* ECF No. 14, the Report's admissibility is a threshold issue. The Report is lengthy, exhaustive, and supported by hundreds of interviews and thousands of pages of underlying documents; its conclusions support Plaintiffs' claims against OSU. If Plaintiffs are required to recreate Perkins Coie's investigation, discovery will take *three times as long* as it will if the Report is admitted into evidence. Admitting the Report will significantly reduce Plaintiffs' need to establish OSU's knowledge of Dr. Strauss's abuse on an employee-by-employee basis. For instance, the Report lists numerous OSU personnel who knew of but failed to act on Dr. Strauss's abuse; in the absence of the desired in limine ruling, Plaintiff will need to depose each of the employees so named, as well as other persons who can corroborate those employees' knowledge. Such an approach is far less efficient than admitting the Report, which reached succinct conclusions on employees' knowledge. *See, e.g.*, Report at 88-89 ("More than 50 individuals who were members of the OSU Athletics Department staff during Strauss' time at the University corroborated . . . student accounts" of the "open secret" of "Strauss' behavior," which was raised to Athletics Department administrators including Assistant and Associate Athletic Directors, Head Team Physicians, and a Head Athletic Trainer).

The Court has already recognized the import of streamlining discovery in this case by approving Plaintiffs' proposal to proceed with discovery using a bellwether approach for Plaintiff-focused discovery. Resolving the Report's admissibility now will equivalently allow for efficient handling of defendant-focused discovery. OSU's knowledge about Dr. Strauss's abuse is common to each Plaintiff and the Report answers that question. There is no need for Plaintiffs to reinvent the proverbial 182-page wheel.

Because the Report is admissible and the questions of its relevance, foundation, and potential prejudice are easily resolved, deferring a ruling on its admissibility until trial serves no purpose. *Cf. Braun*, 2023 WL 348225, at *1 ("[W]hen a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context[.]" (cleaned up)). Instead, to facilitate an expedient resolution to this case, the Court should hold that the Report is admissible.

## II. THE PERKINS COIE REPORT IS ADMISSIBLE AS A RELEVANT, NON-HEARSAY STATEMENT

The Perkins Coie Report, which discusses at length OSU's knowledge of Dr. Strauss's abuse, is relevant evidence—that is, it has a "tendency" to make facts of consequence in the case more or less probable than they would be without the Report. *See* Fed. R. Evid. 401. The question then becomes whether it is inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. It is not. The Perkins Coie Report is admissible non-hearsay or, alternatively, sufficiently trustworthy hearsay subject to Rule 807's residual exception.

Specifically, Rule 801(d)(2) enumerates certain kinds of statements that constitute an opposing party's statement and are therefore admissible non-hearsay: (A) statements by the party in an individual or representative capacity; (B) statements the party manifested that it adopted or

believed to be true; (C) statements by a person the party authorized to make a statement on the subject; (D) statements by the party's agent or employee on a matter within the scope of that relationship while it existed; and (E) statements by the party's co-conspirator during and in furtherance of the conspiracy.

Because the Perkins Coie Report is admissible as OSU's statement under subsections (B), (C), and/or (D) of Rule 801(d)(2)—*i.e.*, a statement adopted by a party, a statement by a person authorized by a party, and a statement by a party's agent—or alternatively as hearsay subject to the Rule 807 exception, and because admitting the Report will clarify and expedite the discovery process in this and the other four cases brought against OSU, the Court should find that the Report is admissible.

### A. OSU ADOPTED THE REPORT AS ITS STATEMENT

The Report is admissible non-hearsay under Rule 801(d)(2)(B) because OSU "manifested that it adopted or believed [the Report] to be true." Fed. R. Evid. 801(d)(2)(B). Even forwarding portions of a message or document can constitute adoption of the forwarded content, as can "act[ing] in conformity with the contents of a document . . . even if the [acting] party never reviewed the document's contents." 30B Fed. Prac. & Proc. Evid. § 6774 (2023 ed.) (quoting *Transbay Auto Serv., Inc. v. Chevron USA Inc.*, 807 F.3d 1113, 1118 (9th Cir. 2015)). As *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264 (10th Cir. 1998), explains:

> When determining whether a party has manifested a belief in the truth of a document, the test is "whether the surrounding circumstances tie the possessor and the document together in some meaningful way." A document is sufficiently "tied" to the possessor "to the extent the adoptive party accepted and acted upon the evidence."

155 F.3d at 1268 (quoting with approval *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 870 (1st Cir. 1997), *abrogation on other grounds recognized by Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 405 (1st Cir. 2002)).

"This . . . analysis has been applied to investigative reports of alleged misconduct acted upon by an employer, rendering the report itself susceptible to admission as a statement adopted by the employer." 30B Fed. Prac. & Proc. Evid. § 6774 (citing *Wright-Simmons*, 155 F.3d at 1269); *see also Talavera v. Municipality of San Sebastian*, 865 F. Supp. 2d 150, 155 (D.P.R. 2011) (concluding report prepared by independent law firm that resulted in defendant firing an employee for discrimination based on report's findings was admissible because "defendants effectively adopted the administrative ruling, and it constitutes an exception to hearsay"). If Perkins Coie is not deemed OSU's agent, as explained below in Section II.B, it is appropriately described as an outside expert with self-described "significant experience" in "conducting investigations that specifically involve[] male survivors of sex abuse."[19] Like the experts described in *Pernix Ireland Pain Dac v. Alvogen Malta Operations Ltd.*, Perkins Coie served as an "expert[] . . . retained to investigate a matter and whose conclusions [were] adopted, expressly or implicitly, by the retaining party apart from litigation," rather than an expert retained "for purpose of litigation," rendering the Report admissible. 316 F. Supp. 3d 816, 821 n.3 (D. Del. 2018) (citing *Wright-Simmons*, 155 F.3d at 1268).

OSU has publicly and repeatedly manifested adoption of the Report and its conclusions, including by acknowledging the accuracy of its findings, apologizing for the misconduct described in the Report, and creating a task force on sexual abuse. For instance, OSU's website about the investigation into Dr. Strauss summarizes Perkins Coie's investigation and the Report, then

---

[19] Report at 8.

immediately afterwards expresses OSU's condemnation of "Strauss' reprehensible conduct and the university's failure at the time to prevent the abuse," which are both findings made in the Report.[20] Once the Report was published, OSU took on its conclusions as true and began acknowledging that it had failed to prevent Dr. Strauss's abuse.[21] OSU's president has adopted the Report's conclusions in numerous community-wide communications, beginning with his May 17, 2019 message to the OSU community, which stated that the "institution's fundamental failure at the time to prevent [Dr. Strauss's] abuse was unacceptable — as were the inadequate efforts to thoroughly investigate complaints raised by students and staff members."[22] His note to alumni, sent the same day, said that "Strauss' actions and the university's inaction at the time were unacceptable," and offered, "*[o]n behalf of Ohio State*," "profound regret and sincere apologies to each person who endured Strauss' abuse."[23] Subsequent 2019 and 2020 communications also adopted the Report's conclusions, admitted OSU's failure to respond to Dr. Strauss's abuse, and announced the convening of a task force as "part of" OSU's response to the abuse.[24] The Task

---

[20] *See* Ohio St. Univ., *Strauss Investigation*, https://straussinvestigation.osu.edu/ (last visited Dec. 12, 2023); *see, e.g.*, Report at 1-2.

[21] *See* Ohio St. Univ. Off. of Univ. Compliance & Integrity, *Strauss Investigation*, https://compliance.osu.edu/strauss-investigation.html (last visited Dec. 12, 2023) (no mention of failure by OSU in any pre-May 17, 2019 news release, email, or other communication by OSU leadership listed in "Updates" category).

[22] Ohio St. Univ., *Independent investigation finds Ohio State doctor Richard Strauss abused students from 1979 to 1998* (May 17, 2019), https://news.osu.edu/independent-investigation-finds-ohio-state-doctor-richard-strauss-abused-students-from-1979-to-1998.

[23] President Michael V. Drake, Ohio St. Univ., *A Message from President Drake: Strauss Investigation Update* (May 17, 2019), https://president.osu.edu/strauss-update-alumni-may-2019 (emphasis added).

[24] Ohio St. Univ., *Ohio State University trustees revoke Richard Strauss' emeritus status, approve construction projects* (May 31, 2019), https://news.osu.edu/ohio-state-university-trustees-revoke-richard-strauss-emeritus-status-approve-construction-projects/; Ohio St. Univ., *Ohio State announces settlement of 11 of 18 lawsuits brought by survivors of deceased sex abuser Richard Strauss* (Mar. 6, 2020), https://news.osu.edu/ohio-state-announces-settlement-of-11-of-18-lawsuits-brought-by-survivors-of-deceased-sex-abuser-richard-strauss/; Ohio St. Univ., *Ohio State, 162 survivors finalize $40.9 million settlement in Strauss case* (May 8, 2020), https://news.osu.edu/ohio-state-162-survivors-finalize-409-million-settlement-in-strauss-case/.

Force on Sexual Abuse that OSU convened in the fall of 2019 was similarly "announced following the university's release of the independent investigative report on Richard Strauss" as "part of" OSU's response to Dr. Strauss's abuse.[25] Over and over again, OSU has accepted as true the Report's findings in public communications. In so doing, OSU has adopted the Report's conclusions that Dr. Strauss abused former students and that OSU personnel knew about Dr. Strauss's abuse but failed to prevent it.

In all of OSU's public statements, it never disagreed with any of the Report's conclusions. Instead, all of OSU's conduct—publicizing the Report, highlighting its conclusions, and acknowledging the misconduct of Dr. Strauss and of the university—"manifested" that OSU believed the Report "to be true." Fed. R. Evid. 801(d)(2)(B). OSU's adoption renders the Report admissible non-hearsay.

### B.      PERKINS COIE ISSUED THE REPORT AS OSU'S AGENT

The Report is also admissible under Rule 801(d)(2)(D) as a statement made by OSU's agent. Statements made by an opposing party's "agent or employee on a matter within the scope of that relationship" are also admissible non-hearsay. Fed. R. Evid. 801(d)(2)(D). Statements by a party's attorney are admissible under this provision. *United States v. Evans*, 898 F.2d 155 (6th Cir. 1990).

Perkins Coie itself argues that it acted as OSU's agent in producing and publishing the Report, which was contemplated as part of Perkins Coie's responsibilities. Perkins Coie's position as to the pending motion to quash a subpoena against it is that materials underlying the Report are protected by attorney-client privilege because "Perkins Coie was retained to provide legal services

---

[25] Ohio St. Univ. Off. of Inst. Equity, *Ohio State's Progress on Sexual Misconduct Prevention and Reporting*, https://equity.osu.edu/about/ohio-states-progress-sexual-misconduct-prevention-and-reporting (last visited Dec. 15, 2023); Ohio St. Univ. Task Force on Sexual Abuse, *supra* n.18.

and advice to assist Porter Wright in its representation of OSU's response to the allegations against Strauss." *In re Subpoena to Perkins Coie LLP*, 19-mc-38 (S.D. Ohio 2019), ECF No. 2 (Mem. in Supp. of Mot. to Quash Subpoena), PageID 11-12; *see id.* PageID 8 (citing *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007), to support the proposition that "privileges extend to *agents* of attorneys" (emphasis in ECF No. 2)). Perkins Coie reiterated this point on reply to claim the attorney-client privilege applies: "Perkins Coie was undisputedly hired to use its legal talents and judgments to evaluate the facts identified during its investigation for its sole client, Porter Wright." 19-mc-38 ECF No. 73 (Reply in Supp. of Mot. to Quash Subpoena), PageID 442-444.

Perkins Coie was retained to investigate Dr. Strauss's abuse. That Perkins Coie was technically retained by Porter Wright (OSU's appointed counsel) and not by OSU itself is irrelevant. "Under general agency law, a principal is liable for the subagent's acts 'if the principal authorizes the agent to appoint a subagent to carry out the principal's business.'" *Moriarty v. EquiSearch Servs., Inc.*, No. 1:08 Civ. 2180, 2009 WL 10689381, at *9 (N.D. Ohio Oct. 23, 2009). Porter Wright had the authority to engage Perkins Coie because it was OSU's counsel; OSU cannot distance itself from the decision.

Rule 801(d)(2)(D) is construed broadly: statements by a party's agent are admissible so long as they were made within the scope of the employment. *See, e.g.*, *Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003) (comments made "within the scope of [the employee's] employment" are admissible non-hearsay); *Bensen v. Am. Ultramar Ltd.*, No. 92 Civ. 4420, 1996 WL 422262, at *11 (S.D.N.Y. July 29, 1996) (explaining the rule "makes admissible against a party admissions stated by that party's agent acting within the scope of employment"). The Federal Rules of Evidence do not define "agent," so "courts undertake a fact-based inquiry applying common law principles of agency." 30B Fed. Prac. & Proc. Evid. § 6776 (2023 ed.).

"[A]ttorney[s] can be characterized as the client's agent for purposes of the rule." *Id.*; *see also Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986) ("statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney").

Any statement within the scope of an attorney's work for an opposing party is thus admissible under Rule 801(d)(2)(D) so long as the statement was contemplated as part of the attorney's responsibilities. *Williams*, 790 F.2d at 555-56 (internal citations omitted); *see, e.g.*, *United States v. Collins*, 97 F. App'x 629, 632 (6th Cir. 2004) (in property fraud appeal, affirming admission of attorney's statement under Rule 801(d)(2) where the party "admitted at trial that she specifically employed the attorneys to write the letters . . . so that she could receive compensation for her share of the property"); *see also Nekolny v. Painter*, 653 F.2d 1164, 1171-72 (7th Cir. 1981) (statements must be within the scope of "agency of employment" but can be on "any matter" within that scope). For example, casual statements made during a break in a deposition are not admissible under 801(d)(2)(D), but statements made to an investigator are. *See Starling v. Cronin*, No. 98 Civ. 7900, 2002 WL 23896, at *2 (N.D. Ill. Jan. 7, 2002) (citing cases).

When the report was released on May 15, 2019, OSU described it as the "culmination" of Perkins Coie's investigation—an investigation that OSU requested.[26] In other words, the Report was produced in response to OSU's request for an investigation and was created by an entity whose appointment OSU sought. Perkins Coie was thus an agent for OSU and acted within that agency when issuing the Report.[27]

---

[26] Ohio St. Univ., *Report of the independent investigation into sexual abuse committed by Dr. Richard Strauss* (May 17, 2019), https://news.osu.edu/report-of-the-independent-investigation-into-sexual-abuse-committed-by-dr-richard-strauss/.

[27] Plaintiffs' arguments in this motion about Perkins Coie's agent status and authorization to issue the Report are based on Perkins Coie's and OSU's own positions and are made without waiver of the Interested Parties' position in 19-mc-

Descriptions of Perkins Coie's report as "independent" do not affect Perkins Coie's status as an agent. Courts have admitted investigative reports as party admissions under similar circumstances. In *Collins v. Wayne Corporation*, the Fifth Circuit held that it was error to exclude an expert's deposition testimony where the expert had been employed by the defendant to investigate and analyze a bus accident. 621 F.2d 777, 782 (5th Cir. 1980), *superseded on other grounds by Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). The court explained: "[The defendant] hired [the expert] to investigate the bus accident and to report his conclusions. In giving his deposition he was performing the function that [the defendant] had employed him to perform. His deposition, therefore, was an admission of [the defendant]," even though some of the expert's conclusions were not consistent with the defendant's position at trial. *Id.*; *see also Brown & Root, Inc. v. Am. Home Assurance Co.*, 353 F.2d 113, 116 (5th Cir. 1965), *cert. denied*, 384 U.S. 943 (1966) (in negligent towage claim, the "actions and reports" of the marine surveyor, "whose job was to investigate and report, constituted admissions to prove the truth of the declarations made," even where surveyor "changed his mind" by trial). Like those other agents, Perkins Coie was not retained to draw legal conclusions but to investigate the facts of Dr. Strauss's abuse and report its conclusions.[28] Because Perkins Coie issued the Report as OSU's agent, the Report is admissible non-hearsay.

### C.    PERKINS COIE WAS AUTHORIZED BY OSU TO ISSUE THE REPORT

Finally, the Report is also admissible non-hearsay under Rule 801(d)(2)(C), as a statement made by "a person whom [OSU] authorized to make a statement on the subject." Fed. R. Evid.

---

38 (S.D. Ohio) that the evidence demonstrates Perkins Coie did not have an attorney-client relationship with OSU or its agents or employees.

[28] *See* Report at 7.

801(d)(2)(C). "Courts have applied this rule to admit evidence of statements made by attorneys in a representational capacity." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1198 (3d Cir. 1993) (citing *Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir. 1989)). Courts "generally measure the authority of the attorney to make out-of-court admissions by the same tests of express or implied authority as would be applied to other agents." *Lightning Lube*, 4 F.3d at 1198 (quoting John W. Strong, 2 McCormick on Evidence § 259, at 163 (4th ed. 1992)).

As described above, Perkins Coie itself has taken the position that it acted as OSU's agent in investigating and reporting on Dr. Strauss's abuse. *See In re Subpoena to Perkins Coie LLP*, 19-mc-38 (S.D. Ohio 2019), ECF No. 2, PageID 8, 11-12; ECF No. 73, PageID 442-444. The firm was granted the authority to investigate Dr. Strauss's abuse and OSU's knowledge thereof, and to publish a report summarizing that abuse and OSU's role in it.[29] *See United States v. Dolleris*, 408 F.2d 918, 921 (6th Cir. 1969) (statements by defendant's attorney were admissible where they were within the attorney's scope of authority). Perkins Coie itself explained that it was operating in response to OSU's requests: "As contemplated at the outset of the Investigation, we were asked to deliver our factual findings to the University . . . at the conclusion of our Investigation."[30] OSU then released the Report's findings, further demonstrating that it had authorized Perkins Coie to issue a statement on Dr. Strauss's abuse. The Report is therefore admissible non-hearsay on this ground as well.

---

[29] *See* Ohio St. Univ., *Ohio State shares developments in Strauss investigation* (June 7, 2018), https://news.osu.edu/ohio-state-shares-developments-in-strauss-investigation/.

[30] Report at 9.

## III.    ALTERNATIVELY, THE PERKINS COIE REPORT IS ADMISSIBLE AS A SUFFICIENTLY TRUSTWORTHY HEARSAY STATEMENT

Alternatively, even if the Report is a hearsay statement, it is not excluded by the rule against hearsay because it is "supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement," and because "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."[31] Fed. R. Evid. 807(a).

First, the Report is sufficiently trustworthy. Factors supporting admission under the residual exception include a relationship between the declarant (here, Perkins Coie) and a party in the litigation, the declarant's capacity and truthfulness, and the statement's clarity, lack of ambiguity, and formality. *See Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 578 (6th Cir. 2013). All of these factors are present here: Perkins Coie was formally retained by OSU to investigate Dr. Strauss's abuse (*i.e.*, the two were "not strangers," *Brumley*, 727 F.3d at 578); there is no reason to believe that Perkins Coie lacked capacity in producing the Report, or that it did so untruthfully; and the Report is a clear, unambiguous, formal document created after a year-long extensive investigation by experienced partners at an esteemed law firm.

Second, as described above, the Report is more probative with respect to OSU's knowledge of Dr. Strauss's abuse than other evidence that Plaintiffs can obtain short of extensive discovery. It would be unreasonable to require Plaintiffs to re-create, independently and in full, the year-long, $6.2 million investigation. The Report is therefore admissible hearsay under Rule 807's residual exception.

---

[31] Plaintiffs' motion serves as the notice required by Fed. R. Evid. 807(b).

16

## CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to hold that the 2019 Report issued by

Perkins Coie LLP is admissible.


Dated: December 21, 2023
      New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: _/s/ Sonya Levitova_
Ilann M. Maazel (admitted *pro hac vice*)
Debra L. Greenberger (admitted *pro hac vice*)
Sonya Levitova (admitted *pro hac vice*)
600 Fifth Avenue
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: slevitova@ecbawm.com

SCOTT ELLIOTT SMITH, LPA
Scott E. Smith (0003749)
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail:ses@sestriallaw.com

PUBLIC JUSTICE
Adele P. Kimmel (admitted *pro hac vice*)
Alexandra Brodsky (admitted *pro hac vice*)
1620 L Street, NW, Suite
630 Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net

*Attorneys for Plaintiffs*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing motion and accompanying memorandum was filed electronically on December 21, 2023.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel.  The parties may access this filing through the Court's ECF system.

*/s/ Sonya Levitova*
Sonya Levitova