**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEVE SNYDER-HILL, et al., | ) | |
| | ) | Case No. 2:23-cv-02993 |
| Plaintiffs, | ) | |
| | ) | Judge Michael H. Watson |
| v. | ) | |
| | ) | Chief Magistrate Judge Elizabeth P. |
| THE OHIO STATE UNIVERSITY, | ) | Deavers |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S MEMORANDUM IN**
**OPPOSITION TO PLAINTIFFS' MOTION TO ADMIT PERKINS COIE REPORT**

**I.**   **INTRODUCTION.**

Plaintiffs in this action seek a premature ruling admitting the *Report of the Independent Investigation Sexual Abuse Committed by Dr. Richard Strauss at The Ohio State University* (the "Perkins Coie Report") into evidence before a trial date has even been set. *See* Plfs.' Mot. (ECF No. 26 at PageID 1120 - 1140). Plaintiffs' request is not only premature, it also is wrong and needlessly duplicative. In fact, disregarding this Court's previous orders that "cooperation by and among counsel for the 235 Plaintiffs across these five cases is essential for an orderly and expeditious resolution of the litigation," Oct. 23, 2023 Order (ECF No. 11 at PageID 977), and directing the parties to coordinate their efforts and to "minimize needless or repetitive filings, not to mention billing," Aug. 7, 2023 Order (ECF No. 178 at PageID 2956 in prior Case No. 2:18-cv-736), plaintiffs' motion re-raises the exact same issues and grounds for admission as those already

raised by the plaintiffs in *Gonzales v. The Ohio State Univ.*, No. 2:23-cv-3051. (ECF No. 9 in Case No. 2:23-cv-3051).[1]

      Plaintiffs' repetitive arguments in favor of a premature evidentiary ruling still lack merit the second time around, and the Court should deny plaintiffs' motion—both for the reasons that follow and those previously stated in Ohio State's Memorandum in Opposition in *Gonzales*, which Ohio State incorporates by reference herein. (ECF No. 13 in Case No. 2:23-cv-3051). Alternatively, this Court should delay ruling on the admissibility of the Perkins Coie Report until a fuller record exists or closer to trial.

**II.**     <u>LAW & ARGUMENT</u>.

    **A.**     **Plaintiffs' Request Is Premature And A Ruling On Admissibility Would Not <u>Expedite Discovery</u>.**

      The Court should deny plaintiffs' motion first and foremost because it is premature. Federal courts, including this one, overwhelmingly favor resolving evidentiary issues and questions of admissibility when they arise at trial so that "questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Braun v. Coulter Ventures, LLC*, No. 2:19-cv-05050, 2023 WL 348225, at \*1 (S.D. Ohio Jan. 20, 2023) (internal quotations omitted); *see also United States v. Jacobs*, No. 2:21-cr-053, 2022 WL 1624609, at \*1 (S.D. Ohio May 23, 2022) (same); *McNamee v. Nationstar Mortg. LLC*, No. 14-1948, 2021 WL 4860602, at \*1 (S.D. Ohio Oct. 19, 2021) (same).

---

[1] On December 5, 2023, counsel for the *Snyder-Hill* plaintiffs reached out to counsel for Ohio State to indicate that they would be filing this motion, and to inquire whether Ohio State was amenable to filing a single response to this and the previously filed motion in *Gonzales*. Ohio State declined that request because the *Snyder-Hill* plaintiffs' proposed plan would have resulted in Ohio State only being permitted one response, but plaintiffs would still have had the opportunity to file separate replies in this matter and *Gonzales*, thereby prejudicing Ohio State.

Here, the Court's bellwether approach is just beginning, sworn fact sheets are not finalized, discovery is not underway, and a trial on the merits, if necessary, is not imminent or even set. A premature ruling on the admissibility of the Perkins Coie Report—which has been publicly available to plaintiffs and their counsel since May 17, 2019—is therefore unlikely to streamline this case in any meaningful way.  It is thus unnecessary, inappropriate, and a waste of judicial resources for the Court to make a blanket ruling on the admissibility of the Perkins Coie Report in a vacuum.

The only reason plaintiffs give for ignoring these practical realities and well-established rules is to expedite discovery. *See* Plfs.' Mot. at 6-7 (ECF No. 26 at PageID 1128 - 1129). Specifically, plaintiffs argue that "OSU's knowledge about Dr. Strauss's abuse is common to each Plaintiff," and that "[a]dmitting the Report will significantly reduce Plaintiffs' need to establish OSU's knowledge of Dr. Strauss's abuse on an employee-by-employee basis." *Id.* Plaintiffs are incorrect, and their purported justification for a premature ruling does not withstand scrutiny.

*First*, the Sixth Circuit's decision in *Snyder-Hill* requires plaintiffs to put forth evidence of Ohio State's **institutional knowledge** at the time of each alleged incident of abuse and for each of the 235 plaintiffs—a critical issue which the Perkins Coie Report does not resolve. *See Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 702 (6th Cir. 2022) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999)) ("In a Title IX case, a plaintiff's cause of action is against the school based on the school's actions or inactions, not the actions of the person who abused the plaintiff."). "Knowledge that Ohio State employed Strauss is not enough." *See Snyder-Hill*, 48 F.4th at 705 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998)). And "[k]nowledge that coaches or trainers knew [about Strauss] is not enough." *See id.* (citing *Kesterson v. Kent State Univ.*, 967 F.3d 519, 528–29 (6th Cir. 2020)). In other words, it is

insufficient for plaintiffs to demonstrate that certain "University personnel had knowledge of Strauss' sexually abusive treatment of male student-patients" or that Strauss was an employee at Ohio State when he committed the underlying acts of alleged abuse. *Perkins Coie Report* at 1. Instead, plaintiffs will have to show that (a) "Ohio State administrators 'with authority to take corrective action' knew of Strauss's conduct and failed to respond appropriately," at the time of each incident of alleged abuse for each plaintiff, and that Ohio State was deliberately indifferent; *and*, (b) for each plaintiff, that Ohio State, as an institution, "'(1) [] maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was 'so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school'" at the time of each incident of alleged abuse for each plaintiff. *See Snyder-Hill*, 48 F.4th at 703-705 (quoting *Gebser*, 524 U.S. at 290 and *Karasek v. Regents of Univ. of California*, 500 F. Supp. 3d 967, 978 (N.D. Cal. 2020)); *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 35 F.4th 459, 465 (6th Cir. 2022) (quoting *Karasek v. Regents of Univ. of Cal*., 956 F.3d 1093, 1112 (9th Cir. 2020)). The Perkins Coie Report does not provide the proof plaintiffs need and an early ruling on the report's admissibility will not obviate the need for discovery in this case.

    *Second*, the Federal Rules of Civil Procedure make clear that admissibility is not a limit on discovery. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Accordingly, regardless of whether the Court rules on the admissibility of the Perkins Coie Report now or later, all parties (plaintiffs *and* Ohio State alike) will remain free to use the Perkins Coie Report to guide their discovery efforts and to probe

"any nonprivileged matter that is relevant to any party's claim or defenses and proportional to the needs of the case." *Id.*

Indeed, from a practical standpoint, if the Court deems the Perkins Coie Report admissible in its entirety at this point, as plaintiffs request, it will significantly expand—not streamline—discovery, as the Perkins Coie Report was based on thousands of pages of documents and approximately 600 interviews with 520 different individuals. *Perkins Coie Report* at 17-18. If admitted at this juncture, before discovery has closed and the actual disputed issues have been clarified, the parties will undoubtedly take discovery on each aspect of the Perkins Coie Report that is in dispute, whether ultimately relevant or not to a particular bellwether plaintiff's claims, thereby exponentially expanding the scope of discovery into irrelevant issues.

*Third*, admitting the Perkins Coie Report into evidence would not obviate the need to take considerable discovery for the additional reason that plaintiffs are asserting 235 individual Title IX claims across these cases. The Sixth Circuit's mandate in *Snyder-Hill* makes clear that the individual nature of these claims necessitates individualized inquiries, which requires individualized discovery. *See Snyder-Hill*, 48 F.4th at 693-695 (stating, for example, "allegations vary among the different plaintiffs"; "plaintiffs differ as to whether they knew at the time that Strauss abused them"; and plaintiffs "allege varying degrees of knowledge about whether *others* knew of Strauss's conduct"); *see also* Transcript of July 6, 2023 Status Conference at 10:7-8 (ECF No. 210 at PageID 1573 in *Garrett, et al.*, Case No. 2:18-cv-692) (this Court stating, "The Sixth Circuit opinion seems to instruct that we're going to be looking at doing a person-by-person evaluation"). Consistent with this, plaintiffs themselves previously acknowledged the individualized nature of their claims. *See, e.g.*, Transcript of May 24, 2019 Status Conference at 9:21-10:4 (ECF No. 91 at PageID 571 - 572 in *Garrett, et al.*, Case No. 2:18-cv-692) (plaintiffs'

counsel stating, "Well, I mean, from our perspective, these are individual plaintiffs with individual experiences, individual damages, and these individuals have all come to counsel representing individual representations. . . . This is not a securities fraud action where we can just take to the measure of damages based upon the stock that was bought and sold. These are very highly personal and traumatic incidents for a lot of people.").

Thus, admitting the Perkins Coie Report will not narrow discovery as plaintiffs suggest, and there is no reason for this Court to prematurely issue a blanket ruling on the admissibility of the Perkins Coie Report at this early stage of the litigation.

### B.    The Perkins Coie Report Is Inadmissible Hearsay.

Beyond the practical considerations discussed above, the Court should deny plaintiffs' motion because the Perkins Coie Report is inadmissible hearsay. Hearsay is any out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(a), (c). Unless a hearsay statement falls within an exception or exclusion set forth in the Federal Rules of Evidence, federal statute, or Supreme Court precedent, such hearsay is inadmissible. Fed. R. Evid. 802. The Perkins Coie Report fits the definition of hearsay (*i.e.*, it is an out-of-court statement) and it is inadmissible if offered for the truth of the matter asserted.[2]

Here, just as the plaintiffs in *Gonzales* did before them, plaintiffs assert that the Perkins Coie Report either is not hearsay under Fed. R. Evid. 801(d)(2)(B)-(D), or is admissible anyhow under the residual exception in Fed. R. Evid. 807. *See* Plfs.' Mot. at 7-16 (ECF No. 26 at PageID 1129 - 1138). As in *Gonzales*, these arguments lack merit and the Perkins Coie Report remains inadmissible.

---

[2] Parts of the report constitute multiple hearsay and are subject to exclusion absent compliance by plaintiffs with Fed. R. Evid. 805 for each such part.

1.      **Fed. R. Evid. 801(d)(2) Does Not Pave The Way For The Admission Of The** <u>**Perkins Coie Report.**</u>

Fed. R. Evid. 801(d)(2) provides in pertinent part that the following statements offered against an opposing party are not hearsay:

(B)      A statement the party manifested that it adopted or believed to be true;

(C)      A statement made by a person whom the party authorized to make a statement on the subject; or

(D)      A statement made by the party's agent or employee on a matter within the scope of that relationship and while it existed.

Fed. R. Evid. 801(d)(2)(B)-(D).[3] Contrary to plaintiffs' arguments, none of the above provisions apply to the Perkins Coie Report.

a.      *The Perkins Coie Is Not Admissible Under 801(d)(2)(B).*

Plaintiffs contend that Ohio State adopted the Perkins Coie Report within the meaning of Fed. R. Evid. 801(d)(2)(B) when it sent e-mails about the report and investigation to the university community, published the report on its website, and created a task force on sexual abuse. *See* Plfs.' Mot. at 8-11 (ECF No. 26 at PageID 1130 - 1133). Plaintiffs are wrong and the Perkins Coie Report is not admissible as an adoptive admission under Fed. R. Evid. 801(d)(2)(B).

To begin, Ohio State has expressly stated that, while it respects the Perkins Coie Report, it cannot adopt it and that each plaintiff must prove his individual allegations for the purpose of this litigation:

---

[3] In their motion, the *Gonzales* plaintiffs additionally argued that the Perkins Coie Report was admissible under Fed. R. Evid. 801(d)(2)(A), which covers statements "made by the party in an individual or representative capacity." *See* ECF No. 9 in 2:23-cv-3051. Notably, plaintiffs here do not make that argument, in apparent recognition that Rule 801(d)(2)(A) does not apply. *See Parker v. Winwood*, 938 F.3d 833, 837 (6th Cir. 2019) (declining to apply Fed. R. Evid. 801(d)(2)(A) to statements made by people other than the defendant). The inconsistency between the *Gonzales* and *Snyder-Hill* plaintiffs' positions also highlights the plaintiffs' failure to coordinate with one another.

7

Through special counsel Porter Wright, Perkins Coie reviewed archival material and interviewed witnesses who were still available from 20-40 years ago and then released an investigative report. The Perkins Coie Report provided Ohio State with findings and conclusions based upon the only available information and material from that time period.  Ohio State understood that time passage, unavailability of witnesses, and the normal course of record retention over the 20-40 year period would create challenges to a complete record. Regardless of those challenges, Ohio State utilized the Perkins Coie Report to bring closure and attempt reconciliation to a painful period for the Buckeye community. The Perkins Coie Report, while non-exhaustive, provided Ohio State with enough information to move forward with that process. ***However, because of the challenges of time passage, and unavailability of witnesses and material, it is impossible for the Perkins Coie Report to be a complete factual record for litigation purposes. Ohio State respects the contents, findings and/or conclusions of the Perkins Coie Report. Because it was an independent, external investigation and report, Ohio State did not conduct its own investigation and therefore is without knowledge or information sufficient to form a belief as to the truth of the contents, findings and/or conclusions of the Perkins Coie Report. Plaintiffs are required to establish the record and proof of their individual allegations.***

Answer of Defendant The Ohio State University at ¶ 3 (ECF No. 5 at PageID 443 - 444) (emphasis added).

Next, forwarding a document or acting as a messenger does not constitute an adoption. *Transbay Auto Serv., Inc. v. Chevron USA Inc*., 807 F.3d 1113, 1118 (9th Cir. 2015). And simply publishing or sharing a document online does not result in an adoption either. *Parker*, 938 F.3d at 837-838; *see also Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 148, n.12 (2011) ("Merely hosting a document on a Web site does not indicate that the hosting entity adopts the document as its own statement or exercises control over its content"). As such, when Ohio State shared e-mail updates about the report and investigation, it was acting as a messenger, not adopting the report within the meaning of Rule 801(d)(2)(B). *See Transbay Auto* at 1118. Likewise, Ohio State's sharing of the report on its website was not an indication that Ohio State adopted the Perkins Coie Report for the purposes of Rule 801(d)(2)(B). *See Parker* at 837-838. Ohio State was simply being transparent.

Finally, Ohio State's creation of a Task Force on Sexual Abuse did not constitute an adoptive admission under Fed. R. Evid. 801(d)(2)(B). In arguing it did, plaintiffs cite *Pernix Ireland Pain Dac v. Alvogen Malta Operations Ltd*., 316 F. Supp. 3d 816 (D. Del. 2018), *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264 (10th Cir. 1998), and *Talavera v. Municipality of San Sebastian*, 865 F. Supp. 2d 150 (D.P.R. 2011).  *Pernix* actually supports Ohio State's position because the court held that prior reports by experts retained by the defendant in other litigation did ***not*** constitute adoptive admissions by the defendant in the current litigation.  *Pernix*, 316 F. Supp. 3d at 825-826.  *Wright-Simmons* and *Talavera*, which hold that Fed. R. Evid. 801(d)(2)(B) applies when a party acts *directly* upon the conclusions of an investigatory report, also do not assist plaintiffs because the facts in both cases are distinguishable from those relating to Ohio State's creation of the Task Force.  In *Wright-Simmons*, the City of Oklahoma City—in *direct* reliance upon an *internal* report—fired an employee who was harassing the plaintiff in that case, making the report admissible in the plaintiff's Title VII lawsuit. 155 F.3d at 1268-69. Similarly, in *Talavera*, the municipality followed the *direct* recommendation of an administrative ruling to admonish the plaintiff's co-worker for sexually harassing the plaintiff.  865 F. Supp. 2d at 154-155.

Here, in contrast to *Wright-Simmons* and *Talavera*, the *independent*, *external* Perkins Coie Report did not recommend that Ohio State create the Task Force, and Ohio State did not create the Task Force solely because of the Perkins Coie Report or its findings.  Rather, as stated in the Task Force's final report, the Task Force was charged with examining instances of alleged sexual abuse in "institutions of higher education" *generally* (not just at Ohio State) and identifying "educational tools" and "best practices" to address it. *See* Task Force on Sexual Abuse, *Report* at 2 (Nov. 5, 2020), https://www.compliance.osu.edu/assets/resources/task_force_report.pdf.  Importantly, the

Task Force's final report also qualified its reliance upon public reports (including the Perkins Coie Report) with an express "Cautionary Word" at its beginning, stating that such public reports "have the potential to contain inaccuracies" and "recount allegations or otherwise contested 'facts'" that "almost always fall short of the level of certainty of a court order or a universally agreed upon description." *Id.* at 3. The Task Force's final report additionally advises, consistent with the above-quoted answer of Ohio State to paragraph 3 of the *Snyder-Hill* complaint regarding the Perkins Coie Report: "The Task Force did not conduct its own independent investigation of any of these incidents or make factual assessments independent of these public reports. Such an effort was both beyond the Task Force's charge and not reasonably feasible. This inherent uncertainty must be kept in mind in considering the bullet point summary." *Id.* In other words, neither Ohio State nor the Task Force adopted the Perkins Coie Report within the meaning of the adoptive admission rule.

Thus, plaintiffs have not shown that Ohio State adopted the Perkins Coie Report for purposes of Fed. R. Evid. 801(d)(2)(B) and plaintiffs' motion should be denied.

### b. The Perkins Coie Report Is Not Admissible Under 801(d)(2)(C) or (D).

Fed. R. Evid. 801(d)(2)(C) and (D) exclude from the definition of hearsay any statements "made by a person whom the party authorized to make a statement on the subject" or "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Plaintiffs contend that the Perkins Coie Report falls under these exceptions because Ohio State paid Perkins Coie to conduct this investigation and issue a report, and because Perkins Coie was Ohio State's lawyer/agent. *See* Plfs.' Mot. at 11-15 (ECF No. 26 at PageID 1133 - 1137). Plaintiffs are once again mistaken and neither Fed. R. Evid. 801(d)(2)(C) nor (D) applies.

10

Perkins Coie acted independently and was not required to draw specific conclusions that were favorable to Ohio State. *See* Declaration of Caryn L. Trombino at ¶¶ 4, 7 (ECF No. 2-1 at PageID 21 - 23 in *In re: Subpoena to Perkins Coie LLP*, Case No. 2:19-mc-00038) (describing the investigation and Perkins Coie's independence in conducting and reporting the results of the same). That is, Perkins Coie was not Ohio State's advocate or mouthpiece under Fed. R. Evid. 801(d)(2)(C) and (D). *See id*. In fact, the text of the Perkins Coie Report clearly states that Perkins Coie conducted its investigation "without interference or obstruction by the University" and that "[t]he University did not participate in determining the content of this Report." *Perkins Coie Report* at 8-9; *see also* Jan. 3, 2024 Order in *In re. Subpoena to Perkins Coie LLP* (ECF No. 75 at PageID 451 - 452 in Case No. 2:19-mc-00038-MHW-EPD) (noting Perkins Coie's independence in conducting the investigation).

In similar cases, courts have not hesitated to hold that such independence and lack of oversight prevents an outside consultant or expert, like Perkins Coie, from qualifying as a party's agent or authorized spokesperson under Fed. R. Evid. 801(d)(2)(C) and (D). *See, e.g.*, *Kirk v. Raymark Industries, Inc*., 61 F.3d 147, 164 (3d Cir. 1995); *N5 Tech. LLC v. Capital One N.A.*, 56 F. Supp. 3d 755, 765 (E.D. Va. 2014); *see also*, *Cooper v. Meritor, Inc.*, 363 F. Supp. 3d 695, 700 (N.D. Miss. 2019) (excluding EPA site inspection report prepared by an outside consultant under Fed. R. Evid. 803(8) where, as here, the public agency did not "closely manage" the investigation that generated the report). The reason being that when an expert is not subject to the party's control and provides an impartial opinion, the expert "cannot be deemed an agent." *Kirk* at 164.

The cases plaintiffs primarily cite to place the Perkins Coie Report within the scope of Fed. R. Evid. 801(d)(2)(C)-(D) are all distinguishable and actually support Ohio State's position. *Williams v. Union Carbide Corp.*, for instance, involved statements made by a party's attorney in

pleadings (not an investigative report). 790 F.2d 552 (6th Cir. 1986). Relatedly, *United States v. Evans*, 898 F.2d 155 (6th Cir. 1990), *United States v. Dolleris*, 408 F.2d 918, 921 (6th Cir. 1969), and *Lightning Lube Inc. v. Witco Corp.*, 4 F.3d 1153, 1198 (3d Cir. 1993) each emphasized that an attorney's extra-judicial statements must be connected to the management of the litigation at hand or made in a representational capacity. In other words, plaintiffs' cases undermine their argument that "[s]tatements made by a party's attorney are admissible" under Rule 801(d)(2)(C) or (D). *See* Plfs.' Mot. at 11, 15 (ECF No. 26 at PageID 1133, 1137). Instead, they hold that merely employing an attorney is not enough to trigger Fed. R. Evid. 801(d)(2)(C) or (D), *see Dolleris* at 921, and that "not every out-of-court statement by an attorney constitutes an admission which may be used against his or her client," *Lightning Lube* at 1198.

As for *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980), that case is factually distinguishable and unpersuasive, as it primarily involved deposition testimony by an expert witness retained in that litigation. *Id.* at 781-82. Here, Perkins Coie prepared the report independent of Ohio State. Plaintiffs therefore cannot show that the Perkins Coie Report is admissible under Fed. R. Evid. 801(d)(2)(C) or (D).

Accordingly, Fed. R. Evid. 801(d)(2) is inapplicable and does not support admission of the Perkins Coie Report into evidence. The Perkins Coie Report is hearsay and plaintiffs' motion should be denied. *See* Fed. R. Evid. 801(a), (c) and 802.

### 2.     The Residual Exception In Fed. R. Evid. 807 Does Not Apply.

Plaintiffs additionally maintain that the residual exception for hearsay in Fed. R. Evid. 807 applies to the Perkins Coie Report. *See* Plfs.' Mot. at 16 (ECF No. 26 at PageID 1138). The residual hearsay exception, however, is only used in rare instances when no other exceptions apply, and the following factors are met: (1) the statement has equal circumstantial guarantees of

trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice. Fed. R. Evid. 807; *Osborn v. City of Columbus*, No. 2:20-cv-1229, 2023 WL 5541773, at \*4 (S.D. Ohio Aug. 29, 2023). Here, plaintiffs cannot show that these criteria are satisfied.

With respect to the first factor (*i.e.*, the circumstantial guarantees of trustworthiness), plaintiffs cannot meet that factor, as the Perkins Coie Report is comprised of unsworn and often anonymous statements about what others said or reported some 30 to 40 years ago. *See* 1972 Advisory Committee Notes, Fed. R. Evid. 803(8) (explaining that the "timeliness of the investigation" is a factor to consider when evaluating the trustworthiness of evaluative reports under Fed. R. Evid. 803(8)). Because of this, the fact that Ohio State and Perkins Coie are "not strangers" to one another, as plaintiffs' suggest (*see* Plfs.' Mot. at 16 (ECF No. 26 at PageID 1138), does not render the report and all its contents trustworthy within the meaning of Rule 807. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (noting the specific problems that the passage of time presents in litigation, including lost evidence, missing witnesses, and fading memories). With respect to the third factor, plaintiffs cannot satisfy that criteria because it is too early to determine whether plaintiffs can or cannot obtain other admissible evidence that is equally as probative related to their individual claims, including other documentary or testimonial evidence, through reasonable efforts. *See Osborn*, 2023 WL 5541773 at \*4. Indeed, it is impossible to evaluate this factor, as discovery has not begun. Finally, for the same reasons discussed throughout this brief, plaintiffs cannot meet the fourth factor – *i.e.*, admitting the Perkins Coie Report will not best serve the purposes of these rules and the interests of justice given the individualized nature of each of the plaintiff's claims.

Therefore, the Perkins Coie Report lacks sufficient circumstantial guarantees of trustworthiness and cannot be said to be more probative than other evidence that plaintiffs can reasonably obtain and offer, and remains inadmissible hearsay. Fed. R. Evid. 807 does not apply and plaintiffs' motion should be denied.

### C.    Admission Of The Perkins Coie Report Is Alternatively Impermissible Under Fed. R. Evid. 402 and 403.

Alternatively, even if the Court determines that the Perkins Coie Report is not inadmissible hearsay, the Court should refuse to admit the lengthy report (totaling 232 pages) because large portions deal with irrelevant subjects, and are substantially likely to confuse the issues, mislead the jury, result in unfair prejudice to Ohio State, and cause undue delay. *See* Fed. R. Evid. 402 and 403.

Initially, the dangers of unfair prejudice, confusing the issues, and misleading the jury caused by broadly admitting the Perkins Coie Report into evidence are particularly apparent here, where 235 plaintiffs are asserting individual Title IX claims. *See* supra at II.A. Rather than clarify, admitting the Perkins Coie Report would likely confuse, obfuscate and mislead, resulting in unfair prejudice to Ohio State (and each plaintiff), as the report generally treats alleged interactions with Strauss and Ohio State globally, with no real distinction as to the strengths and weaknesses of individual allegations. Put differently, "[i]t serves no useful or proper purpose to attempt to supplant th[e] crucial function of the jury" by admitting the Perkins Coie Report. *See Bernard v. E. Stroudsburg Univ.*, No. 3:09-CV-00525, 2014 WL 12738932, at *6 (M.D. Pa. Oct. 16, 2014).

Further, the parts of the Perkins Coie Report discussing alleged misconduct occurring at Dr. Strauss's private, off-campus clinic are wholly irrelevant to plaintiffs' Title IX claims. *See, e.g.*, *Lam v. Curators of the Univ. of Mo. at Kan. City Dental Sch.*, 122 F.3d 654, 656 (8th Cir.

14

1997) (holding that an off-campus assault of a dental student at an "independent, private dental practice" was not actionable under Title IX).

Similarly, the Perkins Coie Report's discussion of the State Medical Board of Ohio's investigations into whether certain personnel at Ohio State failed to report Dr. Strauss's alleged conduct to the Medical Board also are irrelevant, and substantially likely to confuse the issues, mislead the jury, and result in unfair prejudice to Ohio State. *See* 34 C.F.R. 106.30(a) ("The mere ability or obligation to report sexual harassment … does not qualify an individual as one who has authority to institute corrective measures on behalf of the recipient").

Finally, admitting the report would cause the trial to "digress into innumerable arguments relating to myriad issues, causing undue prejudice, extensive delay, and confusion." *In re. Sept. 11 Litigation*, 621 F.Supp.2d 131, 158 (S.D.N.Y. 2009). Here, that is almost guaranteed to happen. As in the *Sept. 11 Litigation*:

> The sheer volume of interviews and documents, the confidentiality that pervades the interviews…surely will create scores of mini-trials as each finding of [the Report] is asserted and challenged. Challenging even a single finding could implicate a panoply of documents and interviews.

*Id.*

Thus, "[h]owever valuable an account [the Report] is … [it] cannot be permitted to displace the time-tested search for truth by examination and cross-examination," *id*, and the Court should not hold that the Perkins Coie Report is admissible. *See id*; *see also*, *Bernard*, 2014 WL 12738932, at *6 (finding in a similar case that even if an investigative report prepared by outside counsel was admissible, it would still violate Rule 403, as it would "usurp[] the province of the jury by offering opinions as to an ultimate issue" and "present[] a substantial risk of misleading the jury").

### III.    <u>CONCLUSION</u>.

For the reasons stated above, Ohio State respectfully requests that the Court either (A) deny plaintiffs' motion, or (B) defer ruling on admissibility until closer to trial or when a fuller record exists.

Respectfully submitted,

DAVE YOST
ATTORNEY GENERAL OF OHIO

/s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
Michael N. Beekhuizen (0065722)
David J. Barthel (0079307)
Carpenter Lipps LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
Phone: (614) 365-4100
Fax: (614) 365-9145
Email: carpenter@carpenterlipps.com
        bricker@carpenterlipps.com
        beekhuizen@carpenterlipps.com
        barthel@carpenterlipps.com

*Special Counsel for Defendant The Ohio State University*

16

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on January 11, 2024. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Michael H. Carpenter

*Trial Attorney for Defendant The Ohio State University*