# THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF OHIO

STEVE SNYDER-HILL, et al.,

    Plaintiffs,

v.

THE OHIO STATE UNIVERSITY,

    Defendant.

Case No. 2:23-cv-02993

Judge Michael H. Watson
Magistrate Judge Elizabeth P. Deavers

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO ADMIT PERKINS COIE REPORT

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**PRELIMINARY STATEMENT**

Through its counsel, OSU hired Perkins Coie LLP to conduct an investigation into the allegations of Dr. Strauss's misconduct dating back to the 1970s and OSU's knowledge of that abuse. That investigation resulted in the Perkins Coie Report (the "Report"). OSU fails to refute that its then-President repeatedly and publicly acknowledged the accuracy of the Report's findings and apologized for OSU's misconduct described in the Report, both of which manifested adoption of the Report. Because OSU adopted the Report, and because OSU has stated that Perkins Coie acted as OSU's agent and with OSU's authorization in issuing it, the Report is admissible non-hearsay (or, alternatively, trustworthy hearsay). OSU cannot truly rebut the accuracy or reliability of the Report yet seeks to exclude its contents from the jury.

Because the global issue of OSU's knowledge of and inaction regarding Dr. Strauss's abuse will be relevant to every Plaintiff's case, Plaintiffs seek to resolve the threshold issue of the Report's admissibility to conserve the Court's and the parties' resources. Holding the Report admissible will narrow discovery and focus necessary discovery on the truly disputed issues.

**ARGUMENT**

**I.  THE REPORT'S THRESHOLD ADMISSIBILITY SHOULD BE RESOLVED NOW**

Plaintiffs' motion is timely and appropriate.[1] OSU's arguments to the contrary fail for two reasons.

---

[1] Plaintiffs' motion is properly and permissibly brought separately from the motion filed in *Gonzales v. The Ohio State Univ.*, ECF No. 9, No. 2:23-cv-3051 (S.D. Ohio). The five cases brought against OSU for its role in Dr. Strauss's abuse have been marked as related, not consolidated. *Snyder-Hill* Plaintiffs' counsel have worked closely with plaintiffs' counsel in the other four cases to coordinate discovery and strategy and will continue to do so, but each case has different counsel who may ultimately make different strategic decisions about how to frame a given motion or argument. Events to date evidence Plaintiffs' continued coordination and rare need to have separate filings. Nor did OSU inquire whether Plaintiffs in the two cases would have consented to a single reply, which would have streamlined briefing.

1

First, while Plaintiffs do not believe this motion to be the proper forum to litigate the precise elements of proof, OSU's claim that the Report would not assist Plaintiffs in proving OSU's culpability is wrong.[2] The Report provides evidence common to all Plaintiffs that establishes the illegality of *OSU*'s conduct, including that OSU personnel with authority to take corrective action knew of Dr. Strauss's abuse and failed to respond, that OSU maintained a policy of deliberate indifference to reports of sexual misconduct, that such indifference created a heightened risk of sexual harassment, and that a "typical lay person" would not have known that OSU exposed them to that risk. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 702 (6th Cir. 2022) (quoting *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015)). As the culmination of a year-long, $6.2 million investigation into OSU's knowledge and inaction regarding Dr. Strauss's abuse, the Report plainly helps answer those questions. That other elements of this litigation—such as damages—may be Plaintiff-specific, as OSU notes, does not negate the value of admitting the Report and streamlining discovery across the Plaintiffs' cases.

The Report does more than establish that certain OSU personnel knew about Dr. Strauss's abuse, or that he was employed at OSU when he committed that abuse. It also concludes that, even though students complained of the abuse from 1979 to 1996 to OSU personnel with "persistence, seriousness, and regularity," "no meaningful action was taken by the University to investigate or address the concerns until January 1996." Report at 1-2. For example, the Report describes a 1982

---

[2] OSU wrongly conflates Plaintiffs' two claims, one predicated on OSU's deliberate indifference to Strauss's known conduct specifically, *see* ECF No. 1 (Compl.) at 419-20; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998), and a second premised on OSU's broader "official policy" of deliberate indifference to sexual harassment, *see* ECF No. 1 at 412-19; *Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 465 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 574 (2023); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007). These are separate theories of liability with different elements. *See Gebser*, 524 U.S. at 290 (explaining announced liability standard applies only to cases "that do not involve official policy of the recipient entity"); *Simpson*, 500 F.3d at 1176-79 (same). OSU is also wrong that Plaintiffs must establish the harassment they suffered was "severe" and "pervasive." ECF No. 29 at 4. This requirement applies only to claims concerning student-on-student sexual harassment. *See Wamer v. Univ. of Toledo*, 27 F.4th 461, 468-69 (6th Cir.), *cert. denied*, 143 S. Ct. 444 (2022).

report by the then-primary physician in the Student Health Center's Sports Medicine Clinic, Dr. David Henderson, on the quality of medical care for OSU student-athletes. The initial report draft stated that "[Strauss] works for no one, answers to no one, and is accountable to no one," and Dr. Henderson's concerns were escalated to the Head Team Physician and Director of OSU's Sports Medicine Division and to then-University President Edward Jennings. *Id.* at 116. The Report also describes a 1994 investigation by OSU's Director of Sports Medicine and Head Team Physician into student complaints about Dr. Strauss, which concluded that the reports were based on "unfounded rumors." *Id.* at 3. Finding the Report admissible will either hone or resolve the inquiry of OSU personnel's knowledge and inaction across multiple decades, and it will refine the deliberate-indifference inquiry.

Second, resolving the question of the Report's admissibility now will indisputably narrow discovery. OSU paints an unfoundedly grim picture of discovery, alleging without support that the parties will "undoubtedly" take discovery on each aspect of the Report in dispute, "whether ultimately relevant or not." ECF No. 29 at 5. Plaintiffs have no interest in delaying or expanding the case unnecessarily. To the contrary, as explained in Plaintiffs' opening brief and the parties' joint Rule 26(f) report, *see* ECF Nos. 14, 26, Plaintiffs seek a ruling on the Report's admissibility to limit the discovery required to establish OSU's knowledge of and inaction regarding Dr. Strauss's abuse, as well as its deliberate indifference. The fact that the parties will conduct individualized discovery for Plaintiffs does not change the fact that the Report offers reliable, admissible evidence of *OSU*'s part in Dr. Strauss's abuse. The bellwether process the Court has put in place will guide Plaintiff-side discovery, but the Defendant in each case is the same, and the Report equivalently helps to address the question of OSU's role.

3

The Report's admissibility is a threshold issue that is easily resolved because the Report is relevant non-hearsay as a matter of law (or, alternatively, trustworthy hearsay). There is therefore no need, as there may be when "a court is unable to determine whether or not certain evidence is clearly inadmissible," *Braun v. Coulter Ventures, LLC*, No. 2:19 Civ. 05050, 2023 WL 348225, at *1 (S.D. Ohio Jan. 20, 2023), to defer ruling on the Report's admissibility until a later date. Instead, because the question of the Report's admissibility has arisen, it should be answered.[3] *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

## II. THE REPORT IS AN ADMISSIBLE NON-HEARSAY STATEMENT

The Report is admissible as OSU's statement under subsections (B), (C), and/or (D) of Rule 801(d)(2)—*i.e.*, as a statement adopted by OSU, a statement by OSU's agent, and a statement by a party authorized by OSU.

<u>Adoption</u>. OSU seeks to minimize its adoption of the Report by describing its actions as those of a "messenger." ECF No. 29 at 8. But OSU's own communications demonstrate conclusively that it did far more than "share[] e-mail updates about the report and investigation" or host the Report on its website. *Id.* Rather, OSU publicly and repeatedly acknowledged the accuracy of the Report's findings, apologized for the misconduct described in the Report, and created a task force on sexual abuse based in part on the Report's findings. ECF No. 26 at 4-5, 10-11. OSU does not refute that then-OSU President Drake said, upon the Report's publication, that OSU's "fundamental failure at the time to prevent this abuse was unacceptable—as were the inadequate efforts to thoroughly investigate complaints raised by students and staff members."[4] It

---

[3] Plaintiffs request that, should the Court deny this motion, any denial be made without prejudice subject to full discovery on the nature of OSU's relationship with Perkins Coie.

[4] Ohio State Univ., *Independent investigation finds Ohio State doctor Richard Strauss abused students from 1979 to 1998* (May 17, 2019), https://news.osu.edu/independent-investigation-finds-ohio-state-doctor-richard-strauss-abused-students-from-1979-to-1998.

4

ignores President Drake's express acknowledgment that "Strauss' actions and the university's inaction at the time were unacceptable," or his apology, made "*[o]n behalf of Ohio State*," "to each person who endured Strauss' abuse."[5] And it fails to acknowledge his public communications that "Strauss' conduct was reprehensible, . . . the university's failures at the time are completely unacceptable,"[6] and "[t]he university of decades ago failed these individuals – our students, alumni and members of the Buckeye community."[7] All of these statements make clear the seriousness and extent of OSU's adoption of the Report.[8] *Cf. Transbay Auto Serv., Inc. v. Chevron USA Inc.*, 807 F.3d 1113, 1119-20 (9th Cir. 2015) ("To constitute an adoptive admission, the action that a party takes in conformity with the document need not be serious.").

Furthermore, OSU cites its Answer as somehow dispositive. ECF No. 5 at 443-44. OSU's litigation counsel's refusal to adopt the Report explicitly in this litigation is irrelevant. OSU cannot make repeated public statements adopting the Report, then claim not to be bound by those statements through the use of careful language in its pleadings to avoid admissibility. This is the point made by *Pernix Ireland Pain Dac v. Alvogen Malta Operations Ltd.*, 316 F. Supp. 3d 816 (D. Del. 2018). There is a difference between "expert witnesses who were retained for purpose of

---

[5] President Michael V. Drake, Ohio State Univ., *A Message from President Drake: Strauss Investigation Update* (May 17, 2019), https://president.osu.edu/strauss-update-alumni-may-2019 (emphasis added).

[6] Ohio State Univ., *Ohio State announces settlement of 11 of 18 lawsuits brought by survivors of deceased sex abuser Richard Strauss* (Mar. 6, 2020), https://news.osu.edu/ohio-state-announces-settlement-of-11-of-18-lawsuits-brought-by-survivors-of-deceased-sex-abuser-richard-strauss/.

[7] Ohio State Univ., *Ohio State, 162 survivors finalize $40.9 million settlement in Strauss case* (May 8, 2020), https://news.osu.edu/ohio-state-162-survivors-finalize-409-million-settlement-in-strauss-case/.

[8] Instead, OSU's argument focuses on the Task Force on Sexual Abuse, which the University itself said was "created as part of the response to the abusive actions of Richard Strauss." Ohio State Univ. Task Force on Sexual Abuse, *Report*, 52 (Nov. 5, 2020), https://www.compliance.osu.edu/assets/resources/task_force_report.pdf. Whether or not the Task Force alone constitutes adoption of the Report is irrelevant given President Drake's statements and apologies. But OSU's public-facing position on the Task Force only supports Plaintiffs' position. Additionally, to the extent the Task Force "did not conduct its own independent investigation . . . or make factual assessments independent of [] public reports" such as the Report at issue, such a disclaimer only emphasizes the Task Force's reliance on the Report to inform its recommendations. *Id.* at 3.

5

litigation" and "experts who were retained to investigate a matter and whose conclusions are adopted, expressly or implicitly, by the retaining party apart from litigation." *Id.* at 821 n.3. "The reports in the latter type of case"—such as the Report, which was adopted separately from this litigation—"have been admitted against the retaining party in subsequent litigation." *Id.* (citing *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998); *Pilgrim v. Trs. of Tufts Coll.*, 118 F.3d 864, 870 (1st Cir. 1997)).

The question here is not whether the Report was produced by an independent, external entity. It is "whether the surrounding circumstances tie [OSU] and the [Report] together in some meaningful way" given the extent of OSU's acceptance of and action upon the Report's findings. *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (adopting general rule). OSU acknowledged the Report's findings, apologized for the misconduct described in the Report, and convened a task force on sexual abuse that relied on the Report's findings to inform its conclusions. Such actions are more than enough to manifest adoption of the Report.

Agency and Authorization. Separately, the Report is not hearsay because whether or not Perkins Coie was asked to draw conclusions favorable to OSU during its investigation of Dr. Strauss's abuse, the Court has confirmed that Perkins Coie "was retained by its client, Porter Wright, to perform an independent investigation for Porter Wright and that Porter Wright was engaged by OSU to provide legal advice to OSU to some extent relating to that investigation." *In re. Subpoena to Perkins Coie LLP*, ECF No. 75 at 6, 2:19-mc-000038 (S.D. Ohio). The Report Perkins Coie issued was created in the scope of that employment and authorized by OSU.

The cases OSU cites in opposition do not change that conclusion. *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147 (3d Cir. 1995), which found that an expert witness could not be authorized to make an admission in litigation for the party that hired the expert, based its

6

conclusion in part on the lack of an "explicit finding on the record that [the expert] was an agent of the defendant." *Id.* at 164 & n.20. *N5 Technologies LLC v. Capital One N.A.*, 56 F. Supp. 3d 755 (E.D. Va. 2014), states similarly that expert reports are "not admissible under Rule 801(d)(2) absent a showing—*not present here*—that the expert was acting as the party's agent or employee or was specifically authorized to make a statement on that subject."[9] *Id.* at 765 (emphasis added). As established by Plaintiffs' opening brief, *see, e.g.*, ECF No. 26 at 13, under OSU's view, Perkins Coie *was* acting as its agent.

OSU does not deny—nor could it—that comments made "within the scope of [an employee's] employment" are admissible non-hearsay, *Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003), or that attorneys can be characterized as an agent for purposes of this rule, 30B Fed. Prac. & Proc. Evid. § 6776 (2023 ed.). And Plaintiffs' argument is not that Perkins Coie is somehow acting in a representational capacity in this litigation. *Cf. Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1198 (3d Cir. 1993) ("[N]ot every out-of-court statement by an attorney constitutes an admission which may be used against his or her client."). The issue at hand is the "scope" of Perkins Coie's "authority" as OSU's agent, at the time the Report was issued, to make the statements that it did. *United States v. Dolleris*, 408 F.2d 918, 921 (6th Cir. 1969). "[S]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986). The statements need not have been made in a pleading to satisfy that standard. *See id.* Perkins Coie itself explained: "As contemplated at the outset of the Investigation, we were asked

---

[9] *Cooper v. Meritor, Inc.*, 363 F. Supp. 3d 695 (N.D. Miss. 2009), concerns a different hearsay exception altogether. *See id.* at 700.

7

to deliver our factual findings to the University . . . at the conclusion of our Investigation."[10] There cannot be any doubt that the Report was contemplated as part of Perkins Coie's responsibilities in its employment by OSU, and it is therefore admissible as a statement by OSU's agent and a statement by a party authorized by OSU.

### III. ALTERNATIVELY, THE REPORT IS TRUSTWORTHY HEARSAY

OSU provides no support for its claim that the Rule 807 exception for hearsay is used only in "rare circumstances," and cites no binding precedent to contradict its application. ECF No. 29 at 12. Because the Report meets the exception's requirements, it is admissible.

First, the Report has sufficient guarantees of trustworthiness. The totality of circumstances under which the Report was created weigh strongly in Plaintiffs' favor: Perkins Coie was formally retained by OSU to investigate Dr. Strauss's abuse; there is no reason to believe that Perkins Coie was untruthful or careless in producing the Report; and the Report is a thorough, considered document drafted after an expensive and lengthy investigation by highly qualified attorneys. *See Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 578 (6th Cir. 2013). OSU attempts to undercut the Report's quality by pointing to the age and anonymity of the statements made to Perkins Coie's investigators. But Perkins Coie made substantial efforts to verify statements, and the Report "provide[d] a detailed, comprehensive summary of the most salient or *broadly corroborated* witness accounts regarding 'University knowledge,' particularly among individuals who had administrative responsibilities at the University."[11]

---

[10] Report at 9.

[11] Report at 88 (emphasis added); *see id.* ("More than 50 individuals who were members of the OSU Athletics Department staff during Strauss' time at the University corroborated these student accounts during interviews with the Investigative Team. The student and staff accounts were further corroborated by various contemporaneous records that we located in the Independent Investigation, as detailed below.").

8

Second, the Report is more probative with respect to OSU's knowledge of Dr. Strauss's abuse than other evidence that Plaintiffs can obtain short of extensive and expensive discovery against OSU. Any new discovery efforts that Plaintiffs undertake now to re-do the Report's investigation will face the exact same problems identified by OSU, only to an even greater extent. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (noting the specific problems that the passage of time presents in litigation, including lost evidence, missing witnesses, and fading memories). *Cf. Osborn v. City of Columbus*, No. 2:20 Civ. 1229, 2023 WL 5541773, at *4 (S.D. Ohio Aug. 29, 2023) ("The perception of a bystander who only heard the crash and came down to speak to an officer is not more probative than the videos of the actual encounter."). The Report is therefore admissible hearsay under Rule 807's residual exception.

### IV. RULE 403 DOES NOT BAR FINDING THE REPORT ADMISSIBLE, BUT THE COURT NEED NOT DECIDE ITS EFFECT NOW

Admitting the Report will not supplant the crucial function of the jury, or confuse or obfuscate the issues. *See* Fed. R. Evid. 403. That there are 235 individual Plaintiffs across the 5 cases does not render the Report less critical as evidence, but more so. OSU again conflates Plaintiff- and Defendant-side discovery: as described above, while Plaintiffs have individual cases against OSU, the Report will assist Plaintiffs in proving the illegality of OSU's conduct, including whether and when OSU personnel with authority to take corrective action knew of Dr. Strauss's abuse and failed to respond, and when Plaintiffs should have known that OSU exposed them to that risk. Many OSU personnel served in their roles for multiple years; OSU cannot seriously claim that Plaintiffs' claims are so individualized that establishing when such personnel knew of Dr. Strauss's abuse and how long they continued to work at OSU while failing to act on such knowledge will do anything but assist in resolving that inquiry across multiple Plaintiffs. *Cf. In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 157-58 (S.D.N.Y. 2009) (declining to admit a 400-page report

9

in multidistrict litigation involving thousands of plaintiffs and billions of dollars in damages); *Bernard v. E. Stroudsburg Univ.*, No. 3:09 Civ. 00525, 2014 WL 12738932, at *6 (M.D. Pa. Oct. 16, 2014) (declining to admit "tentative findings of outside counsel" hired to provide legal conclusions and recommendations).

To the extent that certain portions of the Report might be irrelevant to Plaintiffs' claims or confusing, the Court has the inherent power to manage such issues at trial. Plaintiffs respectfully recommend that the Court defer ruling on the application of Rule 403 to any given section of the Report until the commencement of bellwether trials.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to hold that the 2019 Report issued by Perkins Coie LLP is admissible.

| | |
|---|---|
| Dated: January 25, 2024<br>New York, New York | EMERY CELLI BRINCKERHOFF<br>ABADY WARD & MAAZEL LLP |

By:  /s/ Sonya Levitova
Ilann M. Maazel (admitted *pro hac vice*)
Debra L. Greenberger (admitted *pro hac vice*)
Sonya Levitova (admitted *pro hac vice*)
600 Fifth Avenue
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: slevitova@ecbawm.com

SCOTT ELLIOTT SMITH, LPA
Scott E. Smith (0003749)
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail:ses@sestriallaw.com

PUBLIC JUSTICE
Adele P. Kimmel (admitted *pro hac vice*)
Alexandra Brodsky (admitted *pro hac vice*)
1620 L Street, NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing motion and accompanying memorandum was filed electronically on January 25, 2024.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel.  The parties may access this filing through the Court's ECF system.


                                          */s/ Sonya Levitova*
                                          Sonya Levitova