# THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: SUBPOENA TO PERKINS COIE LLP | Case No. 2:19-mc-00038<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Deavers |

**PLAINTIFFS' REPLY TO THE OHIO STATE UNIVERSITY'S RESPONSE TO THE MAGISTRATE JUDGE'S JANUARY 3, 2024 ORDER**

## INTRODUCTION

OSU asks this Court to ignore the clear evidence about the purpose of the Perkins Coie Report. The Report itself and OSU's public messaging about it made clear its purpose: Perkins was to be "independent," not beholden to OSU's institutional interests. Perkins launched a fact-finding mission—it was not retained to provide legal advice. The team was to follow all leads and find the truth. OSU took a well-publicized stand in favor of truth and accountability, not a legally-protective approach of protecting its litigation position. And it structured the engagement with Perkins accordingly: styling the investigation as "independent," not reviewing drafts, and promising to disclose the Report publicly, regardless of how damning the findings were.

Now, OSU says this was a public relations ruse. A behind-the-scenes purpose of the Perkins Coie investigation, it now claims, was to defend against litigation by survivors. This Court should not credit this self-serving claim given the wealth of evidence to the contrary. But even if credited, the work product privilege does not apply. It does not apply in cases, where, as here, the documents at issue would have been prepared even without the prospect of litigation. Perkins Coie's investigation was not conducted "because of" an anticipation of litigation, and the information Plaintiffs seek would equally have been created for the non-litigation purpose of finding the "truth" about Dr. Strauss's abuse and OSU's role in it.

## ARGUMENT

The work product doctrine does not apply to the information Plaintiffs seek. First, Perkins Coie's investigation was not conducted in anticipation of litigation, and therefore is not work product. Second, even when prepared in anticipation of litigation, witness names and witness communications are categorically not work product. Finally, to the extent that any of the information sought can be considered work product, Plaintiffs are entitled to the information because of their substantial need and undue hardship.

I.  **PERKINS COIE'S INVESTIGATION WAS NOT CONDUCTED IN ANTICIPATION OF LITIGATION**

OSU and Perkins Coie have not carried their burden of demonstrating that Perkins Coie's investigation was conducted in anticipation of litigation. The investigation, therefore, is not protected by work product privilege. As an initial matter, generalized declarations (such as the Trombino Declaration, ECF No. 2-1, and the Paoletti Declaration, ECF No. 77-1) are insufficient to demonstrate that an entire investigatory file and all of the information contained within it was prepared in advance of litigation. *McNeil v. Mount Carmel Health Sys.*, No. 20-cv-258, 2021 WL 5235103, at *4 (S.D. Ohio Nov. 10, 2021). In any event, OSU and Perkins Coie have failed to show that the Perkins Coie investigation would not "have been prepared in substantially the same manner irrespective of the anticipated litigation." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). Consequently, the information Plaintiffs seek about the investigation is not entitled to work product protection and must be disclosed.

A.  **General declarations cannot cloak an entire investigatory file in work product protection.**

While a "specific and detailed affidavit" can "establish[ ] that *a document* was prepared in anticipation of litigation," an affidavit cannot establish that every piece of information within an investigation file was created in anticipation of litigation. *Gruenbaum v. Werner Enters. Inc.*, 270 F.R.D. 298, 304-05 (S.D. Ohio 2010) (emphasis added). "[G]eneral statements" are insufficient to invoke work product protection for "hundreds of documents, created over the course of many months." *McNeil*, 2021 WL 5235103, at *4. In fact, *McNeil* held that a privilege log and accompanying affidavit that "declare[d] that every document marked work-product on the privilege log was created in anticipation of litigation" did not meet the defendants' burden of showing that "any *particular* document" was created in anticipation of litigation. *Id.* Based on the affidavit, the privilege log, and the documents themselves, *McNeil* held that the defendants had

not met their burden to demonstrate work product applies and ordered defendants to produce the documents. *Id.* at *4-5. Other courts within the Sixth Circuit have reached the same conclusion in similar situations. *See, e.g.*, *Ohio A. Philip Randolph Inst. v. Smith*, 360 F. Supp. 3d 681, 692-93 (S.D. Ohio) (holding that "sweeping statement[s in a declaration] pertaining to every document marked 'work product' [on the privilege log] [are] not the kind of 'specific and detailed' evidence required to invoke [work product] privilege"), *vacated on other grounds*, 802 F. App'x 185 (6th Cir. 2020); *Schnatter v. 247 Grp. LLC*, No. 20-CV-03, 2021 WL 5018741, at *8 (W.D. Ky. Oct. 28, 2021) (ordering production where party opposing production relied on "conclusory statements" in a declaration to connect the underlying documents to anticipation of litigation).

Here, as the Court has already noted, OSU and Perkins Coie have not provided a privilege log of the investigation documents. Order, ECF No. 75, at 6. Instead, they rely on general declarations claiming that *all* of the information contained within Perkins Coie's entire investigatory file was created in anticipation of litigation. That alone is not enough to imbue the underlying file with work product protection. *Compare McNeil*, 2021 WL 5235103, at *4, *with* ECF No. 2-1 *and* ECF No. 77-1.

   **B.** **Perkins Coie's investigation would have been conducted in substantially the same manner regardless of litigation risk.**

Even if generalized declarations alone could suffice to imbue an entire investigatory file with work product protection, the Trombino and Paoletti Declarations would fail to do so here. "To determine whether a document has been prepared 'in anticipation of litigation,'. . . we ask two questions: (1) whether that document was prepared 'because of' a party's subjective anticipation

of litigation . . . and (2) whether that subjective anticipation was objectively reasonable."[1] *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting *Roxworthy*, 457 F.3d at 594).

The Perkins Coie Report itself demonstrates that Perkins Coie's investigation and the resulting documents were not prepared in anticipation of litigation. From the investigation's outset, OSU explained in public statements that the purpose of the investigation was to "uncover[ ] the truth, understand[ ] how this happened, and work[ ] as a community to help prevent any such incidents."[2] Now, OSU seeks to undermine its own previously stated purpose by manufacturing a self-serving post-hoc explanation that the investigation was *actually* performed because of the prospect of future litigation. *See generally* ECF No. 77-1; OSU's Resp. to Jan. 3, 2024 Order, ECF No. 77, at 7-12. But "a document will not be protected [by work product privilege] if it would have been prepared in substantially the same manner irrespective of anticipated litigation." *Roxworthy*, 457 F.3d at 593-94. Here, the underlying investigation would have been conducted in "substantially the same manner" regardless of the threat of litigation. *Id*.

After all, if anticipated litigation were *a* reason that OSU had commissioned Perkins Coie's investigation, Perkins's investigation would not have been conducted in a different manner. The Paoletti Declaration itself explains that the fact that litigation was contemplated "did not influence or alter Perkins' independence." ECF No. 77-1 ¶ 12. And, as the Paoletti Declaration explains,

---

[1] However the applicable standard is characterized, the result is the same: the documents underlying Perkins Coie's investigation were not prepared in anticipation of litigation. Where the documents at issue serve both a litigation purpose and an ordinary business purpose, the party claiming protection must show that anticipated litigation was the "driving force behind the preparation of each requested document." *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting *United States v. Roxworthy*, 457 F.3d 590, 595 (6th Cir. 2006)). Investigations into alleged employee misconduct, such as this one, are part of the "normal course" of business "[e]ven if litigation could have been or was anticipated at the time of the investigation." *Pirolozzi v. Stanbro*, No. 5:07-cv-798, 2009 WL 1314765, at *2 (N.D. Ohio May 8, 2009) (applying the standard set forth in *Roxworthy*, 457 F.3d at 593-94); *see also Fine v. ESPN, Inc.*, No. 12-cv-0836, 2014 WL 12586847, at *4 (N.D.N.Y. Oct. 16, 2014) (documents generated during the course of investigation into whether a "University's employees had committed misconduct" were "prepared in the ordinary course of business irrespective of whether there was the potential for litigation").

[2] President Michael Drake, Ohio State Univ., https://president.osu.edu/story/message-drake-0 (Nov. 15, 2018) [hereinafter "Drake Email"].

4

information-sharing during the investigation was one-way from Perkins Coie to OSU, *id.* ¶ 14, meaning that any potential litigation risks OSU faced could not influence the investigation's course, the creation of the underlying documents, or the ultimately published report. Nor did Perkins Coie provide OSU with any advance drafts of the Report before publication, as would be typical if a document is created for litigation purposes. *See* Report at 9. Though OSU surely knew that the underlying facts that Perkins Coie was investigating could expose it to litigation risk, the investigation was not designed in a way that would minimize litigation risk. OSU agreed to publication of an independent investigation *despite* the litigation risk, not *because of* it.

Moreover, Perkins Coie did not conduct any legal analysis during its investigation. It was OSU's litigation counsel, not Perkins Coie, "who assess[ed] expected claims . . . and [ ] likely claims." ECF No. 77-1 ¶ 13. In contrast, Perkins Coie's mandate was expressly limited. The firm was "explicitly retained to only reach factual findings, and not to draw legal conclusions," and "provided no legal advice to the University." Perkins Coie Report at 7. The situation here starkly contrasts with *Roxworthy*: There, the documents sought were two legal "memoranda [that] contain[ed] dense legal analysis of current [ ] law, including arguments and counter-arguments in certain areas of law." *Roxworthy*, 457 F.3d at 594. In holding that those memoranda were protected by work product privilege, the *Roxworthy* court emphasized that the memoranda contained legal analysis and conclusions about how a court might address various legal arguments. *See id.* at 597-99. As the Sixth Circuit has explained, the very purpose of work product privilege is to "allow an attorney to . . . 'prepare his legal theories and plan his strategy without undue and needless interference.'" *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). That is a far cry from what

Perkins Coie did in its investigation, which resulted in no legal analysis or advice. *See* Perkins Coie Report at 7.

Finally, OSU had another clear purpose besides anticipation of litigation when it ordered the investigation and ensuing report. When litigants seeking to prevent disclosure of investigatory materials had other, more obvious reasons for conducting the investigation, courts have held that such underlying documents are not protected by work product privilege. *See, e.g.*, *In re FirstEnergy Corp. Secs. Litig.*, No. 2:20-cv-3785, 2023 WL 8290917, at *9 (S.D. Ohio Nov. 29, 2023) (holding that documents were not work product protected when they were created for "public relations purposes"); *Fine v. ESPN, Inc.*, No. 5:12-cv-0836, 2014 WL 12586847, at *4 (N.D.N.Y. Oct. 16, 2014) (holding that documents underlying investigation into employee misconduct were created for ordinary business purposes and not in anticipation of litigation).

There is no need to guess OSU's and Perkins Coie's purpose in undertaking the investigation: at the time the investigation began, OSU said that its purpose was "uncovering the truth, understanding how [Strauss' abuse] happened, and working as a community to help prevent any such incidents" in the future. Drake Email, *supra* n.2. The Court should believe that statement, not the generalized post-hoc rationalizations that OSU and Perkins Coie now put forth.

    **C.    OSU's arguments to the contrary fail.**

<u>First</u>, OSU asserts that work product protection "extends broadly to facts obtained and recorded by the attorney," including interviews, statements, memoranda, or correspondence recording information. ECF No. 77 at 5. Not so. "The mere fact that a document was prepared by an attorney does not necessarily lead to the characterization of that document as work product." *Shah v. Metro. Life Ins. Co.*, No. 16-cv-1124, 2017 WL 5712562, at *3 (S.D. Ohio Nov. 27, 2017) (quoting *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 181 (S.D. Ohio 1993)); *see also* Section

6

I.A, *supra*.³ In support of this argument, OSU cites Ohio state law, ECF No. 77 at 5, which does not apply here: "work-product doctrine is a procedural rule of federal law," not state law. *In re Pros. Direct Ins. Co.*, 578 F.3d at 438; *see also* Fed. R. Civ. P. 26(b)(3) (defining the scope of work product protection). The *federal* cases OSU cites for its expansive interpretation of work product doctrine only confirm that the Court should conduct a fact-specific inquiry in determining whether the investigation was conducted or the underlying information was obtained in anticipation of litigation. *See CSX Transp., Inc. v. Columbus Downtown Develop. Corp.*, No. 16-cv-557, 2019 WL 1760069, at *5-6 (S.D. Ohio Apr. 22, 2019) (closely examining the "driving factor" behind the creation of the at-issue information); *Feacher v. Intercontinental Hotels Grp.*, No. 3:06-CV-0877, 2007 WL 3104329, at *2-4 (N.D.N.Y. Oct. 22, 2007) (same). Here, such an analysis compels the conclusion that the investigation was not conducted in anticipation of litigation.⁴ *See* Section II.B, *supra*.

Second, OSU implies that Perkins Coie's investigation materials are not subject to disclosure because Perkins Coie relied on its "experience conducting sensitive and complex trauma-informed, survivor-centered independent investigations" in conducting the witness interviews. ECF No. 77-1 at ¶ 13. That investigators relied on their experience conducting sensitive and trauma-informed interviews does not somehow cloak the entire investigation in impenetrable work product privilege. If that were so, defense attorneys could successfully claim that *every*

---

³ Because OSU has not provided a privilege log, it is unclear whether all of the notes and communications that Plaintiffs seek were even recorded by attorneys.

⁴ *CSX Transportation* and *Feacher* are further addressed in Part IV, *infra*. OSU also cites *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981), and *Federal Trade Commission v. Bass Brothers Enterprises, Inc.*, No. C84-1304, No. C84-1311, 1984 WL 2952, at *2 (N.D. Ohio. May 8, 1984), for the proposition that witness interview memoranda "qualify as . . . work product." ECF No. 77 at 6. But in *Upjohn,* the moving party "*concede[d]*" that the underlying materials were work product—*i.e.*, that the materials were created in anticipation of litigation. 449 U.S. at 400 (emphasis added). And in *Bass Brothers,* the court concluded that the underlying documents were created in anticipation of litigation because they contained attorney summaries of witnesses' testimony, as well as attorney impressions and conclusions. 1984 WL 2952, at *2. Neither is true here.

7

investigation undertaken by attorney-investigators in schools and workplaces is work product. But that is not the case. Instead, materials from those types of investigations are often not subject to the privilege. *See, e.g.*, *In re OM Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005) (finding that work product privilege did not apply to investigation documents created by company employees, outside law firm, and outside forensic accountants); *Futhey v. United Transp. Union Ins. Assoc.*, No. 14 CV 463, 2015 WL 2446169, at *2 (N.D. Ohio May 20, 2015) (same, for portions of investigatory materials that did not contain legal advice); *see also* Part IV, *infra* (describing Plaintiffs' substantial need for the documents at issue).

Third, the out-of-circuit case law that OSU points to does nothing to transform the information Plaintiffs seek into work product. For example, in one case OSU relies on, *Sandra T.E.*, a school "[r]eact[ed] to . . . criminal charges and the filing of [a] civil suit" by hiring a law firm to conduct an "internal investigation and provide legal advice to the [School] Board." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 615 (7th Cir. 2010). That stands in stark contrast to the investigation undertaken here, which was part of a public-facing truth-seeking mission by OSU that did not involve legal advice, *see* Perkins Coie Report at 7, and the results of which were ultimately shared with the world, *see also* Pls.' Opp. To Perkins Coie's Mot. to Quash, ECF No. 35, at 12-13 (distinguishing *Sandra T.E.*).

Similarly, OSU's reliance on *Doe 1 v. Baylor University*, an out-of-circuit district court opinion, is misplaced. In *Baylor*, the University engaged an outside law firm "to obtain legal advice" and "review its compliance with federal law." *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 436 (W.D. Tex. 2017). That was not the case here, where Perkins Coie "was not asked to assess or otherwise provide recommendations to [OSU] regarding its current or historical policies, procedures, or practices related to sexual abuse or sexual misconduct." Report at 7. And, as

8

explained above, Perkins Coie expressly "provided no legal advice to the University." *Id.* Considering these drastic differences, any comparison to the *Baylor* court's holding is misplaced.

In short, Perkins Coie's investigation was not conducted in anticipation of litigation, and the work product privilege therefore does not apply to the information underlying that investigation, which Plaintiffs seek.

## II. THE INFORMATION PLAINTIFFS REQUEST IS CATEGORICALLY NOT WORK PRODUCT

Plaintiffs seek four kinds of information from Perkins Coie LLP: the <u>identity</u> of, <u>notes of communications</u> with, and <u>communications</u> with current and former OSU employees, third-party/non-OSU witnesses, and other student witnesses, as well as <u>OSU records</u> which Perkins Coie uploaded into its electronic discovery database. *See* Pls.' Response, ECF No. 76, at 1. The identity of witnesses, written communications with non-survivor witnesses, and notes of such communications are not work product.[5] They are thus unprotected by that privilege.

### A. Witnesses' identities are not work product.

For the reasons explained in Plaintiffs' opposition to Perkins Coie's motion to quash, *see* ECF No. 35 at 7-10, witness names are not attorney work product. The work product doctrine protects "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3)(B). Work product does not protect underlying facts, including the identity of witnesses. 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Prac. & Proc. § 2013 (3d ed. 1998) ("[P]ersons having knowledge of relevant facts are not necessarily the witnesses of any particular party."). Names and identities do not invade the mental processes of attorneys. *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 347 (N.D. Ill. 2005) ("[T]he fact that Jewel (or its counsel) has

---

[5] Rightly, neither Perkins Coie nor OSU claims that OSU's historical records are work product. *See* ECF No. 73, Perkins Coie Reply in Supp. of Mot. to Quash, at 20.

9

talked to certain persons who are potential witnesses, without more, reveals little or nothing about which witnesses Jewel considers important."). They are therefore not subject to work product protection.

This Court has held that parties "may discover the facts upon which [their adversaries], and/or their counsel, base their allegations. Such facts include the names of witnesses from whom counsel obtained the information." *In re Dayco Corp. Derivative Sec. Litig.*, 99 F.R.D. 616, 624 (S.D. Ohio 1983). (citations omitted). Likewise, in *Doe 1 v. Baylor University*, 320 F.R.D. 430 (W.D. Tex. 2017), though work product protection applied to certain information a law firm prepared to "provide legal advice" to the university in the wake of a sexual abuse scandal, *id.* at 434, 441-42, the names of individuals the law firm interviewed nonetheless were not attorney work product, *id.* at 443. The identities of witnesses in this analogous investigation are not work product.

Until 2015, the Federal Rules explicitly stated that discoverable information included "the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. The 2015 Amendments omitted that language *only* because "[d]iscovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples. The discovery identified in these examples *should still be permitted under the revised rule* when relevant and proportional to the needs of the case." *Id.* (emphasis added). Names of witnesses are plainly discoverable, and they "allow all parties equal access to the relevant facts." *Bell v. Swift*, 283 F.2d 407, 409 (5th Cir. 1960); *see also Edgar v. Finley*, 312 F.2d 533, 535-36 (8th Cir. 1963) ("If the claim of privilege may be successfully invoked . . . on the basis that the names of witnesses were furnished to an attorney representing the party to whom the interrogatories are directed, in confidence, the discovery provisions would, to a marked degree, be effectively nullified.").

10

Names simply are not "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3)(B). They are not work product.

### B. Communications with fact witnesses that do not include attorney mental impressions are not work product.

Communications with witnesses that do not contain mental processes of attorneys are also not work product protected by Rule 26(b)(3). "The written statement of a witness . . . is not properly considered the 'work product' of an attorney." *Scourtes v. Fred W. Albrecht Grocery Co.*, 15 F.R.D. 55, 58 (N.D. Ohio 1953), *superseded in part on other grounds*; *see also Ricoh Co., Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003) (holding that emails sent by non-party witnesses to defense counsel were not work product). Therefore, communications sent by non-party witnesses to Perkins Coie are unprotected.

Counsel's written communication to witnesses *may* be work product, but only to the extent that they contain the attorney's mental processes. *See Randleman v. Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008) (communications may contain mental processes where attorneys help a witness draft an affidavit over email); *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-CV-581, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007) (same). There is no reason to believe the emails Perkins Coie sent to witnesses to solicit and arrange interviews contain protected work product, particularly where, as here, Perkins Coie has not provided a privilege log or any other specific information demonstrating that individual communications contain protected information.

### III. OSU WAIVED ANY APPLICABLE WORK PRODUCT PROTECTION WHEN IT PUBLICLY RELEASED THE REPORT

Even if the names of witnesses, communications, and notes were protected by work product doctrine, as Plaintiffs have explained, *see* ECF No. 35 at 13-15, 19-20, OSU waived any applicable privilege when it opted to publicly release the Report containing the testimony of those witnesses. Work product protection is waived when documents are disclosed to a third party, so long as that

11

third party is an adversary. *See Columbia/HCA Healthcare Corp.*, 293 F.3d at 306 ("Other than the fact that the initial waiver must be to an 'adversary,' there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege."); *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) ("voluntary disclosure of private communications by an individual or corporation to third parties" waives attorney-client privilege). OSU released the Report not just to an adversary but to the entire world. Where a party discloses the "substance" or "significant part" of a protected document regarding the same subject matter, the protection is waived. *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254-55 (6th Cir. 1996); *see also In re OM Sec. Litig.*, 226 F.R.D. 579, 592-94 (N.D. Ohio 2005) (dissemination of investigative report waived privilege as to underlying materials in existence at the time of disclosure).

Courts have found waiver in similar circumstances. *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006), for instance, held that two law firms conducting independent investigations into a company waived any privilege that might have applied to subpoenaed materials by sharing the content of those materials with the government. "Because the law firms waived both the attorney-client privilege and the work-product privilege when they disclosed the substance of their investigative interviews, reports, and conclusions with the government, the Court finds that these privileges pose no obstacle to Reyes' attempt to subpoena them." *Id.* at 602; *see id.* at 604 (noting that the law firms "shared their . . . work product with [the government], an adversary"). Here, like in *Reyes*, OSU disclosed the substance of their investigations with countless third parties when they publicly released the report, thus waiving any privilege that might have applied.

OSU relies on *Waters v. Drake*, No. 14-cv-1704, 2016 WL 8118193 (S.D. Ohio Feb. 4, 2016), which does not apply. In *Waters*, publication of the at-issue investigative report about OSU's response to a Title IX Complaint was compelled by federal law, so there was "no voluntary

12

disclosure of privileged information and therefore no waiver." *Id.* at *1. Additionally, *Waters* concerned "communications among OSU personnel" about the report, information Plaintiffs do not currently seek. *Id.* In fact, the *Waters* court noted that it was unclear whether the work product privilege would apply to documents reflecting the content of witness interviews related to the investigation "since they would have been gathered not in anticipation of litigation, but for the separate purpose of preparing the public response to the Title IX complaint." *Id.* at *4.

OSU also cites *In re Vioxx Products Liability Litigation*, No. MDL 1657, 2007 WL 854251 (E.D. La. Mar. 6, 2007), an out-of-circuit opinion that does not support its argument. *In re Vioxx* found that the legal analyses, mental impressions, and attorney-client communications underlying an investigative report undertaken in the wake of "*existing* and anticipated shareholder litigation," *i.e.*, the "fruits of an attorney's trial preparations," were not waived upon publication of the report. *Id.* at *1, *5 (emphasis added). The court did, however, recognize that the publication of a final investigative report could waive the protection "*for that draft*[.]" *Id.* (emphasis added). OSU, in releasing the Report, waived work product privilege as to the identities of witnesses because, in doing so, it released the "substance" or "significant part" of otherwise protected information. *In re Grand Jury*, 78 F.3d at 254-55. Importantly, the Sixth Circuit has explicitly rejected the concept of "selective waiver": "The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality as to others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." *Columbia/HCA Healthcare*, 293 F.3d at 303 (internal quotation marks omitted) (citing *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981)); *see id.* at 306-07 (concluding that same standard of waiver applies to both attorney-client and work product privilege because "there is no compelling reason for differentiating" the two). OSU cannot waive

the privilege when it serves to do so, then re-claim it at a later date. OSU's release of the Report waived its claim to work product.

### IV. PLAINTIFFS HAVE DEMONSTRATED A SUBSTANTIAL NEED FOR ALL FOUR CATEGORIES OF DOCUMENTS

Even if this Court finds that the information Plaintiffs seek is protected as work product, Plaintiffs have a substantial need for the information and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Citing only unpublished district court cases, OSU asserts that proving substantial need requires Plaintiffs to show that the materials sought are "essential" or that "without the information a distinct advantage would accrue to the party having it." ECF No. 77 at 17. But the Sixth Circuit has never adopted that legal standard. *See In re Perrigo Co.*, 128 F.3d 430, 437-38 (6th Cir. 1997) (affirming a lower court's finding of substantial need without imposing any heightened requirements). Instead, in the Sixth Circuit, "[s]ubstantial need consists of the relative importance of the information in the documents to the party's case and the ability to obtain that information by other means." *Stampley v. State Farm Fire & Casualty Co.*, 23 F. App'x 467, 471 (6th Cir. 2001).

Without the witness names, communications, notes, and historical records, Plaintiffs will be unable to accurately establish what OSU administrators and employees knew about Strauss's abuse and when they knew it. Witness names and notes are needed to impeach and confront deponents, *see* ECF No. 35 at 20-21, and the Supreme Court has expressly recognized that disclosure may be required despite the work product privilege's protection where the requested materials are "useful for purposes of impeachment," *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *see FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (explaining that Rule 26(b)(3) codified *Hickman*). Here, the need to impeach and confront deponents with their own prior statements is not speculative. *See In re Dayco Corp.*, 99 F.R.D. at 622 (suggesting parties

14

may establish substantial need where their concerns about deponents are not "speculat[ive]"). As one example, during the Court-ordered deposition of Dr. Ted Grace, Dr. Grace denied that he "had heard that Strauss engaged in inappropriate sexual touching," despite his statements to the contrary in the Report. Grace Dep., ECF No. 35-3, at 118-19. In his deposition, Dr. Grace questioned whether his statements during his interview with Perkins Coie had been "recorded," then asserted he did not remember making the statement. *Id.* Without interview notes, Plaintiffs are unable to impeach or confront witnesses like Dr. Grace. And given that years have passed since the Report was published and decades have passed since the sexual abuse itself, Plaintiffs need the witness names and notes to refresh the memories of deponents.[6] *See Stampley*, 23 F. App'x at 471 (suggesting a plaintiff could establish substantial need where plaintiff was unable to obtain information because of a witness's faulty memory). Finally, Plaintiffs have likewise demonstrated substantial need for witness communications, *see* ECF No. 35 at 20, and OSU makes no argument to the contrary.

Plaintiffs have additionally established they "cannot, without undue hardship, obtain [the] substantial equivalent" of the requested materials "by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). OSU argues that information about OSU witnesses is publicly available. ECF No. 77 at 17. But OSU employs hundreds of employees in its Athletics Department alone. And because Strauss spent two decades at OSU, there are potentially thousands of potential witnesses who were employed by OSU during Strauss's tenure. It would be impossible for Plaintiffs to identify, contact, and depose

---

[6] OSU cites *CSX Transportation, Inc. v. Columbus Downtown Develop. Corp.*, No. 16-cv-557, 2019 WL 1760069 (S.D. Ohio Apr. 22, 2019), for the proposition that work-product doctrine extends to recordings or transcripts of witness interviews. ECF No. 77 at 5. But OSU elides that the *CSX* court held the movants were *entitled* to recordings of witness interviews based on a substantial need for the recordings in that case, reasoning that witnesses' memories had likely "faded" since their initial interviews. *Id.* at *6. And *Feacher v. Intercontinental Hotels Grp.*, No. 06-CV-0877, 2007 WL 3104329, at *5 (N.D.N.Y. Oct. 22, 2007), held that plaintiffs did not show a substantial need for at-issue work product because, unlike here, the defendant had provided them with "the identity and address of the witness in question."

hundreds or thousands of OSU employees in an attempt to match deposition testimony from a given employee to "Trainer A" or "Coach B" in the Report. *Cf. Wash. Bancorporation v. Said*, 145 F.R.D. 274, 280 (D.D.C. 1992) (finding that requiring a party to create an index from thousands of boxes of documents would be undue hardship where plaintiffs already had such an index). Moreover, despite OSU's suggestion to the contrary, ECF No. 77 at 17, witness names cannot be obtained from OSU directly, as OSU's actual litigation counsel, Carpenter Lipps, claims to have no idea who the unidentified witnesses are. Finally, Plaintiffs have no other means by which to obtain the witness communications or notes—Perkins Coie is the exclusive custodian of the notes and witness names.

As to the OSU records that Perkins Coie uploaded into its discovery database, OSU falsely claims that Plaintiffs have access to these materials through OSU's website. As detailed in Plaintiffs' opposition, OSU's own website states that it contains only *some* of the documents provided to Perkins; moreover, the records on OSU's website use a different Bates stamping than the records in Perkins's possession, making it impossible to determine which documents were cited in the Report. *See* ECF No. 35 at 24-25.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Perkins Coie's Motion to Quash Plaintiffs' Subpoena and order Perkins Coie, at this stage of the case, to produce: the identity of, Perkins Coie's notes of communications with, and Perkins Coie's communications with current and former OSU employees, third-party/non-OSU witnesses, and other student witnesses described in Perkins Coie's report, as well as OSU records that Perkins Coie uploaded into its discovery database.

DATED: February 5, 2024        EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

By: /s/ Debra L. Greenberger
Ilann M. Maazel (admitted *pro hac vice*)
Debra L. Greenberger (admitted *pro hac vice*)
600 Fifth Avenue
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com

SCOTT ELLIOTT SMITH, LPA

Scott E. Smith (0003749)
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail: ses@sestriallaw.com

THE LAW OFFICES OF SIMINA VOURLIS

Simina Vourlis (0046689) (Trial Attorney)
856 Pullman Way
Columbus, OH 43212-3860
Phone: (614) 487-5900
Fax: (614) 487-5901
E-Mail: svourlis@vourlislaw.com

SHARP LAW, LLP

Rex A. Sharp
Sarah T. Bradshaw
4820 W. 75th Street
Prairie Village, KS 66208
Phone: (913) 901-0505
E-Mail: rsharp@midwest-law.com
E-Mail: sbradshaw@midwest-law.com

## **CERTIFICATE OF SERVICE**

A copy of this document was served by the Court's ECF System on all counsel of record on February 5, 2024, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

/s/ _____