THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVE SNYDER-HILL, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02993 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE
REGARDING JULY 17, 2025 NOTICE**

When Plaintiffs' counsel learned of a regrettable violation of the Protective Order by two Plaintiffs, we immediately brought the violation to the Court's attention and affirmatively implemented an effective and appropriate remedy. Plaintiffs' counsel is committed to ensuring compliance with the Protective Order. OSU, in turn, has used Plaintiffs' filing as an opportunity to again press its failed request for a gag order, though it suffered zero harm from this disclosure of non-confidential information.

For some forty years, Defendant the Ohio State University successfully concealed one of the biggest sex scandals in the history of American higher education. When that effort finally unraveled, OSU engaged in a massive public relations campaign to convince the public that the OSU "of today" is a different institution, going so far as to file settlement offers *on the public docket*. It now seeks the most noxious, disfavored offense against the First Amendment: a blanket prior restraint and unilateral gag order against *all* Plaintiffs and *all* Plaintiffs' counsel, in a case of immense local and national concern, while OSU continues to press its own narrative—despite this Court's prior determination that the First Amendment protects Plaintiffs' speech. OSU's request

1

is neither proportionate nor sufficiently tailored to address the violation of the Protective Order and should be denied. OSU also seeks unwarranted and unduly punitive sanctions against the Plaintiffs involved in the Protective Order violation, despite the fact that the safeguards Plaintiffs' counsel put in place (which would only apply to Plaintiffs, not Defendant) have protected against further violations for subsequent high-profile depositions. This Court cannot and should not permit OSU to sweep this case under the rug, again.

I.  BACKGROUND

   A.  As Soon as Dr. Strauss's Abuse Became Public, OSU Launched a Massive Press Operation to Protect Its Reputation

In April 2018, approximately forty years after students first began complaining about Dr. Strauss's abuse, OSU announced that it was opening an investigation into the allegations of his misconduct dating back to the 1970s and OSU's knowledge of that abuse. That investigation resulted in a 182-page report by Perkins Coie documenting Dr. Strauss's prolific sexual abuse, OSU's knowledge of that abuse, and its inaction. The report concluded that Dr. Strauss sexually abused at least 177 former students and that OSU personnel at the time knew of concerns about Dr. Strauss's conduct but failed to investigate or act meaningfully in response. Based on the report's conclusions, in 2019 and 2020, OSU's president condemned "Strauss' reprehensible conduct and the university's failure at the time to prevent the abuse," took responsibility for OSU's "unacceptable" "fundamental failure at the time to prevent this abuse," admitted Dr. Strauss abused at least 177 former students, and apologized to Dr. Strauss's victims.[1]

---

[1] *See, e.g.*, Ohio State Univ., *Independent investigation finds Ohio State doctor Richard Strauss abused students from 1979 to 1998* (May 17, 2019), https://news.osu.edu/independent-investigation-finds-ohio-state-doctor-richard-strauss-abused-students-from-1979-to-1998; President Michael V. Drake, Ohio State Univ., *A Message from President Drake: Strauss Investigation Update* (May 17, 2019), https://president.osu.edu/strauss-update-alumni-may-2019; Ohio State Univ., *Ohio State announces settlement of 11 of 18 lawsuits brought by survivors of deceased sex abuser Richard Strauss* (Mar. 6, 2020), https://news.osu.edu/ohio-state-announces-settlement-of-11-of-18-lawsuits-brought-by-survivors-of-deceased-sex-abuser-richard-strauss/.

Even as OSU acknowledged its failure to protect its own students, the university was busy distancing itself from its sordid past. OSU's public relations campaign included a website featuring language about "change at Ohio State," explaining that OSU "is a fundamentally different university today than it was when Strauss was an employee," "has embraced and enhanced stringent compliance standards separate and apart from its response to Strauss," and "[o]ver the past 25 years, . . . has made robust changes to its culture and policies to protect students, faculty and staff."[2] OSU's public relations campaign touts the "many actions" OSU has taken, such as designating a Title IX coordinator in 2011 and taking "decisive and immediate action" in response to misconduct by the marching band and football staff.[3] Over and over again, OSU has emphasized to the public and the media how much it has transformed as a university.[4]

OSU's press efforts have been part and parcel of its legal filings as well: in 2021, calling itself "the Ohio State of today," the university took the unprecedented step of filing a "notice of intent to establish [a] Strauss individual settlement program" on the public docket, willfully violating this Court's rules in order to advertise a purported settlement offer publicly rather than discussing it confidentially with Plaintiffs' counsel. *See* 2:18-cv-736 ECF No. 150. The "Notice" did not even propose a specific settlement framework but only promised to offer one once details were "finalized," further evidencing OSU's lack of good-faith basis for its filing. *See id.* ¶ 9. After

---

[2] Ohio State Univ., *Strauss Investigation* (last visited August 11, 2025), https://straussinvestigation.osu.edu/.

[3] Ohio State Univ., *Change at Ohio State* (last visited August 11, 2025), https://straussinvestigation.osu.edu/strauss-investigation/change.

[4] *See, e.g.*, *Ohio lawmaker pushes hearings for bill to allow Dr. Richard Strauss' accusers to sue Ohio State*, Associated Press (Feb. 4, 2020), https://www.nbcnews.com/news/us-news/ohio-lawmaker-pushes-hearings-bill-allowing-dr-richard-strauss-accusers-n1130061 ("University spokesman Ben Johnson said, 'Ohio State is a fundamentally different university today and over the past 20 years has committed substantial resources to prevent and address sexual misconduct.'"); Susan Tebben, *U.S. Supreme Court denies review of Ohio State University doctor sex abuse case*, Ohio Cap. J. (June 27, 2023), https://ohiocapitaljournal.com/2023/06/27/u-s-supreme-court-denies-review-of-ohio-state-university-strauss-case/ ("Despite hitting a wall at the U.S. Supreme Court, OSU defended its monetary settlements and counseling and treatment coverage for survivors and family members, and said the school 'is a fundamentally different university today than when Strauss was employed.'").

3

filing this notice, OSU immediately began to publicize the settlement program on its website and to the media, even though it had not discussed the program or its terms with Plaintiffs.[5]

Since survivors first came forward in 2018, OSU has eagerly sought public attention to further its preferred narrative about the university's supposed transformation and generosity towards survivors of Dr. Strauss's abuse. But OSU's press efforts obscure less pleasant truths. Nowhere in its public-facing proclamations has OSU mentioned that it dissolved its Sexual Civility and Empowerment unit in 2018—only three years after its creation—"amid concerns that [the unit] failed to properly report students' sexual-assault complaints and that some victims were told they were lying or suffering from delusions."[6] Nor does OSU acknowledge that, although it avoided public comment about legislation that would have extended Ohio's statute of limitations for survivors of Dr. Strauss's abuse, OSU worked behind the scenes to *prevent* the bill from reaching the Ohio House of Representatives' floor, including offering to draft testimony against the bill.[7] All the while, OSU has trumpeted the claim that survivors were given the opportunity to settle their suits for "substantial amounts,"[8] painting Plaintiffs as unreasonable for continuing to pursue their claims against the university, even though survivors who were not students were not issued settlement offers at all, and many survivors were only issued settlement offers after this Court initially dismissed their case against OSU—offers that, as reported publicly, were a tiny fraction

---

[5] *See* Ohio State Univ., *Timeline* (last visited Aug. 14, 2025), https://straussinvestigation.osu.edu/strauss-investigation/timeline; Ohio State Univ., *Ohio State announces new settlement program for survivors in remaining Strauss cases* (May 7, 2021), https://news.osu.edu/ohio-state-announces-new-settlement-program-for-survivors-in-remaining-strauss-cases/ (announcing settlement program four days after filing notice).

[6] Jennifer Smola, *Ohio State closes sexual-assault center, fires 4 after complaints*, Columbus Dispatch (last updated June 20, 2018), https://www.dispatch.com/story/news/education/campus/2018/06/19/ohio-state-closes-sexual-assault/11914642007/.

[7] Sarah Szilagy, *As Strauss victims and students supported statutes of limitation bill, Ohio State lobbied against it*, Lantern (Apr. 7, 2022), https://www.thelantern.com/projects/2022/04/07/as-strauss-victims-and-students-supported-statutes-of-limitations-bill-ohio-state-lobbied-against-it/.

[8] Ohio State Univ., *Legal Proceedings* (last visited Aug. 11, 2025), https://straussinvestigation.osu.edu/strauss-investigation/about.

of the settlement "average of $252,000" that OSU has touted (which pales in comparison to similar settlements).[9]

### B. As the Court Has Noted, Plaintiffs Have a Constitutional Right to Speak About the Case

The Court rightfully rejected OSU's previous attempt to curtail Plaintiffs' speech about the case. In May 2024, OSU opposed the *Gonzales* Plaintiffs' motion for an extension of time to submit their fact sheets on the ground that, "rather than focus on completing the fact sheets," someone had put flyers on cars about OSU's response to Dr. Strauss's abuse and Plaintiffs' claims. 2:23-cv-3051 ECF No. 40 at PageID 1005. OSU went so far as to ask the Court to direct Plaintiffs and their counsel "to apply their efforts to the fact sheets, and not unproductive, extra-judicial flier activities." *Id.* In ruling on the motion, the Court stated: "[U]nless Plaintiffs break a law or an Order from this Court, they have a First Amendment right to speak about the case. If Defendant feels Plaintiffs' speech is *legally* inappropriate, it may file a well-supported motion."[10] 2:23-cv-3051 ECF No. 41 at PageID 1011. The Court then reminded counsel "to focus on the issues in the case and to use a professional and courteous tone in filings with the Court." *Id.* at PageID 1012.

### C. After a Violation of the Protective Order, Plaintiffs' Counsel Acted Quickly to Remedy Any Harm and Protect Against Future Violations

The Protective Order operative in this case and the related cases requires that deposition testimony remain presumed confidential for 14 days after receipt of the transcript, in order to give the parties an opportunity to determine whether to assert confidentiality as to any part of the deposition. ECF No. 25 ¶ 5(c) (Protective Order as entered).

---

[9] *See* ECF No. 113 (June 18, 2025 Status Conf. Tr.) at PageID 2239-40; Ohio State Univ., *Timeline* (last visited Aug. 12, 2025), https://straussinvestigation.osu.edu/strauss-investigation/timeline.

[10] Without basis, Defendant suggests in a passing footnote that speaking about the case in the HBO documentary, *Surviving Ohio State*, and the editorial published in *The Lantern*, somehow constitutes inappropriate "extrajudicial" activity by Plaintiffs. ECF No. 120 at PageID 2263 n.1. The Court's logic applies equally to Plaintiffs' current and previous speech.

5

On July 16, 2025, during the deposition of Andy Geiger, Defendant's counsel informed Plaintiffs' counsel that a story relying on unnamed sources had appeared on NBC News in Columbus, purporting to describe part of Mr. Geiger's testimony. Counsel for the *Knight* Plaintiffs contacted the news station and requested that the story immediately be removed. As OSU's submission concedes, the story was updated less than two hours later to remove references to Mr. Geiger's testimony. *See* ECF No. 120-2 (Ex. B) at PageID 2273. And although the story was republished by another news outlet the next day, the story ran for less than a day before it was updated to remove those references there too. *Compare* Ex. 1 (Updated FOX 2 Article dated July 17, 2025, 5:22 PM), *with* ECF No. 120-3 (FOX 2 Article dated July 17, 2025, 3:37 PM). As Plaintiffs detailed in their filing, Plaintiffs' counsel determined that, unbeknownst to counsel, a Plaintiff observing Mr. Geiger's deposition in counsel's office over Zoom had shared information about Mr. Geiger's purported testimony during the deposition with another Plaintiff. ECF No. 116 at PageID 2251. In response to inquiries from NBC News, both Plaintiffs shared information about Mr. Geiger's purported testimony.

By 1:15 PM on July 17, 2025, Plaintiff's counsel filed a Notice alerting the Court to the above and apologizing to the Court, to Defendant's counsel, and to the parties. *See* ECF No. 116. Plaintiffs' counsel proposed an appropriately tailored remedy to balance the parties' rights to attend depositions with the imperative interest in ensuring that the Court's Protective Order is followed moving forward: (1) no Plaintiff (described as a "client" in the Notice, which was not intended to apply to Defendant) will be permitted to witness any future deposition by video/Zoom, (2) any Plaintiff who attends a deposition in person will be required to sign the Protective Order before the deposition begins, and (3) though permitted by the Protective Order, Plaintiffs watching depositions must agree, in writing, that they will not discuss deposition testimony with other

6

Plaintiffs who are not watching the deposition, until informed by their attorney what portions of the deposition have been not designated confidential and are publicly available discovery.

Since the Notice's filing, the parties have deposed two additional OSU witnesses, Jim Jordan and Russ Hellickson. *See* ECF Nos. 118, 121. OSU has raised no confidentiality concerns relating to those depositions—which may be the most high-profile in this case.

II.     **ARGUMENT**

    A.     **OSU's Proposed Remedy Flies in the Face of the First Amendment**

OSU seeks an extreme and unnecessary order from the Court that would infringe on Plaintiffs' and the press's First Amendment rights. The Court should not countenance OSU's approach. Plaintiffs' remedy, as described in the July 17, 2025 Notice, is appropriately tailored and sufficient to cure any limited harm that has occurred.

The Sixth Circuit has long looked unfavorably on gag orders, which directly implicate the First Amendment right to free speech:

> [S]uch broadly based restrictions on speech in connection with litigation are seldom, if ever, justified. Trial judges, the government, the lawyers and the public must tolerate robust and at times acrimonious or even silly public debate about litigation. The courts are public institutions funded with public revenues for the purpose of resolving public disputes, and the right of publicity concerning their operations goes to the heart of their function under our system of civil liberty. The courts have available other less restrictive approaches for insuring a fair trial.

*United States v. Ford*, 830 F.2d 596, 599 (6th Cir. 1987); *see CBS Inc. v. Young*, 522 F.2d 234, 241 (6th Cir. 1975) (finding that the press had standing to challenge a gag order and noting that "any restrictive order involving a prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of First Amendment rights will interfere with the rights of the parties to a fair trial."); *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 485 (6th Cir. 2002) ("In the case of a prior restraint on pure speech, the

7

hurdle is substantially higher: publication must threaten an interest more fundamental than the First Amendment itself." (quoting *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996))).

"Before a court may properly and prospectively limit access to free speech" via a gag order, as OSU requests, the party requesting the order must carry "the heavy burden" of demonstrating that the speech it seeks to restrain "pose[s] a clear and present dangerous threat to a protected competing interest" and there are no "reasonable alternatives [] available having a lesser impact on First Amendment freedoms." *CBS Inc.*, 522 F.2d at 238.

OSU has not carried that burden here.

### 1. Public Interest in This Case Is Understandable and Poses No Threat to OSU's Right to a Fair Trial

OSU argues that a sweeping gag order is justified to protect its right to a fair trial. However, the Sixth Circuit has made clear that public attention to a case, whether generated by statements by the parties themselves, their counsel, or the media, does not inherently impinge on a party's right to a fair trial. To the contrary, prospective jurors are presumed impartial even if they may have some "preconceived notion" about a case; holding otherwise, the Sixth Circuit explained, would be "an impossible standard." *United States v. Blanton*, 719 F.2d 815, 832 (6th Cir. 1983).

There are many good reasons for the public's interest in this litigation. Dr. Strauss was a prolific predator who likely abused thousands of young men over multiple decades. OSU has a sterling reputation for athletics, an involved alumni community, and a large public presence in Ohio. And in recent years, as college after college has confronted sexual abuse scandals, the public has become increasingly attuned to how universities like OSU respond. For all these reasons and more, as described above, the case has already received significant press attention—some organic, some generated by OSU itself. Neither the extant public interest nor the interest the case is likely

8

to receive in the future poses a threat to OSU's right to a fair trial. For instance, the short-lived press articles reporting about Mr. Geiger's deposition which prompted OSU's request contain information that has not been designated confidential, *see infra*, and, in any event, the jury and public will presumptively be entitled to hear confidential information at trial under the governing Protective Order. ECF No. 25 ¶ 14. OSU cannot establish any prejudice from that violation, much less prejudice sufficient to warrant a gag order.

To the extent OSU cites other press statements—statements this Court has already reminded OSU that Plaintiffs have every right to make, 2:23-cv-3051 ECF No. 41 at PageID 1011—these too cannot establish a likelihood of denying OSU's fair trial right.

Indeed, it is hypocritical for OSU to complain about public attention to this case. As outlined above, OSU has painstakingly crafted a public narrative about its response to Dr. Strauss's abuse that suits the university's needs. OSU has emphasized repeatedly on its website, in public statements, and in filings that the "Ohio State of today" is fundamentally different from the place it was when Dr. Strauss abused students on OSU's watch. Plaintiffs have the First Amendment right to engage in the proverbial "marketplace of ideas," in order to disagree with OSU's narrative and highlight their views that OSU is mistreating its own alumni who were sexual abused by a predator who OSU enabled.

## 2. There Are Reasonable Alternatives That Adequately Protect OSU's Right to a Fair Trial

OSU has not—and cannot—show that there are no reasonable alternatives to adequately protect its "right to a fair trial by 'impartial' jurors" other than a unilateral and indefinite gag order on Plaintiffs and their counsel. To the contrary, our judicial system has safeguards in place precisely to mitigate the prejudicial impact of any pretrial media or public interest in a case. Specifically, *voir dire* can be used by both parties to ensure that a panel of impartial jurors is

9

selected and that the parties' right to a fair trial is preserved. *Skilling v. United States*, 561 U.S. 358, 426 (2010) (Alito, J., concurring) ("Careful *voir dire* can often ensure the selection of impartial jurors even where pretrial media coverage has generated much hostile community sentiment."); *Ritchie v. Rogers*, 313 F.3d 948, 962 (6th Cir. 2002) ("a searching *voir dire* of the prospective jurors is the primary tool to determine if the impact of the [pretrial] publicity rises to [a] level" of "actual prejudice").

Defendant's proposed unilateral and indefinite gag order on Plaintiffs and their counsel is wholly unnecessary to ensure fair and effective *voir dire* at the first trial in this case, which is not scheduled to take place for *over one year* from the date of this filing. It is not required, nor is it reasonable, to require that jurors "be totally ignorant of the facts and issues involved" in order to be impartial. *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961). As the Supreme Court has recognized, "in these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity," and "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." *Id.*; *see Lyoya v. Schurr*, No. 1:22-cv-1160, 2025 WL 1466195, at *1 (W.D. Mich. May 2, 2025) (denying request for gag order where trial was "still over a year away" and any potential biases could be "addressed through jury selection if necessary").

### B. Plaintiffs' Proposed Remedy Is Narrowly Tailored and Suffices to Cure the Limited Harm That Has Occurred

Defendant's request for an order identifying and sanctioning the particular Plaintiffs who spoke to news reporters during Mr. Geiger's deposition is unwarranted. Courts consider four factors to review whether sanctions under Rule 37 are appropriate: (i) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (ii) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (iii) whether the party was warned that

failure to cooperate could lead to the sanction; and (iv) in regard to a dismissal, whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). None of these factors supports the imposition of sanctions.

First, there is no evidence that the Plaintiffs who communicated briefly with the media during Mr. Geiger's deposition willfully disregarded the Protective Order or acted in bad faith. Plaintiffs deeply regret their error in sharing information about Mr. Geiger's deposition, and all Plaintiffs have since been thoroughly reminded of the requirements of the Protective Order and fully understand their confidentiality obligations moving forward.

Second, Defendant has not and cannot show that it was prejudiced in any way by this incident. Defendant attaches two articles that contain the same published summary of purported deposition testimony of Mr. Geiger. *See* ECF Nos. 120-1 (Ex. A), 120-3 (Ex. C). The summary of Mr. Geiger's purported deposition testimony, which was attached to OSU's submission, was initially published by NBC4 on July 17, 2025, at 6:02 PM and reads:

> Sources told NBC4's Colleen Marshall that Geiger admitted to knowing that Strauss was taking overly-long showers with student athletes, but could not recall who told him that. He also admitted former fencing coach, the late Charlotte Remenyik, told him that Strauss was abusing students.

*Id.*[11] As Defendant concedes, upon learning of the published article, Plaintiffs' counsel immediately contacted NBC4 and the summary was promptly removed. The article was updated less than two hours later, at 7:48 PM. *See* ECF No. 120-2 (Ex. B). Similarly, the FOX 2 article was updated to remove the summary of Mr. Geiger's purported deposition testimony less than a

---

[11] Plaintiffs intentionally did not attach this article to their July 17, 2025 submission to prevent further dissemination of potentially confidential information. As OSU attached the article in its public filing, Plaintiffs quote it here.

11

day after publication. *Compare* Ex. 1, *with* ECF No. 120-3. Plaintiffs are not aware of any other news outlets that have since republished this information.

Moreover, while the summary of Mr. Geiger's purported testimony indisputably should not have been disseminated until the opportunity for parties to make confidentiality designations had passed, the parties have since made such designations and the information that was disclosed is not marked confidential, so it is publicly available discovery. *See* ECF No. 116 at PageID 2252 n.2. OSU has not claimed any prejudice from this article, nor even argued that the reported information is confidential. To the contrary, OSU chose to attach the since-removed articles to its public court filing (without seeking to file them under seal), further demonstrating that it suffers no harm from further dissemination. As Plaintiffs' counsel made clear when it brought the issue to the Court's attention, this incident was unacceptable and regrettable. But it has not impacted the litigation of this case or the discovery process in any way.

Finally, since July 16, 2025, Plaintiffs' counsel has implemented strict and sufficient safeguards—implemented and managed by counsel, not the Court, as OSU suggests—that obviate the need for sanctions and ensure that such conduct will not occur in the future. Specifically, Plaintiffs are *only* permitted to witness future depositions if they attend a deposition in person and (i) sign the Protective Order before the deposition begins and (ii) agree, in writing, that they will not discuss deposition testimony with other clients who are not watching the deposition, until informed by their attorney what portions of the deposition have not been designated confidential and are publicly available discovery. *See* ECF No. 116. These safeguards have proven successful; again, Plaintiffs have since deposed two other former OSU employees—Congressman Jim Jordan on July 18 and Russ Hellickson on July 31—and Defendant has raised no further issues, despite significant potential press attention to those depositions. In light of Plaintiffs' remedy, Plaintiffs'

counsel is confident that there is no future risk of violation of the Protective Order or the dissemination of confidential information. Further motion practice to penalize and sanction Plaintiffs—as OSU seeks—is unnecessary and a distraction from the weighty litigation the Parties should focus on.

### C. Plaintiffs Do Not Seek to Penalize Ohio State

Defendant contends that Plaintiffs' Notice seeks to penalize Ohio State for Plaintiffs' communications with the media. To clarify, Plaintiffs are not requesting an Order directing OSU or its counsel to refrain from attending depositions in any manner consistent with the Protective Order. Plaintiffs' Notice and proposed remedy is meant to apply solely to the Plaintiffs, not Defendant.

## CONCLUSION

For the foregoing reasons, the Court should deny OSU's request and endorse Plaintiffs' proposed remedy.

Dated:  August 21, 2025

>Respectfully submitted,
>
>EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
>
>By:  /s/ Sonya Levitova
>Ilann M. Maazel (admitted *pro hac vice*)
>Debra L. Greenberger (admitted *pro hac vice*)
>Sonya Levitova (admitted *pro hac vice*)
>Hannah Brudney (admitted *pro hac vice*)
>One Rockefeller Plaza, 8th Floor
>New York, New York 10020
>Phone: (212) 763-5000
>Fax: (212) 763-5001
>E-Mail: imaazel@ecbawm.com
>E-Mail: dgreenberger@ecbawm.com
>E-Mail: slevitova@ecbawm.com
>E-Mail: hbrudney@ecbawm.com
>
>SCOTT ELLIOTT SMITH, LPA
>Scott E. Smith (0003749)
>2727 Tuller Pkwy, Suite 140
>Dublin, Ohio 43017
>Phone: (614) 846-1700
>Fax: (614) 486-4987
>E-Mail:ses@sestriallaw.com
>
>PUBLIC JUSTICE
>Adele P. Kimmel (admitted *pro hac vice*)
>Alexandra Z. Brodsky (admitted *pro hac vice*)
>1620 L Street, NW, Suite 630
>Washington, DC 20036
>Phone: (202) 797-8600
>Fax: (202) 232-7203
>E-mail: akimmel@publicjustice.net
>E-mail: abrodsky@publicjustice.net
>
>*Attorneys for* Snyder-Hill *Plaintiffs*