**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN DOE 162, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02991 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |
| STEVE SNYDER-HILL, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02993 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |
| WILLIAM KNIGHT, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02994 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |
| STEVE GRESOCK, | |
| Plaintiff, | Case No. 2:23-cv-2996 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |

EDWARD GONZALES, et al.,

               Plaintiffs,

    v.

THE OHIO STATE UNIVERSITY,

               Defendant.

Case No. 2:23-cv-3051

Judge Michael H. Watson

Magistrate Judge Elizabeth P. Deavers

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DOCUMENTS AND INFORMATION FROM DEFENDANT
<u>RELATED TO THE PERKINS COIE INVESTIGATION AND REPORT</u>**

Plaintiffs submit this memorandum in further support of their motion to compel the production of information and documents in Defendant's custody and control related to the Perkins Coie investigation and Report.

## PRELIMINARY STATEMENT

Eight years ago, Ohio State and its leadership publicly embraced the Perkins Coie investigation and Report as key to understanding the scope of Dr. Strauss's abuse and the university's knowledge thereof. Ohio State vowed "to get to the bottom" of the numerous reports of sexual misconduct, urged alumni to contact the investigators, and ultimately relied on the Report's findings to apologize to survivors for its "unacceptable" failure to prevent Dr. Strauss's abuse and its inadequate efforts to thoroughly investigate complaints.[1] Now, Ohio State claims that documents and information related to that investigation and Report should *not be subject to discovery* in litigation against the university related to the precise topics covered by the Report: Ohio State's failure to prevent Dr. Strauss's abuse and its inadequate efforts to thoroughly investigate complaints. The university's position should be rejected.

Ohio State takes the untenable view that because the underlying abuse happened decades ago, it need not search for contemporaneous responsive documents. Specifically, although the parties negotiated an extensive ESI protocol, Ohio State has refused to search for or produce *any* ESI—with the sole exception of external press communications. Ohio State seeks to distract from this abject discovery failure by highlighting the number of documents it *has* produced, but those are largely publicly available documents that Plaintiffs could access prior to discovery in this case. Plaintiffs seek non-public documents about the very Report that found Ohio State culpable for Dr.

---

[1] *Ohio State shares developments in Strauss investigation*, Ohio State Univ. (Jun. 7, 2018), https://news.osu.edu/ohio-state-shares-developments-in-strauss-investigation/; Michael V. Drake, *A Message from President Drake: Strauss Investigation Report*, Ohio State Univ. (May 17, 2019), https://president.osu.edu/story/strauss-investigation-report.

Strauss's decades of abuse—documents Ohio State has not chosen to share—because they are highly relevant to the reliability and admissibility of the Report and to Ohio State's admissions about the Report's conclusions. This information is relevant to each and every one of the 20 Discovery Plaintiffs, as each Plaintiff's claims are based on the very indifference that the Report highlighted.

While Ohio State claims that Plaintiffs are relitigating the previously brought motion in limine about the Perkins Coie Report's admissibility, to the contrary, Plaintiffs seek related documents to establish necessary evidentiary groundwork about the Report's reliability that will inform the Court's eventual decision as to whether to admit some or all of the Report at trial. In other words, this discovery motion is entirely consistent with the Court's decision to deny the motion in limine *without prejudice*. The question of admissibility is not the subject of this motion. The question of whether Plaintiffs can obtain information needed to show admissibility is.

Plaintiffs have no interest in cumulative discovery and Defendant's claim to the contrary is baseless. This motion concerns documents in Defendant's possession—not Perkins Coie's. Plaintiffs are not seeking any documents they have already obtained from Perkins Coie.

Ohio State's attempt to relitigate Plaintiffs' entitlement to interview memoranda generated in the course of Perkins Coie's investigation verges on the absurd. At bottom, the university is unhappy with the Court's previous conclusion, so it is seeking a so-called "remedy" that plainly attempts to prevent Plaintiffs from using documents Ohio State believes to be unfavorable to its position. Such an approach to litigation is inappropriate. Plaintiffs' motion should be granted.

## ARGUMENT

I. **Ohio State's position is incompatible with both the general goals of civil discovery and the discovery process in this litigation.**

As Plaintiffs have noted—and Ohio State does not dispute—excepting a recently produced set of communications with the press, Ohio State has not produced *any* non-public emails, texts, or other electronic communications, whether internal to the university or between Ohio State employees and external parties, even though the parties negotiated an ESI protocol, and even though Ohio State possesses plainly responsive, relevant, and non-privileged electronic communications. The vast majority of documents Ohio State produced are publicly available (communications from the university to the public and alumni, historical records related to Strauss and/or cited in the Perkins Coie Report, and Board of Trustees meeting minutes).[2]

Plaintiffs do not seek this publicly available information in this motion. Instead, they seek relevant information about the credibility and reliability of the Perkins Coie Report (not discovery-on-discovery), as well as documents . The information sought here is in Ohio State's possession—not Perkins Coie's. Ohio State raises no persuasive reason to resist these reasonable discovery

---

[2] While Ohio State touts the number of pages it has produced, as the Advisory Committee on the Rules has explained, "[s]ome cases involve what often is called 'information asymmetry.' One party — often an individual plaintiff — may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. The point of discovery is to remedy this asymmetry, especially when it comes to a document as core to the litigation as the Perkins Coie Report.

Contrary to Ohio State's insinuation, Plaintiffs have participated in the discovery process in good faith. After the Court considered and rejected Ohio State's objection to the bellwether process two years ago, *see* ECF No. 17 at PageID 1014, 1016, the parties began the process of seeking decades-old employment, medical, and educational records. Ohio State's position was that formal discovery could not commence until it had received every record for every Plaintiff, a position that Plaintiffs correctly pointed out would lead to major delay given the nature of the records collection process. *See* ECF No. 79 at PageID 2035-41. The parties continue to confer as to both sides' asserted discovery deficiencies.

requests. In short, the information sought by Plaintiffs about the Perkins Coie investigation is discoverable.

### A. The Requests seek relevant information.

#### 1. The information and documents sought will help show that the Perkins Coie Report is admissible—a key common issue—and may contain party admissions.

The Requests seek information relevant to all Plaintiffs' cases because each Discovery Plaintiff will likely seek to have all or some of the Report be admitted at trial given the import of its conclusions and the evidence it details. There is no dispute that the Perkins Coie investigation was conducted in 2018 and that the Report was released in 2019, decades after Ohio State facilitated Dr. Strauss's serial sexual abuse. But it strains credulity to suggest that the Perkins Coie Report has no bearing on whether Ohio State violated Plaintiffs' rights during Strauss's tenure. The Report answers that question at length and in detail.

As the Report explains, Ohio State knew about Strauss's misconduct almost as soon as he got there, and the university's knowledge (and deliberate indifference) only compounded over the next two decades. For instance, the Report found that, as early as 1979, personnel in the university's Sports Medicine program and Athletic Department were aware of Strauss's "unusually prolonged" genital exams, as well as his refusal to allow athletic training staff to be present during those exams. Report at 2. And, as soon as Strauss became a team physician, it was "broadly known" in the Athletics Department that he showered with male students at Larkins Hall, "a practice unique to Strauss among the other team physicians." *Id.* These findings are relevant, at a minimum, to the claims of every person Strauss abused in the context of the Athletic Department as of 1979 and after, and they are circumstantial evidence relevant to the claims of people Strauss abused in other university contexts. The Report's findings are relevant to every Discovery Plaintiff's—and every Plaintiff's—claim.

4

Discovery about the Report and its creation is relevant to each Discovery Plaintiff, for two reasons. First, Ohio State has claimed the Report is all non-admissible hearsay and has sought to distance itself from the Report's conclusions. In evaluating the admissibility of some or all of the Report under Federal Rules of Evidence 801, 802, 803, 805, and 807, as well as 402 and 403, the Report's reliability, and information about how closely Ohio State worked with Perkins Coie, Ohio State's oversight and decision-making into the document compilation, which documents were relied upon by Perkins Coie, and what Ohio State's own communications say about the Report and investigation will all be part of the Court's inquiry.[3] In short, the Report's reliability and credibility are at issue—a relevant issue under Rule 26. *See DiLuzio v. Village of Yorkville*, No. 2:11-CV-1102, 2016 WL 8135427, at *1 (S.D. Ohio Mar. 28, 2016) (Watson, J.) (overruling objection to discovery of inadmissible evidence and "permitting discovery of information relating to relevant evidence without addressing its ultimate admissibility").

Second, and unacknowledged by Ohio State, the university's own communications about the Report and investigation constitute party admissions in this litigation, shed further light on the important admissions Ohio State has already made regarding its failure to protect students from Strauss, and inform the deposition testimony that Plaintiffs obtain of current and former university employees. To that end, the Requests may well capture communications sent to and received by employees that Plaintiffs have already deposed. While Plaintiffs have subpoenaed these employees and asked them to produce emails relevant to this case, to the extent those former university employees sent or received communications responsive to the Requests using their Ohio State emails, those communications are not in their personal possession but in Ohio State's. As such,

---

[3] This inquiry is separate and apart from the question of whether the physical documents that Ohio State provided to Perkins Coie are themselves admissible and reliable.

they have not been produced to Plaintiffs.

Ohio State rightfully makes no argument that the Report's findings—and Plaintiffs' Requests—are relevant only to *non*-Discovery Plaintiffs. In a case like this one, where the single defendant employed the abuser for decades, and the defendant's deliberate indifference to the abuse across that timespan is at issue, it is unsurprising that the Discovery Plaintiffs' cases are based on largely or entirely the same factual circumstances as the larger group of Plaintiffs, even if specific Plaintiffs' damages may differ. *See, e.g.*, *In re E. I. Du Pont De Nemours*, 204 F. Supp. 3d 962, 981 (S.D. Ohio 2016) (rejecting Du Pont's request to vacate trial schedules where the parties had already conducted two years of discovery that resulted in "the same evidence that will be utilized in every single trial held in this MDL," with the evidence both "consistent through each and every trial [and] also overwhelmingly the majority of all evidence that will be offered at each and every trial that will be held in this MDL"). As such, information about how the Perkins Coie Report was created and Ohio State's adoption of its findings is relevant to every Discovery Plaintiffs—as well as every other Plaintiffs'—case.

### 2. Ohio State's "discovery-on-discovery" argument is unpersuasive.

Ohio State's characterization of the Perkins Coie Requests as seeking "discovery on discovery" is both inapt and misplaced.

It is inapt because Plaintiffs are seeking information concerning the "independent" investigative report, not a document Ohio State produced for discovery in this case. Discovery on discovery refers to discovery requests that seek information about the completeness, good faith, and methodology of a party's participation in the discovery process—*e.g.*, a request for the search terms that a party used to produce ESI, or a request for the "identity of persons or entities who either supplied or participated in supplying documents which were produced in response to a request for production." *Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6055402, at *2 (S.D.

Ohio Nov. 15, 2013); *see id.* at *1-2; *see also LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 158 (N.D. Ill. 2023) ("Discovery on discovery concerns the process by which a party engaged in its discovery obligations."). *Cf. M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-755, 2020 WL 1983069, at *5 (S.D. Ohio Apr. 27, 2020) (permitting Rule 30(b)(6) depositions "to assess whether Defendants have relevant documents or data that warrant preservation" and refusing to characterize such depositions as discovery on discovery); *United States v. Dayton Indus. Drum, Inc.*, No. 3:16-CV-232, 2018 WL 10509396, at *5 (S.D. Ohio Mar. 27, 2018) (same as to depositions to locate responsive documents).

Not a single one of the Perkins Coie Requests asks Ohio State to provide documents or information about its participation in this litigation's discovery process. Instead, the Requests properly seek substantive information about how closely Ohio State worked with Perkins Coie during the investigation, Ohio State's oversight and decision-making into the document compilation, which documents were relied upon by Perkins Coie, and what Ohio State's own communications say about the Report and investigation, which the Court has found would have been conducted even in the absence of litigation. *See* 19-mc-38 ECF No. 89 at PageID 568. These are not "meta-discovery" matters.

Ohio State's "discovery-on-discovery" argument is misplaced because, where appropriate, discovery on discovery is entirely permissible. This type of discovery is not categorically barred. As the advisory committee explained when amending Rule 26 in 2015:

> After allowing discovery of any matter relevant to any party's claim or defense, the present rule adds: "including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." *Discovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples. The discovery identified in these examples should still be permitted under the revised rule when relevant and proportional to the needs of the case.* Framing intelligent requests for electronically stored information, for example, may require detailed information about another party's information

7

systems and other information resources.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (emphasis added). While

some courts adjudicating inapposite cases have refused to permit discovery on discovery, *see, e.g.*,

*Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-CV-00098, 2022 WL 511553, at *2 (E.D. Tenn. Feb.

11, 2022) (subsequent history omitted) (denying motion to compel designation of Rule 30(b)(6)

deponent to testify about defendants'' preservation and production efforts); *Grae v. Corr. Corp.

of Am.*, No. 3:16-CV-02267, 2020 WL 6750806, at *7 (M.D. Tenn. Nov. 2, 2020) (explaining that,

where individual defendant's discovery responses were nearly identical to main entity defendant's

responses, discovery on discovery as to his responses was inappropriate and would "not help obtain

the information necessary for trial"), as explained above, the Perkins Coie Report's reliability will

be an issue the Court needs to decide. If Plaintiffs cannot seek information about its creation during

the discovery process, it is unclear when Ohio State would have them do so.

## B.    The Requests seek unique information in Ohio State's possession that has not yet been produced.

The Requests seek information that is only in the hands of Ohio State and has not

previously been produced to Plaintiffs. Plaintiffs did not seek this information from Perkins Coie,

it has not been produced by Perkins Coie, and it is unlikely to be in Perkins Coie's possession.[4]

"[T]here is no substitute for this information, which is solely in [Ohio State's] possession." *Am.

Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-CV-708, 2019 WL 6251339, at *13 (S.D. Ohio

Nov. 22, 2019) (Preston Deavers, M.J.). For example, Ohio State's internal communications about

---

[4] Again, Plaintiffs' subpoena for records from Perkins Coie ultimately sought four discrete categories of documents in Perkins Coie's possession, none of which were in Ohio State's custody or control: "(1) the identity of OSU witnesses described in Perkins Coie's Report; (2) Perkins Coie's notes of communications with those witnesses; (3) [Perkins Coie's] written communications with non-survivor OSU witnesses; and (4) OSU records which Perkins Coie uploaded into its electronic discovery database." 2:19-mc-38 ECF No. 76 at PageID 459.

the investigation and Report would not be in Perkins Coie's possession. Neither would documents related to the public statements that Ohio State made in the wake of the Report's release, nor Ohio State's internal communications about Strauss more generally, nor communications about Strauss (or any investigation concerning him) between Ohio State employees and presidents and external parties who are *not* Perkins Coie, nor documents that Ohio State collected but did not provide to Perkins Coie during its investigation. All of these documents are encompassed by the Requests.

Moreover, seeking discovery from non-parties is inherently more burdensome than seeking it from parties to a given case given that it must be done via subpoena, a mechanism with heightened protections for a subpoenaed non-party. *See* Fed. R. Civ. P. 45; *In re Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (subpoena recipient's non-party status is factor in determining the burden posed by the subpoena). And Rule 45 does not permit the service of interrogatories on non-parties—so Perkins Coie cannot respond to any of the interrogatories included in the at-issue Requests. *See Bocook v. Eddy*, No. 2:23-CV-3481, 2024 WL 5714608, at *1 (S.D. Ohio Nov. 13, 2024). As such, the Requests are non-cumulative.

### C. Ohio State's arguments as to timing, burden, and privilege lack merit.

#### 1. The Court-ordered schedule for dispositive motions is no reason to delay producing this information.

As explained above, Ohio State's document production has largely been publicly available and historical documents. Ohio State has produced almost no documents generated during the Perkins Coie investigation, even though the investigation and resulting Report obviously bear on Ohio State's own understanding of its liability—again, Ohio State relied on the Report's findings in apologizing to survivors of Strauss's abuse for the university's failings. Because Ohio State possesses non-cumulative, relevant information or documents responsive to the Requests, *see supra*, the university's discovery obligation is to produce that information and documents to

Plaintiffs. *See* Fed. R. Civ. P. 34(a).

Ohio State's (baseless) argument that "numerous" (but not all) Plaintiffs' claims are legally barred will be litigated at the appropriate stage, after the close of discovery, as the Court has ordered. This is no basis to limit relevant discovery now. *See, e.g.*, *Brahmamdam v. Trihealth Inc.*, No. 1:19-CV-152, 2021 WL 2555066, at *2 (S.D. Ohio), *objections overruled*, 2021 WL 4260418 (S.D. Ohio Sept. 20, 2021) ("A court does not consider the underlying merits of a party's claims in evaluating a motion to compel and arguments directed at the merits of a party's claims or the viability of affirmative defenses should be addressed by way of dispositive motion or at trial and not during a discovery dispute." (cleaned up)).

Frankly, it is unclear when exactly Ohio State believes Plaintiffs *should* have made the Perkins Coie requests. The parties are in their eighth month of fact discovery, with numerous depositions already completed and more yet to come. Plaintiffs have worked together in close coordination to take discovery of Ohio State in a collaborative manner, serving all document requests and taking all Ohio State witness depositions jointly, in accordance with the Court's instruction that Plaintiffs' counsel shall continue "cooperation . . . [as] essential for an orderly and expeditious resolution of the litigation" and shall "work together in an effort to maximize efficiencies, avoid redundant and duplicative discovery, and minimize needless or repetitive filings, not to mention billing." CMO No. 4 at 2162. Ohio State's proposed approach, to the extent one is discernible, seems to be that Plaintiffs should serve twenty separate sets of discovery requests on Ohio State for each of the Discovery Plaintiffs in order to seek the same corpus of information that Plaintiffs currently seek in the single set of discovery requests at issue here. This would create numerous inefficiencies and is incompatible with the Court's order.

## 2. Ohio State cannot hide behind an assertion of undue burden to avoid responding to the Requests at all.

Ohio State claims with no basis that it would take counsel 5,400 hours and $1,350,000 to review 118,000 documents containing the term "Perkins" for responsiveness and privilege. Plaintiff conferred with Ohio State before filing this motion and Ohio State never raised any such concerns about search terms or appropriate custodians. Instead, Ohio State refused to respond to the Requests at all. It cannot now claim, without conferring with Plaintiffs, that responding to the Requests in *any fashion at all* is unduly burdensome. *See Byers v. Blue Ribbon Warranty Corp.*, 2:23-CV-1320, 2024 WL 514476, at *4 (S.D. Ohio Feb. 9, 2024) (Preston Deavers, M.J.) ("While the burden of production is one factor that the Court will consider with respect to the scope of discovery, that issue in and of itself, is not sufficient to permit the Defendants to outright refuse to produce *any* documents responsive to the Requests.").

That said, Plaintiffs are not asking this Court to order Ohio State to review and produce 118,000 documents. Plaintiffs would confer with Ohio State to narrow the operative search terms and custodians. It is in Plaintiffs' interest to tailor the universe of documents appropriately so that Ohio State can produce responsive documents promptly and Plaintiffs can use them for upcoming depositions. But that conferral process must occur swiftly because Plaintiffs need these documents for ongoing and upcoming depositions—including one scheduled for next month—and the close of discovery is fast approaching. Plaintiffs first sought these documents in April 2025, first raised concerns about Ohio State's inadequate responses in June 2025, and brought those concerns to the Court's attention in September 2025 after months of conferral. Any further delay is unacceptable.

## 3. Neither the attorney-client privilege nor work product doctrine applies wholesale.

Ohio State's privilege claim recycles arguments already rejected by the Court. Again, the Court has already found that the work product doctrine does not automatically apply to shield all

documents generated in the course of Perkins Coie's investigation.[5] 2:19-mc-38 ECF No. 89 at PageID 564. The Court has also found that the attorney-client privilege does not automatically shield all such documents either; nor does it shield "communications that merely prove important to an attorney's legal advice to a client." *See id.* at PageID 571, 574. "[O]nly confidential communications involving legal advice between [Perkins Coie] and its client, Porter Wright" are subject to Perkins Coie's claim of attorney-client privilege. *Id.* at PageID 574.

Whether created by an Ohio State employee or otherwise, documents and communications generated in furtherance of the Perkins Coie investigation were created for an investigation that "would have been undertaken in the same manner regardless of litigation." *Id.* at PageID 566; *see id.* at PageID 566-68 (describing the concerns Ohio State had "about its public perception as a major University capable of ensuring the safety of its students" that motivated its commissioning of the Report). Accordingly, the Court found, the Sixth Circuit's standard for work product protection did not apply wholesale—and in fact did not apply at all to documents not "prepared or obtained *because of* the prospect of litigation." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (quoting *United States v. Aldman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).

Ohio State again attempts to draw a distinction between documents generated by Perkins Coie and Ohio State during the investigation, characterizing Ohio State-generated documents as "work-product." To the extent that Ohio State made efforts during Perkins Coie's investigation to "review, analyze, and compile documents internally," it has offered no support for the idea that because the *university* generated documents and communications in the course of a non-privileged investigation, rather than Perkins Coie, those documents and communications are somehow

_____

[5] The decision was issued by Judge Deavers; Judge Watson has recused himself from the Perkins Coie subpoena matter, and the parties have consented to Judge Deavers' jurisdiction. *See* 2:19-mc-38 ECF No. 88.

privileged as a result. And even if Ohio State counsel were somehow involved in the investigation, again, "[t]he mere fact that a document was prepared by an attorney does not necessarily lead to the characterization of that document as work product." *Shah v. Metro. Life Ins. Co.*, No. 16-CV-1124, 2017 WL 5712562, at *3 (S.D. Ohio Nov. 27, 2017) (quoting *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 181 (S.D. Ohio 1993)). Again, "application of the [attorney-client] privilege protects communications between a client and an attorney, not communications that merely prove important to an attorney's legal advice to a client." 2:19-mc-38 at PageID 574.

The Sixth Circuit's recent *In re FirstEnergy Corporation* opinions change nothing. First, this Court did not "rely" on the district court *FirstEnergy* opinion alone. Rather, it relied on long-standing binding precedent that if an investigation or report "would have been prepared in substantially the same manner, regardless of the anticipated litigation, the [work product] doctrine does not apply," even if litigation was reasonably anticipated. *Roxworthy*, 457 F.3d at 593-94.

Second, the Sixth Circuit's recent decision does not alter the law that the work product doctrine applies to documents that "were created '*because of*' a party's 'reasonable' anticipation of litigation." 2025 WL 2335978, at *2 (6th Cir. Aug. 7, 2025) (emphasis added). The August opinion Ohio State cites did not alter the doctrine; the Court's task was to apply that long-established doctrine to a motion to stay pending resolution of a petition for a writ of mandamus. *See id.* at *1. The later October opinion ultimately granting the writ of mandamus does not help Ohio State either. *See* 154 F.4th 431 (6th Cir. Oct. 3, 2025). As both the August and October opinions make clear, *FirstEnergy* is factually distinct: the internal investigation at issue was initiated *in explicit response to* a criminal complaint and subpoenas, in order to secure legal advice about the company's potential criminal and civil wrongdoing. *Id.* at 436-37. That is not true here. Moreover, as the Court has noted, Ohio State commissioned the Report due to "public accountability concerns" that spurred the university to release the Report publicly, all to

13

accomplish its own stated goal of "uncovering the truth" about Strauss's abuse and Ohio State's knowledge thereof. 2:19-mc-38 at PageID 564. FirstEnergy surely had no intent to share the legal advice it sought through its internal investigation with the public, nor is there any record of it doing so.

Lastly, Ohio State's claim that a privilege log is inappropriate begs the question. Ohio State says it is not required to produce a privilege log because the information Plaintiffs seek is not discoverable. But if the information *is* discoverable (and it is), a privilege log is entirely proper. *See Hill v. Mitchell*, No. l:98-CV-452, 2010 WL 3894202, at *9 (S.D. Ohio Sept. 30, 2010) ("The only proper use of a privilege log under Rule 26(b)(5)(A) is to assert a claim of privilege for information that is 'otherwise discoverable.'"). To the extent Ohio State nonetheless has appropriate and limited privilege assertions, the Court has "broad leeway" to order Ohio State to produce a privilege log to facilitate resolution of this dispute. *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021); *see* ECF No. 126 at PageID 2347.

\*　　\*　　\*

In short, the information Plaintiffs seek is discoverable and non-privileged, and the parties have scheduled depositions in January 2026 that will require Plaintiffs to review documents responsive to the Requests in advance. Plaintiffs' motion should be granted on that basis alone.

## II. Ohio State's unhappiness with the Court's decision in the Perkins Coie subpoena matter is not a basis for barring use of the documents obtained in or relitigating that matter.

As Ohio State notes, during the depositions of its former and current employees, Plaintiffs have indeed been using the notes and memoranda that Perkins Coie produced after the Court denied Perkins Coie's motion to quash Plaintiffs' subpoena. Like the Report, the underlying memoranda are similarly damning of Ohio State, revealing knowledge of Strauss's misconduct that spans departments and decades at the university. Nevertheless, in several recent depositions,

former Ohio State employees have sought to distance themselves from their prior admissions. Though Perkins Coie had multiple lawyers attending and documenting each interview, several deponents have now insisted that Perkins Coie misquoted them and that they did not make the damning admissions about Strauss that Perkins Coie attributed to them, even though at least one deponent never raised any concerns about statements in the 2019 Report that were based on their interview and attributed to them by name. Conveniently, these deponents have endorsed portions of the interview memoranda that support their current position, that they knew nothing of Strauss's serial sexual predation.

The memoranda have thus proven to be important third-party discovery. Without the Perkins Coie documents, which were generated by experienced and competent attorneys that Ohio State itself hired, Plaintiffs would be forced to rely on deposition testimony that, even if provided under oath, is proving not only remarkably inconsistent with the Report's findings but also expediently favorable to Ohio State's position in this case.[6]

It comes as no surprise that, given how unfavorable the memoranda are to Ohio State's position, Ohio State might want them excluded from the case. But Ohio State now takes the remarkable step—in the course of opposing a discovery motion—of asking this Court to limit Plaintiffs "further use of the information [received from Perkins Coie], barring the admission into evidence of the Perkins Coie Report and/or dismissing plaintiffs' claims." ECF No. 139 at PageID 2545. This is procedurally and substantively improper. Procedurally, Plaintiffs successfully moved for production of these documents, which the Court appropriately held were not privileged. That

---

[6] Ohio State's characterization of the memoranda and notes as "interpreted and drafted by Perkins Coie" and "**_unreviewed by the interviewees_**" is a bald-faced attempt to sow doubt about those documents' quality. *See* ECF No. 139 at PageID 2535. It is astonishing that Ohio State now wants to cast doubt on the expertise and hard work of the attorneys it willingly hired to conduct a 12-month, $6 million investigation that the university previously embraced.

ruling is law of the case and there is no basis to alter it, let alone to do so in the course of resolving a discovery motion. Ohio State cannot relitigate the Court's previous ruling in the Perkins Coie subpoena matter[7] simply because it does not like the outcome.[8] Substantively, as detailed above, the Court's ruling that these documents were not privileged was well-reasoned and consistent with the limits of the work product doctrine. *See supra* Section I.C.3.

Ohio State cannot wish away the fact that its employees knew about Strauss and failed to act to protect students from his grasp. Ohio State's request cannot be squared with "[o]ur system of justice," which is "aimed at resolving cases on the merits [and] hinges on the good-faith and honest participation of all parties in the discovery process as required by the Federal Rules." *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-CV-1195, 2016 WL 4468000, at *1 (N.D. Ohio Aug. 23, 2016). The university's position should be rejected.

## CONCLUSION

The parties have set dates in January and February 2026 for the depositions of critical witnesses who will likely be questioned about documents responsive to the Perkins Coie Requests. We respectfully request that the Court resolve this dispute at the earliest opportunity so that, if Plaintiffs' motion is granted, Plaintiffs can obtain the documents they have long sought in advance of the scheduled depositions. In light of the parties' prolonged, unsuccessful efforts to confer on

---

[7] Ohio State successfully intervened in that matter and is bound by the ruling. *See* 2:19-mc-38 ECF No. 39.

[8] As the parties did in the cases Ohio State cites, the university could have filed a writ of mandamus to challenge the Court's decision in the Perkins Coie subpoena matter. *See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992); *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 462 (3d Cir. 1996); *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005); *In re FirstEnergy Corp.*, 154 F.4th 431, 440 (6th Cir. 2025). Ohio State did not. Over a year and a half has passed since the Court denied Perkins Coie's motion to quash Plaintiffs' subpoena. Ohio State cannot complain now that Plaintiffs are using the Perkins Coie documents.

this issue, the discoverability of responsive documents, and Ohio State's failure to establish the applicability of attorney-client privilege and work product doctrine Plaintiffs' motion should be granted.

Dated: December 10, 2025               Respectfully submitted,

/s/  *Sonya Levitova*

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
Ilann M. Maazel (admitted pro hac vice)
Debra L. Greenberger (admitted pro hac vice)
Sonya Levitova (admitted pro hac vice)
Hannah Brudney (admitted pro hac vice)
One Rockefeller Plaza, 8th Floor
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: slevitova@ecbawm.com
E-Mail: hbrudney@ecbawm.com

SCOTT ELLIOTT SMITH, LPA
Scott E. Smith (0003749)
2727 Tuller Pkwy, Suite 140
Dublin, OH  43017
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail: ses@sestriallaw.com

Adele P. Kimmel (admitted pro hac vice)
Alexandra Brodsky (admitted pro hac vice)
PUBLIC JUSTICE, P.C.
1620 L Street, NW, Suite
630 Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net

Counsel for the *Snyder-Hill* Plaintiffs (*Snyder-Hill, et al.*, Case No. 2:23-cv-02993)

17

Rex A. Sharp
Sarah T. Bradshaw
Nathan A. Kakazu
Bradley Thomas
Emma Herold
SHARP LAW, LLP
4820 W. 75th Street
Prairie Village, KS 66208
Phone : (913) 901-0505
Fax : (913) 261-7564
rsharp@midwest-law.com
sbradshaw@midwest-law.com
nkakazu@midwest-law.com
bthomas@midwest-law.com
eherold@midwest-law.com

Simina Vourlis (0046689) (Trial Attorney)
The Law Offices of Simina Vourlis
856 Pullman Way
Columbus, OH 43212-3860
Phone: (614) 487-5900
Fax: (614) 487-5901
Email: svourlis@vourlislaw.com

Stephen Estey
ESTEY & BOMBERGER LLP
2869 India Street
San Diego, CA 92103
Phone: 619-295-0035
Fax: 619-295-0172
steve@estey-bomberger.com

Daniel R. Karon
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Phone: 216.622.1851
dkaron@karonllc.com

Joseph Sauder
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, PA 19312
Phone: (610) 200-0580
Fax: (610) 421-1326
jgs@sstriallawyers.com

18

Counsel for the *Gonzales* Plaintiffs (*Gonzales, et al.*, Case No. 2:23-cv-3051)

J.C. Ratliff (0027898)
Rocky Ratliff (0089781)
200 West Center Street
Marion, Ohio 43302
Telephone: 740.383.6023
Facsimile: 740.383.2066
attorney.ratliff@gmail.com
attorneyrockyratliff@gmail.com

Counsel for the *Knight* Plaintiffs (*Knight, et al.*, Case No. 2:23-cv-02994)
LAW OFFICES OF JOHN C. CAMILLUS, LLC
John C. Camillus (0077435) (Trial Attorney)
P.O. Box 141410
Columbus, Ohio 43214
(614) 992-1000
(614) 559-6731 (facsimile)
E-mail: jcamillus@camilluslaw.com

MEISTER SELIG & FEIN LLP
Mitchell Schuster, Esq. (admitted pro hac vice)
Benjamin D. Bianco, Esq. (admitted pro hac vice)
Michael P. Regan (admitted pro hac vice)
Mitchell Schuster (admitted pro hac vice)
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
(646) 564-4804 (facsimile)
E-mail: bdb@msf-law.com
E-mail: mpr@msf-law.com
E-mail: ms@msf-law.com

Counsel for Plaintiff in *Gresock*, Case No. 2:23-cv-02996

WRIGHT & SCHULTE, LLC
Richard W. Schulte (0066031) (Trial Attorney)
Stephen D. Behnke (0072805)
Jacob A. Gebelle (0093528)
865 S. Dixie Dr.
Vandalia, OH 45377
(937) 435-7500
(937) 435-7511 facsimile
rschulte@yourlegalhelp.com

19

sbehnke@yourlegalhelp.com
jgebelle@yourlegalhelp.com

WRIGHT & SCHULTE, LLC
Michael L Wright (0067698)
130 W. Second Street, Suite 1600
Dayton, OH 45402
(937) 222-7477
(937) 222-7911 facsimile
mwright@yourlegalhelp.com

WRIGHT & SCHULTE, LLC
Dennis P Mulvihill (0063896)
23139 Chagrin Blvd., Suite 620
Cleveland, OH 44022
(216) 591-0132
(216) 591-0622 facsimile
dmulvihill@yourlegalhelp.com

Counsel for Plaintiffs in *John Doe 162, et al.*, Case
No. 2:23-cv-02991

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on December 10, 2025. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ *Sonya Levitova*

Sonya Levitova

Counsel for the *Snyder-Hill* Plaintiffs
(*Snyder-Hill, et al.*, Case No. 2:23-cv-2993)