# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE 162, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02991 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |
| STEVE SNYDER-HILL, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02993 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |
| WILLIAM KNIGHT, et al., | |
| Plaintiffs, | Case No. 2:23-cv-02994 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |
| STEVE GRESOCK, | |
| Plaintiff, | Case No. 2:23-cv-2996 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |

| | |
|---|---|
| EDWARD GONZALES, et al., <br><br> Plaintiffs, <br> v. <br><br> THE OHIO STATE UNIVERSITY, <br><br> Defendant. | Case No. 2:23-cv-3051 <br><br> Judge Michael H. Watson <br><br> Magistrate Judge Elizabeth P. Deavers |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
THE UNREDACTED MEDICAL BOARD FILE FOR CASE 96-1534A**

Plaintiffs submit this memorandum of law in support of their motion to compel Ohio State and/or the Ohio State Medical Board to produce the *un*redacted Ohio State Medical Board file for case 96-1534A, the Board's investigation into student complaints against Strauss, to Plaintiffs. *See* Ex. A.[1] Defendant Ohio State has not yet decided whether to join or oppose this motion.

The file contains core discovery: admissions from OSU witnesses and administrators as to their knowledge of Strauss's abuse as early as 1979. There is no basis to redact the names of the very OSU witnesses and administrators whose admissions are at the heart of this case. Plaintiffs agree, however, that the names of former *patients* and *non*-Ohio State complainants and witnesses, and other information which might identify such individuals, may remain redacted.

## PRELIMINARY STATEMENT

In 1996, Ohio State Medical Board staff opened case 96-0999 to investigate Dr. Richard Strauss's urgent demand that the Board investigate Ohio State's decision to suspend his clinical privileges and his complaint alleging that Dr. Ted Grace had directed him to falsify a student's medical record and directed another Student Health employee to destroy a culture taken from that student. According to Strauss, a student had falsely accused him of inappropriate genital touching during an exam in order to prevent Strauss from recording his exam findings in the student's record.

In the course of the Board's investigation of Strauss's complaint, the investigator learned from a non-physician Ohio State employee that multiple complaints had been made against Strauss concerning sexual misconduct with male students. In fact, "[f]or decades, physicians and others alike had the opportunity to report Strauss to the Medical Board and to law enforcement. . . . [R]umors, complaints, and credible accounts of Strauss' abuse of patients were well known and

---

[1] All cites to "Ex. __" refer to exhibits attached to the Declaration of Sonya Levitova dated January 23, 2026, filed contemporaneously with this motion.

circulated for years."[2] Even so, "none of the physicians working with Strauss found occasion to report him to the Medical Board or to law enforcement – even after the University suspended him from seeing patients through Student Health. Nor did the University or any of its administrators involve campus or outside law enforcement, even after recognizing that the severity and pervasiveness of Strauss' abuse compelled the withdrawal of authority to see patients and the nonrenewal of his contract."[3] Only because Strauss himself lodged a formal complaint against Grace did the Board learn of his abuse.

Per the investigator's recommendation, the Board opened case 96-1534A to look into the complaints against Strauss. During that investigation, the Board investigator conducted interviews with multiple OSU witnesses "who freely acknowledged longstanding, serious concerns about Strauss."[4] The investigation report concluded: "[T]he information provided shows that Dr. Strauss has been performing inappropriate genital exams on male students for years. This has been brought to the attention of officials at the university and just recently action was taken."[5] The matter was referred to the Board's enforcement section, and by early 1997, the Board enforcement attorney obtained approval to gather patient records and move forward against Strauss's license. But instead, "[f]or reasons that simply cannot be determined from the files still available or known or recalled by anyone interviewed [about the matter], the investigation fell into what one former employee called a 'black hole.'"[6] Six years later, the Board's investigation was administratively closed. No official action was ever taken or pursued against Strauss.

---

[2] Ohio Dep't of Pub. Safety, *Governor's Working Group on Reviewing the Medical Board's Handling of the Investigation Involving Richard Strauss* 3 (Aug. 30, 2019), https://perma.cc/V4SS-SBAP.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* at 1.

Through Perkins Coie LLP's investigation into Dr. Strauss's abuse, the Medical Board provided an *un*redacted copy of the Medical Board investigation file into the complaints against Strauss to Ohio State's counsel, Porter Wright, which in turn provided the file to Perkins Coie. The firm drew from the file in drafting its report, the public version of which ultimately redacted information sourced from that file "pursuant to R.C. 4731.22(F)."

Shortly after the Perkins Coie Report was published, Ohio State sought an order from the Court permitting the public release of the unredacted Medical Board file, "provided that the names of former patients and non-Ohio State complainants and witnesses, and other information which might identify such individuals, are redacted from the investigation report before it is publicly released." 2:18-cv-736 ECF No. 52 at PageID 750 (S.D. Ohio May 1, 2019). Plaintiffs did not oppose Ohio State's motion. The Board appeared as an interested party and argued that Ohio Rev. Code § 4731.22(F)(5) prohibited the public release of confidential information. *See* 2:18-cv-736 ECF No. 60 (S.D. Ohio May 7, 2019). The Court denied Ohio State's motion, noting that § 4731.22(F)(5) affirmatively permits investigation reports to be admitted into evidence in judicial proceedings under certain circumstances. *See* 2:18-cv-692 ECF No. 89 at PageID 559 (S.D. Ohio May 16, 2019). As the Court explained:

> Ohio State is not, *at least at this time*, seeking to use the independent investigation report as evidence in this judicial proceeding. Instead, Ohio State wishes to release the report publicly in order to be transparent in its investigation. While the Court believes transparency is a laudable goal in this matter, the Court is not in a position to grant Ohio State the permission it seeks.

*Id.* at PageID 559-60 (emphasis added).

Circumstances have changed. Plaintiffs *are* "seeking to use the [Medical Board] report as evidence in this judicial proceeding." *Id.* For the past eight months, the parties have been actively engaged in discovery, taking depositions, producing documents on a rolling basis, and conferring

3

or seeking the Court's assistance where necessary. But, as Ohio State has acknowledged, "the challenges of time passage" and the "unavailability of witnesses and material" impact the discovery available in this case. *See* 2:23-cv-2993 ECF No. 135-1 (S.D. Ohio Oct. 30, 2025). Many would-be witnesses have passed away. Others' memories have faded. The file that was created for case 96-1534A, on the other hand, is one of the few documents available that describes Ohio State's knowledge of Strauss's misconduct as far back as 1979. The Board's investigator interviewed Ohio State employees in 1996, mere months after Strauss had left Ohio State; their memories were fresh, and their recollections were extensive.

One party in this case, Ohio State, possesses the unredacted file. So does the Board, as well as Perkins Coie. Nevertheless, Ohio State, Perkins Coie, and the Board have refused to produce an unredacted version of the file to Plaintiffs in the course of discovery, citing § 4731.22(F)(5) as the basis for their refusal.

For example, an unidentified OSU witness (who Plaintiffs believe to be Dr. Bob Murphy, the then-head team physician), reported the following to the Medical Board in 1996:

> [H]e met Dr. Strauss in the late 1970's while Dr. Strauss was at Harvard writing a book. . . . [Redacted] said that Dr. Strauss came to OSU and wanted to work with athletes in minor sports so the both of them shares [sic] an office at Larkins Hall for about 10 years. [Redacted] said that around 1979 the trainers were receiving complaints that Dr. Strauss was that too long (10 minutes) with the genital exam. [Redacted] said a genital exam should last 15-30 seconds. [Redacted] said that he counseled Dr. Strauss about the exams. [Redacted] said that Dr. Strauss also refused to have a trainer present during these exams. Next [Redacted] said that he had to counsel Dr. Strauss about showering with the student athletes. [Redacted] said that it was a joke among male athletes that you didn't want to be in the same room with Dick Strauss. [Redacted] said that he did not keep any record of the counceling [sic] sessions. Lastly [Redacted] said that he never received a complaint from a female athlete about Dr. Strauss.

4

Ex. A at 17-18. This OSU witness, still unidentified to this day, admitted knowledge of Strauss's serial sexual misconduct as early as 1979. There is no basis whatsoever under the Federal Rules to redact the name of such a witness.

After conferring with OSU and the Medical Board, Plaintiffs now ask the Court to compel Ohio State to produce the unredacted medical board file for case 96-1534A to Plaintiffs, provided that the names of former patients and non-Ohio State complainants and witnesses, and other information which might identify such individuals, may remain redacted.

## PROCEDURAL HISTORY

Plaintiffs' first set of discovery requests to Ohio State sought information and documents related to the Medical Board's investigation of Dr. Strauss, case 96-1534A. *See* ECF No. 135-1 Interrogatories No. 9-10, Requests No. 4-6. Ohio State responded to these requests, stating in part that, "[d]espite previously seeking the public release of Medical Board information and/or records, OSU is prohibited from producing the unredacted Medical Board records pursuant to R.C. 4731.22(F)(5)." Over the ensuing months, the parties met and conferred on this issue; ultimately, Ohio State refuses to produce the unredacted Medical Board file without a court order to do so. *See* Levitova Decl. ¶¶ 3-4.

Separately, Plaintiffs subpoenaed the Medical Board for the unredacted file in 2018. *See* Ex. B. The Medical Board ultimately produced records from its investigation into Strauss, but like Ohio State, refused to produce a fully unredacted copy of the file, citing Ohio Rev. Code § 4731.22(F)(5) in support. Levitova Decl. ¶ 2.

## ARGUMENT

The Court should compel Ohio State and/or the Medical Board to produce the unredacted medical board file to Plaintiffs for two reasons. First, allowing Ohio State the benefit of plainly relevant information while denying Plaintiffs the same frustrates the most foundational aims of the

5

discovery process. And second, § 4731.22(F)(5) does not apply because federal discovery rules govern, not state-law privilege.

## I. DISCOVERY IS MEANT TO CURE INFORMATION ASYMMETRY, NOT EXACERBATE IT

Parties may seek discovery of any relevant, non-privileged information, taking into consideration "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As the Advisory Committee on the Rules has explained, "[s]ome cases involve what often is called 'information asymmetry.' One party — often an individual plaintiff — may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve." Fed. R. Civ. P. 26(b)(1) Advisory Committee's note to 2015 amendment. In such circumstances, the burden of response lies with the party that has more information, and "properly so." *Id.*

The Committee presaged the parties' current situation. As discussed, the unredacted Medical Board file created for case 96-1534A appears to be the only document that describes Ohio State's knowledge of Strauss's on-campus serial sexual abuse as early as 1979. The investigative report was not limited to Strauss's 1996 misconduct; to the contrary, the report concluded that Strauss had been "performing inappropriate genital exams on male students for *years*." (emphasis added). The Board's investigator reached this conclusion after interviewing Ohio State employees in 1996, just after Strauss had left Ohio State, when their recollections were fresh. Thirty years later, some of those witnesses have since passed away. Others have claimed in subsequent interviews and depositions not to remember speaking with the Board or even Strauss himself. The

6

unredacted Board file is therefore directly relevant to Plaintiffs' claims because it establishes multiple Ohio State employees' knowledge of and inaction towards Strauss's misconduct *at the time of Strauss's departure from Ohio State and the first time his misconduct was investigated by a third party*. "It is highly unlikely that Plaintiffs could discover similar information from another source or in another manner. [Defendant is], therefore, in a unique position with respect to these documents." *Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-cv-1131 (EPD), 2015 WL 8259548, at *6 (S.D. Ohio Dec. 9, 2015).

Discovery is "designed to help define and clarify the issues" in a case before trial. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see In re Ctr. for Mil. Readiness*, No. 18-mc-51013, 2019 WL 4733602, at *3 (E.D. Mich. Sept. 28, 2019) ("The purpose of the discovery process is, at least in part, to determine whether there is merit to Plaintiffs' allegations."). Ohio State knows exactly which Ohio State employees the Board interviewed in 1996 and what those employees admitted about their and the university's knowledge of Dr. Strauss's misconduct. Plaintiffs do not. The situation is untenable and counter to the goals of the discovery process. The Court should compel Ohio State to produce the unredacted Board file to Plaintiffs.

## II. OHIO STATE LAW DOES NOT DETERMINE PRIVILEGE IN THIS FEDERAL-QUESTION ACTION

In responding to Plaintiffs' first requests for production and interrogatories, Ohio State stated that it is "prohibited" from producing the unredacted Medical Board file due to § 4731.22(F)(5), as did the Medical Board in responding to Plaintiffs' subpoena. The Ohio statute provides in relevant part that all reports, complaints, or information received by the Board "pursuant to an investigation" are "confidential and not subject to discovery in any civil action"— but also provides for the admission of such information into evidence in a judicial proceeding under certain circumstances. In other words, § 4731.22(F)(5) creates a state-law privilege against

7

the disclosure of unredacted Board records. *See State ex rel. Wallace v. State Med. Bd. of Ohio*, 732 N.E.2d 960, 965 (Ohio 2000) (describing the Board's "confidentiality privilege"). But the statute has no application in this federal question case.

Rule 501 of the Federal Rules of Evidence provides that, in civil cases, "state law governs privilege regarding a claim or defense for which *state law* supplies the rule of decision." (emphasis added). But, in a federal question case like this one, "[e]ven if Ohio law prohibit[s] disclosure of the requested records, state law privilege is ultimately not controlling." *Crochran v. Columbus Bd. of Educ.*, No. 2:15-cv-00632, 2016 WL 5957677, at *4 (S.D. Ohio Oct. 14, 2016) (citing *Freed v. Grand Court Lifestyles, Inc.*, 100 F. Supp. 2d 610, 612 (S.D. Ohio 1998)). For instance, this Court has previously overruled the Ohio Bureau of Employment Services' motion to quash a subpoena in a federal-question case and permitted discovery of sensitive employment-related documents shielded by Ohio Rev. Code § 4141.21, which then provided that such documents "shall not be open to the public or be used in any court in any action or proceeding pending therein, or be admissible in evidence in any action, other than one arising under [specific statutory] sections." *Freed v. Grand Ct. Lifestyles, Inc.*, 100 F. Supp. 2d 610, 612, 618-19 (S.D. Ohio 1998). Instead, "[q]uestions of privilege are to be determined by federal common law." *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998) (citing Fed. R. Evid. 501); *see Kamenski v. Wellington Exempted Vill. Sch.*, No. 1:14-CV-01589, 2016 WL 1732872, at *2 (N.D. Ohio May 2, 2016) (collecting cases).

Neither Ohio State nor the Board has *ever* articulated any federal common law privilege that would prevent the production of the unredacted Board file. That is because no such privilege exists, and Plaintiffs' interest in obtaining the unredacted file significantly outweighs any interest in keeping the file sealed at this point of litigation. *See supra*; *In re Zuniga,* 714 F.2d 632, 639 (6th Cir. 1983) (recognizing that the "appropriate scope of a privilege, like the propriety of the privilege

8

itself, is determined by balancing the interests protected by shielding the evidence sought with those advanced by its disclosure"). And even if an applicable federal common law privilege did exist, Ohio State's failure to assert any such privilege over the unredacted Board file constitutes waiver. Rule 26 of the Federal Rules of Civil Procedure requires parties that seek to withhold information "otherwise discoverable by claiming that the information is privileged" to "expressly make" the privilege claim. Fed. R. Civ. P. 26(b)(5)(A). *See Berryman v. SuperValu Holdings, Inc.*, No. 3:05-cv-169, 2008 WL 4934007, at *10 (S.D. Ohio Nov. 18, 2008) (quoting 8 Fed. Prac. & Proc. Civ. § 2016.1 (2d ed.) (identical to 3d ed.)); *see also Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *8 (S.D. Ohio Nov. 13, 2012) (citing *Banks v. Office of Senate Sergeant-at-Arms*, 241 F.R.D. 376, 386 (D.D.C. 2007)); *Cleveland Indians Baseball Co. v. United States*, No. 96-cv-2240, 1998 WL 180623, at *4 (N.D. Ohio Jan. 28, 1998).

Section 4731.22(F)(5) does not prohibit Ohio State from fulfilling its basic discovery obligations and producing the unredacted Board file to Plaintiffs. It does not apply at all. The motion to compel should be granted.

## CONCLUSION

The unredacted Ohio State Medical Board file for case 96-1534A is precisely the kind of relevant, non-privileged discovery that Plaintiffs are entitled to. To further the purposes of discovery, and because state-law privilege does not govern this federal-question action, the Court should authorize Ohio State to produce the unredacted Ohio State Medical Board file for case 96-1534A to Plaintiffs, provided that the names of former patients and non-Ohio State complainants and witnesses, and other information which might identify such individuals, may remain redacted.

Dated: January 23, 2026                                        Respectfully submitted,

/s/  Sonya Levitova

9

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
Ilann M. Maazel (admitted pro hac vice)
Debra L. Greenberger (admitted pro hac vice)
Sonya Levitova (admitted pro hac vice)
Hannah Brudney (admitted pro hac vice)
One Rockefeller Plaza, 8th Floor
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: slevitova@ecbawm.com
E-Mail: hbrudney@ecbawm.com

SCOTT ELLIOTT SMITH, LPA
Scott E. Smith (0003749)
2727 Tuller Pkwy, Suite 140
Dublin, OH  43017
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail: ses@sestriallaw.com

Adele P. Kimmel (admitted pro hac vice)
Alexandra Brodsky (admitted pro hac vice)
PUBLIC JUSTICE, P.C.
1620 L Street, NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net

Counsel for the *Snyder-Hill* Plaintiffs (*Snyder-Hill, et al.*, Case No. 2:23-cv-02993)

Rex A. Sharp
Sarah T. Bradshaw
Nathan A. Kakazu
Bradley Thomas
Emma Herold
SHARP LAW, LLP
4820 W. 75th Street
Prairie Village, KS 66208
Phone : (913) 901-0505
Fax : (913) 261-7564
rsharp@midwest-law.com

10

sbradshaw@midwest-law.com
nkakazu@midwest-law.com
bthomas@midwest-law.com
eherold@midwest-law.com

Simina Vourlis (0046689) (Trial Attorney)
The Law Offices of Simina Vourlis
856 Pullman Way
Columbus, OH 43212-3860
Phone: (614) 487-5900
Fax: (614) 487-5901
Email: svourlis@vourlislaw.com

Stephen Estey
ESTEY & BOMBERGER LLP
2869 India Street
San Diego, CA 92103
Phone: 619-295-0035
Fax: 619-295-0172
steve@estey-bomberger.com

Daniel R. Karon
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Phone: 216.622.1851
dkaron@karonllc.com

Joseph Sauder
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, PA 19312
Phone: (610) 200-0580
Fax: (610) 421-1326
jgs@sstriallawyers.com

Counsel for the *Gonzales* Plaintiffs (*Gonzales, et al.*, Case No. 2:23-cv-3051)

J.C. Ratliff (0027898)
Rocky Ratliff (0089781)
200 West Center Street
Marion, Ohio 43302
Telephone: 740.383.6023
Facsimile:  740.383.2066
attorney.ratliff@gmail.com

11

attorneyrockyratliff@gmail.com

Counsel for the *Knight* Plaintiffs (*Knight, et al.*, Case No. 2:23-cv-02994)
LAW OFFICES OF JOHN C. CAMILLUS, LLC
John C. Camillus (0077435) (Trial Attorney)
P.O. Box 141410
Columbus, Ohio 43214
(614) 992-1000
(614) 559-6731 (facsimile)
E-mail: jcamillus@camilluslaw.com

MEISTER SELIG & FEIN LLP
Mitchell Schuster, Esq. (admitted pro hac vice)
Benjamin D. Bianco, Esq. (admitted pro hac vice)
Michael P. Regan (admitted pro hac vice)
Mitchell Schuster (admitted pro hac vice)
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
(646) 564-4804 (facsimile)
E-mail: bdb@msf-law.com
E-mail: mpr@msf-law.com
E-mail: ms@msf-law.com

Counsel for Plaintiff in *Gresock*, Case No. 2:23-cv-02996

WRIGHT & SCHULTE, LLC
Richard W. Schulte (0066031) (Trial Attorney)
Stephen D. Behnke (0072805)
Jacob A. Gebelle (0093528)
865 S. Dixie Dr.
Vandalia, OH 45377
(937) 435-7500
(937) 435-7511 facsimile
rschulte@yourlegalhelp.com
sbehnke@yourlegalhelp.com
jgebelle@yourlegalhelp.com

WRIGHT & SCHULTE, LLC
Michael L Wright (0067698)
130 W. Second Street, Suite 1600
Dayton, OH 45402
(937) 222-7477
(937) 222-7911 facsimile

12

mwright@yourlegalhelp.com

WRIGHT & SCHULTE, LLC
Dennis P Mulvihill (0063896)
23139 Chagrin Blvd., Suite 620
Cleveland, OH 44022
(216) 591-0132
(216) 591-0622 facsimile
dmulvihill@yourlegalhelp.com

Counsel for Plaintiffs in *John Doe 162, et al*., Case No. 2:23-cv-02991