# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

STEVE SNYDER-HILL, *et al.*,

      Plaintiffs,

v.

THE OHIO STATE UNIVERSITY,

      Defendant.

Civil Action 2:23-cv-2993
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

---

WILLIAM KNIGHT, *et al.*,

      Plaintiffs,

v.

THE OHIO STATE UNIVERSITY,

      Defendant.

Civil Action 2:23-cv-2994
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

---

EDWARD GONZALES, *et al.*,

      Plaintiffs,

v.

THE OHIO STATE UNIVERSITY,

      Defendant.

Civil Action 2:23-cv-3051
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Citing, *inter alia*, *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), this Court held in a prior Opinion and Order that Plaintiffs are precluded from recovering emotional distress damages in these Title IX cases. *See generally* Op. and Order, ECF No. 111 (Case No. 2:23-cv-3051).[1]  Plaintiffs now jointly seek additional guidance concerning the scope of available damages. *See generally* Mot., ECF No. 175.  Specifically, Plaintiffs ask the Court to rule, categorically, that damages remain available post-*Cummings* for (A) lost educational opportunities and benefits, (B) lost earnings and earning capacity,[2] (C) physical injuries, and (D) discrimination.  *Id.*  The Ohio State University ("Defendant"), on the other hand, asks the Court to find that any prevailing Plaintiffs will be limited to recovering the cost of tuition.  *See generally* Resp., ECF No. 180.

### I.     BACKGROUND

These cases stem from the decades-long sexual abuse of students by Defendant's former employee, Dr. Richard Strauss.  The abhorrent details of that abuse need not be recounted herein for purposes of ruling on the pending motion.  Nor need the Court summarize the long and winding procedural history

---

[1] Unless otherwise noted, all citations herein are to Case No. 2:23-cv-3051.

[2] Any distinction between the admissibility of evidence concerning damages for lost earnings and evidence concerning damages for lost earning capacity need not be considered in this Opinion and Order and is better suited for summary judgment or a motion *in limine* relating to specific Bellwether Plaintiffs.

of these cases.  All the Court need recap is that it previously held that "private

Title IX damages are limited to those 'traditionally available' in breach-of-contract

suits, and therefore, emotional distress is not compensable as such."  Op. and

Order 21, ECF No. 111.  That holding did "not affect what other categories of

compensatory damages Title IX makes available," *id.*, which is the issue the

Court addresses today.

## II.   ANALYSIS

At the outset, the Court notes that it considers herein only those categories

of damages contained in Plaintiffs' motion: (A) lost educational opportunities and

benefits; (B) lost earnings and earning capacity; (C) physical injuries; and

(D) discrimination.  *See generally* Mot., ECF No. 175.

### A.   Lost Educational Opportunities and Benefits; Lost Earnings and Earning Capacity

Plaintiffs argue that Dr. Strauss's abuse deprived them of various

educational opportunities and benefits, as well as earnings and earning capacity,

and that they are entitled to compensation for those losses.  Mot. 7–12, ECF No.

175.  They contend that compensation for such losses constitutes quintessential

expectation damages, which are traditionally available in breach-of-contract

cases and that, because educational opportunities and benefits are at the heart

of Title IX, funding recipients are, separately, statutorily on notice that such

damages would be available in Title IX cases.  *Id.*

Defendant contends that the loss of educational opportunities and benefits is an injury, not a category of damages, and that lost earnings and earning capacity are, as a matter of law, too speculative and uncertain to be recoverable. Resp. 5–8, 12–16, ECF No. 180.

For the following reasons, the Court agrees with Plaintiffs that they are not precluded, as a matter of law, from recovering damages for either lost educational opportunities and benefits or lost earnings and earning capacity.

Expectation damages are "the most typical measure of recovery granted" in breach-of-contract cases. 24 Williston on Contracts § 64:3 (4th ed. 2025).[3] Expectation damages often include lost profits. *Id.*; Charles T. McCormick, Handbook on the Law of Damages 97 (1935) ("[L]ost profits may be allowed as damages if in contract cases they were within the contemplation of the parties when the contract was made[.]").

Here, to the extent a Title IX violation caused quantifiable losses in educational opportunities or benefits, or in earnings or earning capacity, such losses are akin to lost profits and are, therefore, *theoretically* recoverable as

---

[3] *See also id.* § 64:2 (providing that contract damages "are designed to secure for [the nonbreaching] party the benefit of the bargain that he or she made by awarding a sum of money that will place the promisee in as good a position as he or she would have occupied had the contract been performed"); E. Farnsworth, Contracts § 12.8, p. 839 (1982) ("The basic principle for the measurement of those damages is that of compensation based on the injured party's expectation. He is entitled to recover an amount that will put him in as good a position as he would have been in had the contract been performed."); *Luke v. Lee Cty.*, No. 1:20-CV-388-RP, 2023 WL 6141594, at *1 (W.D. Tex. Sept. 20, 2023) ("Just as it is 'hornbook law' that emotional distress damages *are not* available for contracts, it is 'hornbook law' that expectation damages *are* available for contracts." (citations omitted)).

expectation damages. So, the Court refuses to preclude recovery for either form of loss at this juncture. *See A.T. v. Oley Valley Sch. Dist.*, No. 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023) (finding that the plaintiff in a Title IX suit could recover damages "for lost income, lost opportunity, fringe benefits, attorney fees, costs and any other non-emotional distress compensatory damages").[4]

---

[4] *See also Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, No. H-18-2850, 2025 WL 1678080, at *5–7 (S.D. Tex. June 13, 2025) (concluding that the Title IX plaintiff could pursue damages for lost educational opportunities and benefits after *Cummings*, including for the lost "opportunity to participate in high school athletics and compete for an athletic scholarship"); *Doe v. Univ. of Miss.*, No. 3:18-CV-138-DPJ-ASH, 2024 WL 3011133, at *5 (S.D. Miss. June 14, 2024) (concluding that "contract damages were foreseeable based on lost educational opportunities" in Title IX cases and that juries were well suited to quantify the loss of educational opportunities and benefits with reasonable certainty); *McGowan v. S. Methodist Univ.*, 715 F. Supp. 3d 937, 954–56 (N.D. Tex. 2024) (holding that "claims for compensatory damages for . . . loss of educational opportunities and benefits[,]" including loss of the opportunity to earn an increase in scholarship and to compete in athletics, "are viable under Title IX" even after *Cummings*), aff'd sub nom. *Clouse v. S. Methodist Univ.*, No. 24-10461, 2025 WL 2427755 (5th Cir. Aug. 22, 2025); *Doe v. Trs. of Dartmouth Coll.*, 699 F. Supp. 3d 171, 179 (D.N.H. 2023) (denying, in part, *Daubert* motion concerning expert's testimony on Title IX expelled students' lost wages and lost earning capacity); *J.C. v. Bd. of Regents of Univ. Sys. of Ga.*, No. 1:20-CV-4445-JPB, 2023 WL 4938054, at *4 (N.D. Ga. Aug. 1, 2023) ("The Court thus concludes that Cummings does not bar J.C.'s damages for educational expenses and lost earnings . . . ."); *Doe v. Fairfax Cty. Sch. Bd.*, No. 1:18-cv-614-MSN-IDD, 2023 WL 424265, at *5–7 (E.D. Va. Jan. 25, 2023) (finding that "losses of educational opportunities remain recoverable post-*Cummings*" but that "[a]bsent allegations of a specific employment opportunity that was foreclosed by Defendant's alleged violations, Plaintiff cannot recover for diminished earning capacity or lost future earnings" (citations omitted)); cf. *Payan v. Los Angeles Cmty. Coll. Dist.*, 169 F.4th 971, 978–79 (9th Cir. 2026) ("Several courts post-*Cummings* have found that plaintiffs may still seek compensatory damages for opportunities lost as a result of a violation of their rights under federal antidiscrimination statutes. . . . We agree that plaintiffs may seek compensatory damages for lost educational opportunities under Title II of the ADA." (citations omitted)); *Am. Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 423 (6th Cir. 1984) ("It is clear that loss of future profits is permitted as an element of damages in breach of contract actions when they can be established with reasonable certainty." (citation omitted)); *Chaitram v. Penn Medicine-Princeton Med. Ctr.*, No. 21-17583 (MAS) (TJB), 2022 WL 16821692, at *2 (D.N.J. Nov. 8, 2022) (concluding that the "Plaintiff's claims under the ACA and the RA are sufficient to state a claim for recovery for compensatory damages under a loss of opportunity theory" because she

Moreover, the Court refuses to conclude at this point that the only type of quantifiable loss of educational opportunities or benefits is lost tuition or scholarship payments.

True, Plaintiffs' damages must be reasonably foreseeable and certain,[5] but it is premature to decide now whether Plaintiffs can satisfy those additional requirements.[6] This is especially true given that there remain hundreds of

---

alleged the loss of opportunity to "fully participate in her own medical care through effective communication"); *Montgomery v. D.C.*, No. 18-1928 (JDB), 2022 WL 1618741, at *25 (D.D.C. May 23, 2022) (concluding, in ADA and Rehabilitation Act case, that *Cummings* did not preclude small damages for the lost opportunity to meaningfully participate in a police interrogation); *Sharick v. Se. Univ. of Health Scis., Inc.*, 780 So.2d 136, 139–40 (Fla. Dist. Ct. App. 2000) (reversing and remanding for new trial so the plaintiff could prove damages "in the form of the loss of earning capacity that would reasonably have resulted had" the university given the plaintiff his degree).

[5] 11 Corbin on Contracts § 56:14 (2026) ("In contract, damages are limited to those that the defendant had reason to foresee when the contract was made, while a defendant in a tort action may be required to pay for the injurious results of tortious conduct that he had no reason to foresee when the conduct occurred."); *id.* § 56:16 ("In order to be entitled to a verdict, or a judgment, for damages for breach of contract the plaintiff must lay a basis for a reasonable estimate of the extent of harm caused by the breach, measured in money."); 24 Williston on Contracts § 64:3 (4th ed. 2025) (noting that damages must be foreseeable, reasonably certain, and unavoidable through mitigation); Restatement (Second) of Contracts § 352 cmt. a (Oct. 2024) ("A party cannot recover damages for breach of a contract for loss beyond the amount that the evidence permits to be established with reasonable certainty."); Farnsworth on Contracts § 12.14, p. 154–55 (4th ed. 2022, Vol. 3) (providing that lost profits are recoverable as consequential damages only if it was foreseeable at the time of contracting "that the loss would result if the breach occurred"); E. Farnsworth, Contracts § 12.8, p. 841 (1982) ("The third limitation [on expectation damages] is that the injured party cannot recover damages for loss beyond the amount that he proves with reasonable certainty."); McCormick, Handbook on the Law of Damages 99 (1935) (noting that the requirement of certainty "is more rigorously applied . . . in contract claims" than tort claims).

[6] Though it is premature to preclude such damages categorically, Plaintiffs should note the myriad cases ultimately prohibiting damages for lost earnings or earning capacity due to the plaintiff's inability to prove the same with the required foreseeability and certainty. *E.g., Cypress-Fairbanks Indep. Sch. Dist.*, 2025 WL 1678080, at *10 ("Neither these allegations nor the evidence provided by Roe's experts are sufficient to support a claim for loss of past and future earnings and earning capacity based on

Case No. 2:23-cv-2993; 2:23-cv-2994; 2:23-cv-3051                    Page 6 of 14

Plaintiffs in these cases, and the Court is loath to decide in a single stroke that *none* of them will be able to prove such damages with the requisite degree of foreseeability and certainty.  Instead, whether Plaintiffs can meet those requirements is best addressed on a Plaintiff-by-Plaintiff basis at summary judgment because it will depend on Plaintiff-specific evidence.

Nonetheless, Plaintiffs are warned that this Opinion and Order does not necessarily mean that these damages categories will survive summary judgment. The Court reiterates that Plaintiffs are limited to recovering their "actual loss, which loss must be established with reasonable certainty." *Eggert v. Meritain Health, Inc.*, 428 F. App'x 558, 563 (6th Cir. 2011) (internal quotation marks and citation omitted).  Given the slew of Title IX plaintiffs ultimately unable to bear

---

speculation that Roe might have received an athletic scholarship, attended college, and attained a college degree."); *C.K. v. W. Carroll Special Sch. Dist. Bd. of Educ.*, No. 1:23-cv-01133-JDB-jay, 2024 WL 5718765, at *3 (W.D. Tenn. Dec. 6, 2024) ("While the Court does not dispute that damages for lost earning capacity could be appropriate in some Title IX actions, these damages are not the kind that 'always immediately result' from a breach of contract and should have been specifically stated as required by Rule 9(g)." (citation omitted)); *Univ. of Miss.*, 2024 WL 3011133, at *8 ("It was Doe's burden to respond with record evidence showing with reasonable certainty that he suffered the claimed lost wages.  Doe's speculation—and the expert reports premised on it—fails to create a genuine issue of material fact on lost earning capacity." (internal citation and citation omitted)); *B.R. v. F.C.S.B.*, 718 F. Supp. 3d 504, 516 (E.D. Va. 2024) ("The Court agrees with FCSB that B.R's lost earnings and lost earnings capacity are much too speculative and attenuated."); *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 901 (M.D. Tenn. 2018) ("Doe's damage claims are likewise impermissibly speculative.  Doe did not return to Belmont after his suspension and now seeks to hold Belmont liable for unknown damages related to his educational opportunities, career prospects, and future earning capacity.  Tennessee breach of contract law exists to make Doe whole, not to provide him with an unquantifiable windfall for the future.").  Indeed, the exhibits attached to Defendant's response suggest that this Opinion and Order may only be delaying the inevitable with respect to lost earnings and earning capacity, at least for many Plaintiffs.

Case No. 2:23-cv-2993; 2:23-cv-2994; 2:23-cv-3051                                     Page 7 of 14

that burden vis-à-vis lost earnings and earnings capacity, *see supra* fn. 6, this Court is not convinced that Plaintiffs will fare any better in these suits.

Moreover, the Court will not permit either "lost educational opportunities and benefits" or "lost earnings and earning capacity" to become proxies for compensation for emotional distress. As reluctant as the Court was to preclude emotional-distress damages, it will remain faithful to *Cummings* and will vigilantly guard against the impermissible repackaging of prohibited damages.

## B. Physical Injuries

Plaintiffs next ask the Court to find that they may recover for the physical injuries that Dr. Strauss's abuse caused, arguing that damages for physical injuries are traditionally available in breach-of-contract suits. Mot. 12–15, ECF No. 175.

Defendant contends that tort law, not breach-of-contract, compensates plaintiffs for physical injuries. Resp. 9, ECF No. 180. Alternatively, it argues that Dr. Strauss's abuse caused no physical injury to any Plaintiff and that Plaintiffs' request for damages due to physical injury, including, *inter alia*, damages for treatment of PTSD, is simply a repackaged request for emotional-distress damages. *Id.* at 8–12; *id.* at 12 ("Plaintiffs simply are not entitled to recover for 'physical' injuries, which are . . . nothing more than 'physical' manifestations of their alleged emotional distress.").

The Court rejects Defendant's first argument; damages for physical injuries are traditionally available in breach-of-contract cases.[7] It makes no difference that personal injury can also (or even most often) be compensated via tort law.

Neither Defendant nor the courts in the cases the parties cite seriously contest this legal principle. Instead, courts simply split in concluding whether psychological or psychiatric conditions, and expenses for treating the same, are properly considered physical or emotional. Courts adopting the former label tend to find at least out-of-pocket expenses recoverable as compensatory economic damages,[8] and courts adopting the latter label tend to find that damages for the

---

[7] *E.g.*, 11 Corbin on Contracts § 59.1 (2026) (noting that, though damages for emotional distress are not generally awarded for breach of contract, "liability for personal injury may attach even in the absence of foreseeability" (citing U.C.C. § 2-715(2)(b)); Restatement (Second) of Contracts § 347 cmt. c (Oct. 2024) ("Consequential losses include such items as injury to person or property resulting from defective performance."); E. Farnsworth, Contracts, § 12.9, p. 845–46 (1982) ("Consequential damages include such items as injury to person or property caused by the breach."); *cf. Gooch v. Buford*, 262 F. 894, 895–96 (6th Cir. 1920) (recognizing that the same "damages for personal injuries to plaintiff" can be independently available in tort and breach of contract).

[8] *E.g. B.R.*, 718 F. Supp. 3d at 512–15 (permitting Title IX plaintiff to seek damages for treatment of PTSD under the limiting principle that "the damages must be connected to physical changes wrought by physical injury" and refusing to further determine whether the damages for "pain and suffering" sought in that case related to impermissible *emotional* pain and suffering or permissible *physical* pain and suffering); *McGowan*, 715 F. Supp. 3d at 955 ("The Court declines to hold that compensatory damages for medical expenses related to physical injuries are precluded as a matter of law."); *Doe v. City of Pawtucket*, 633 F. Supp. 3d 583, 590–91 (D.R.I. 2022) (concluding that *Cummings* did not prohibit recovery of Title IX plaintiff's medical expenses for treatment of sexual assault); *cf. Wade v. Univ. Med. Ctr. of S. Nevada*, No. 2:18-cv-1927-RFB-EJY, 2023 WL 9598746, at *4 (D. Nev. Feb. 13, 2023) ("While emotional damages are foreclosed by Cummings, physical pain and suffering damages are still available under law as they are allegedly a natural and direct consequence of Defendant's breach. . . . Plaintiff may be entitled to compensatory damages for physical pain and suffering."); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-CV-11-MAB, 2023 WL 348320, at *3 (S.D. Ill. Jan. 20, 2023) (concluding in case brought under, *inter alia*, the Rehabilitation Act

injuries and expenses to treat the same amount to non-recoverable emotional-distress damages.[9]

This brings the Court to Defendant's second contention: that what Plaintiffs label as "physical injury" is, in reality, emotional. The Court agrees that whether Plaintiffs' "physical injuries" category of damages is viable depends on whether those injuries are—in fact and not just in name—"physical." But, again, that

---

and Americans with Disabilities Act that *Cummings* did not prohibit the recovery of actual medical expenses incurred for treatment of physical *and* psychological injuries, which were "compensatory damages for economic losses").

[9] *E.g.*, *B.R.*, 718 F. Supp. 3d at 511–12 (concluding that *Cummings* bars damages for "eating disorders and other psychiatric disabilities and deficits[,]"'physical manifestations of emotional or psychiatric distress[,]" and for medical treatment of the same); *J.C.*, 2023 WL 4938054, at *4 ("Instead of arising from the claimed injury of the denial of educational benefits or opportunities, damages for counseling and psychiatric treatment relate directly to the emotional harms suffered by J.C.—in other words, to her emotional distress."); *A.T.*, 2023 WL 1453143, at *4 (concluding that *Cummings* barred the Title IX plaintiff's request for medical expenses related to treatment for "bipolar disorder, anxiety, humiliation, embarrassment, frustration and alcohol and drug addiction and past, present and future emotional pain and suffering/mental distress"); *Fairfax Cty. Sch. Bd.*, 2023 WL 424265, at *5–6 (concluding that "expenses for counseling and medical treatment for stomach-related issues" resembled emotional-distress damages and were unavailable); *Pennington*, 2023 WL 348320, at *3 (concluding that damages for "mental, emotional, psychological injuries" and "pain and suffering"—separate from the compensable medical expenses—were re-labelled emotional-distress damages and were, therefore, prohibited); *K.G. v. Woodford Cty. Bd. of Educ.*, No. 5:18-555-DCR, 2022 WL 17993127, at *3 (Dec. 29, 2022) ("[T]he plaintiffs recite generalities without proffering a clear argument. They appear to contend that they have a right to compensatory damages unrelated to emotional distress, but provide no evidence of injuries except anxiety, depression, diet, anger, fear, obsessive thoughts, and stress, which are emotional distress injuries." (internal quotation marks and citation omitted)); *City of Pawtucket*, 633 F. Supp. 3d at 590–91 (concluding that damages for "pain and suffering[,]" "psychological damage, post traumatic syndrome, and loss of enjoyment" were prohibited as repackaged emotional-distress damages); *cf. M.R. v. Burlington Area Sch. Dist.*, No. 21-CV-1284-JPS-JPS, 2023 WL 4826471, at *4–5 (E.D. Wis. July 27, 2023) (prohibiting Title VI plaintiff from recovering therapy costs because "[c]osts associated with psychiatric injuries do not appear to be traditionally available in suits for breach of contract" (internal quotation marks and citations omitted)).

determination cannot be made in a single stroke for each of the hundreds of remaining Plaintiffs. Rather, the injuries' origins will depend on Plaintiff-specific evidence.

As just one example, the parties dispute whether PTSD is a physical or emotional injury. Mot. 14, ECF No. 175 (citing *B.R.*, 730 F. Supp. 3d at 242); Resp. 10–12, ECF No. 180. And the same arguments they lodge regarding PTSD's physical or emotional origin can likely also be asserted for other conditions, like anxiety or depression.

This Court declines to determine on the current briefing that such conditions are definitively emotional and, therefore, that "mental health treatment costs" for those conditions "are mere proxies for emotional distress damages and therefore unrecoverable." *M.R.*, 2023 WL 4826471, at *5. Instead, this Court agrees with the *B.R.* court that whether PTSD (or similar conditions) is a physical or emotional injury is a fact issue reserved for summary judgment (or trial, depending on whether Plaintiffs raise a genuine dispute of fact). *See B.R.*, 718 F. Supp. 3d at 514 (denying summary judgment on whether PTSD is an emotional injury); *B.R.*, 730 F. Supp. 3d at 242–43 (denying judgment as a matter of law on whether the plaintiff had PTSD and whether it was a physical injury).

Thus, today's ruling does not hold (or even imply) that damages for the medical expenses Plaintiffs have incurred (or will incur) for the treatment of PTSD or other conditions are available here; it simply holds that damages for

such costs are not necessarily *un*available because it is unclear whether the conditions are physical injuries. The Court does agree, however, with the *Pennington* court that, as a matter of law, damages unrelated to actual treatment costs for such conditions[10] amount to a repackaged request for emotional-distress damages, which *Cummings* forbids. *See Pennington*, 2023 WL 348320, at *3. Accordingly, any damages for physical injuries will be limited to the reimbursement of treatment costs for whatever injuries are ultimately determined by this Court (or a jury) to be physical.

## D.    Discrimination

Finally, Plaintiffs contend that they are entitled to economic compensation for the "experience of being discriminated against." Mot. 15, ECF No. 175. They rely on *Doe v. University of Kentucky*, 111 F.4th 705 (6th Cir. 2024), which involved a Title IX retaliation claim, in support of their argument that discrimination is a compensable harm. *Id.* at 15–16.

Title IX prohibits exclusion from participation in, denial of the benefits of, or subjection to sex discrimination in any education program or activity receiving federal financial assistance. 20 U.S.C. § 1681(a). Because the Supreme Court has implied a private cause of action and determined that compensatory damages are available for that private cause of action, *e.g.*, *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 76 (1992), successful Title IX plaintiffs are plainly

---

[10] Unrelated damages include, for instance, damages for "physical violation" or "loss of bodily integrity." *E.g.*, ECF No. 185-15 at PAGEID # 2265.

entitled to compensation when the exclusion, denial, or discrimination they wrongfully suffer causes an injury. *University of Kentucky* says nothing more and certainly does not permit damages for "discrimination" that are separate from the damages compensating a plaintiff for the losses the discrimination caused. 111 F.4th at 724 (explaining that the plaintiff alleged more than emotional-distress damages *because she alleged the discrimination caused a loss of equal access to educational benefits and opportunities*).

But saying that Plaintiffs, if successful, can be compensated for the injury that discrimination caused only begs the question of what damages compensate them for that injury. The Court held above that, categorically, Plaintiffs are not precluded from recovering economic damages (that are sufficiently foreseeable and certain) to compensate them for the, *inter alia*, lost educational opportunities and benefits, lost earnings and earning capacity, and physical injuries that any discrimination caused. *See supra.* Plaintiffs offer no explanation about what other quantifiable injury the discrimination caused. And, to the extent they seek compensation "for the experience of being discriminated against" that is separate from the categories addressed above, Plaintiffs fail to explain how such "experiential" damages would be anything other than repackaged emotional-distress damages, which are unavailable under *Cummings*. Accordingly, Plaintiffs cannot recover separate, amorphous damages to compensate them for "discrimination."

## III.    CONCLUSION

For the above reasons, Plaintiffs' motion is **GRANTED in part and DENIED in part**. Plaintiffs are not categorically prohibited from recovering damages for lost educational opportunities and benefits, lost earnings and earning capacity, or treatment for physical injuries. Plaintiffs are prohibited from recovering separate damages for "discrimination," and any damages for physical injury will not include damages for physical violation, loss of bodily integrity, or any other label that is a repackaging of emotional distress damages.

The Court intends to issue special interrogatories for all bellwether trials, requiring the juries to categorize damages. This method will aid remittitur, should any of the categories the Court permits to proceed to trial ultimately be found non-compensable by the United States Court of Appeals for the Sixth Circuit.

The Clerk shall terminate ECF Nos. 175 & 185 in Case No. 2:23-cv-3051 and ECF Nos. 116 & 125 in Case No. 2:23-cv-2994.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**