**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| STEVE SNYDER-HILL, et al., | : | |
| Plaintiff, | : | Case No. 2:23-cv-02993 |
| v. | : | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | : | Magistrate Judge Chelsey M. Vascura |
| Defendant. | : | |
| WILLIAM KNIGHT, et al., | : | |
| Plaintiff, | : | Case No. 2:23-cv-02994 |
| v. | : | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | : | Magistrate Judge Chelsey M. Vascura |
| Defendant. | : | |
| EDWARD GONZALES, et al., | : | |
| Plaintiff, | : | Case No. 2:23-cv-03051 |
| v. | : | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | : | Magistrate Judge Chelsey M. Vascura |
| Defendant. | : | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S BRIEF IN FURTHER SUPPORT OF
OHIO STATE'S ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT TO PERKINS COIE-RELATED DISCOVERY**

Pursuant to the Court's May 12, 2026 Order memorializing the Court's May 8, 2026 status conference, defendant The Ohio State University ("OSU") respectfully submits this brief to address questions raised by Magistrate Judge Vascura at the status conference related to plaintiffs' request to compel OSU to produce documents protected by the attorney-client privilege and/or attorney work product doctrine. OSU respectfully incorporates its position statement emailed to the Court on May 5, 2026, which is attached as Exhibit A. For the additional reasons discussed below, plaintiffs' request to compel the documents at issue should be denied in its entirety.

## I. OSU'S COMMUNICATIONS WITH PERKINS COIE ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

Communications contained on OSU's privilege log involving Perkins Coie and OSU generally include (1) communications between Perkins Coie and OSU employees who assisted Perkins Coie in collecting, compiling, and reviewing information kept by OSU that Perkins Coie requested, and (2) communications involving Perkins Coie and lawyers from OSU's Office of Legal Affairs ("OLA") and Porter Wright. *See* May 13, 2026 Declaration of Paula Paoletti at ¶ 3 (attached hereto as Exhibit B) ("Second Paoletti Declaration"). As discussed below, all such communications are protected by the attorney-client privilege.

### A. Applicable Law.

Quoting the U.S. Supreme Court, the Sixth Circuit confirmed, "The attorney-client privilege 'is the oldest of the privileges for confidential communications known to the common law. . . . It represents a sturdy exception to the common-law maxim that the public 'has a right to every man's evidence." *In re FirstEnergy Corp.*, 154 F.4th 431, 436 (6th Cir. 2025) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) and *Trump v. Vance*, 591 U.S. 786, 799 (2020)) (emphasis added). As the Sixth Circuit also confirmed, the attorney-client privilege and attorney work product doctrine are "bedrock protections" that are "not so easily pierced."

1

*FirstEnergy*, 154 F.4th at 438 (emphasis added). In determining whether the attorney-client privilege (and attorney work product doctrine) apply, the Sixth Circuit has cautioned district courts not to take an overly technical approach that overlooks "the realities of litigation" and fails to appreciate the "intensely practical" applications of both doctrines. *Id*. at 438 (emphasis added).

"The privilege applies to confidential communications between a lawyer and his client arising from the client's request for legal advice." *Id*. at 436. At the May 8 status conference, the Court correctly held that "OSU has to be," and "undoubtedly was a Perkins Coie client." *See* Tr. of May 8, 2026 Status Conf., Case No. 2:23-cv-2993, ECF No. 206, PageID# 11274, lines 11-15.[1]

Regarding what constitutes legal advice to a client, the U.S. Supreme Court in *Upjohn* held that communications related to a factual investigation are privileged not only where such communications involve direct legal advice, but also where information related to the investigation is provided to an attorney to assist the attorney in providing legal advice to the attorney's client:

> [T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information *to the lawyer to enable him to give sound and informed advice. . . .**The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant***.

*Upjohn*, 449 U.S. at 390-91 (emphasis added).[2]

Thus, for communications related to a factual investigation to be privileged, *Upjohn* only requires that such facts provide a "***basis*** for legal advice." *Id*. at 436; *FirstEnergy Corp.*, 154 F.4th at 436. Relatedly, the Sixth Circuit expressly confirmed in *FirstEnergy*: "***There is no such thing as legal advice without facts.***" *FirstEnergy*, 154 F.4th at 442. Stated differently, in the context of a factual investigation providing facts and information to assist lawyers in providing legal advice,

---

[1] Given the Court's finding that an attorney-client relationship existed between OSU and Perkins Coie, Perkins Coie's involvement in otherwise privileged communications between Porter Wright and OSU does not destroy the privilege.
[2] *See* additional cases cited at Exhibit A, footnote 6

2

*Upjohn* and *FirstEnergy* instruct that the attorney-client privilege is not limited to communications that make legal conclusions or provide direct legal advice.

In finding that communications related to a factual investigation constituted legal advice to which the attorney-client privilege applied in *FirstEnergy*, the Sixth Circuit emphasized that the "context" or "circumstances" in which the communications were made is important. *Id*. at 436-437, 438. The Sixth Circuit found it material that FirstEnergy had retained a law firm to conduct an investigation while litigation or regulatory actions were pending or anticipated and that the investigating law firm met with FirstEnergy to provide updates during the investigation. *Id*. at 437. As explained below, that is exactly what occurred here.

### B. Perkins Coie's Communications With OSU Assisted Porter Wright And/Or OLA In Providing Legal Advice.

Immediately after a former OSU student-athlete reported to OSU in late March 2018 that former OSU physician Dr. Richard Strauss had sexually abused him and numerous other OSU student-athletes decades earlier, OLA was engaged to evaluate the allegations and provide legal advice to OSU. *See* Jan. 17, 2024 Declaration of Paula Paoletti at ¶¶ 3-4 (attached hereto as Exhibit C) ("First Paoletti Declaration"). The prospect of litigation was highly likely given (1) the breadth and scope of the allegations; (2) the fact that the complainant had previously litigated other matters against OSU, sought a resolution on behalf of himself and other unidentified alleged survivors of Strauss, and threatened to contact the Ohio Attorney General's Office ("OAG") if a resolution could not be reached; and (3) the Office for Civil Rights of the U.S. Department of Education ("OCR") would likely investigate OSU's response to the allegations. *Id*. at ¶¶ 5-7.

On April 5, 2018, OSU announced an investigation into the allegations[3] and retained the

---

[3] On or before April 5, 2018, the law firm of Bricker & Eckler was initially appointed by the OAG to conduct the investigation. *See* https://news.osu.edu/investigation-underway-into-allegations-of-sexual-misconduct-against-former-wrestling-team-physician/. Porter Wright was formally engaged by OSU through the OAG on April 27, 2018.

3

law firm of Porter Wright as special counsel appointed by the OAG to oversee that investigation and provide legal advice to OSU on the findings of that investigation as it unfolded. *Id*. at ¶¶ 5-8. Porter Wright had long served as special counsel for OSU in numerous lawsuits and litigation matters. *Id*. at ¶ 8. By April 7, 2018, OSU had already begun working on litigation preservation notices that instructed employees regarding their duties to preserve documents given the prospect of litigation. *See* Second Paoletti Declaration at ¶ 4.

On April 27, 2018, Porter Wright in turn engaged the law firm of Perkins Coie to lead the investigation, based upon its legal experience conducting such investigations. *See* First Paoletti Decl. at ¶ 9. Less than a week later, on May 2, 2018, the law firm of Carpenter Lipps LLP was retained as OSU's trial counsel related to the Strauss allegations, further establishing OSU's anticipation of forthcoming lawsuits. *Id*. at ¶ 10.

Importantly, Perkins Coie was engaged to provide Porter Wright and OLA with factual findings that would assist OLA in providing legal advice to OSU related to anticipated litigation and OSU's potential legal exposure—including evaluating survivors' allegations of sexual abuse by Strauss and whether OSU employees knew of those allegations when the abuse allegedly occurred. *See id*. at ¶¶ 11–12; Second Paoletti Decl. at ¶ 5. Perkins Coie was ***not*** retained merely to collect or summarize information that a layperson could compile. *See* First Paoletti Decl. at ¶ 13. Instead, OSU retained Perkins Coie to apply its substantial legal skills, expertise and experience conducting investigations to evaluate the evidence, assess witness credibility and claims, develop and convey its mental impressions and opinions, and report on Strauss's conduct, OSU personnel's knowledge of that conduct, and the actions taken by OSU personnel in response. *Id*.

---

Second Paoletti Decl. at ¶ 8.

At the outset of its retention, Perkins Coie was advised that the information it was uncovering, as well as its findings and impressions related to same, would be shared confidentially with both Porter Wright and OLA throughout the investigation (not just at the conclusion of the investigation when the Report was issued) to assist both in assessing and communicating legal advice to OSU regarding anticipated legal claims and OSU's potential legal exposure. *Id*. at ¶¶ 13-14; Second Paoletti Decl. at ¶ 6.

Just as OSU had anticipated, an onslaught of lawsuits related to Strauss were filed against OSU. The first lawsuit was filed on July 16, 2018,[4] and OCR began an investigation into OSU in August 2018. *See* First Paoletti Decl. at ¶ 10; *see* Second Paoletti Decl. at ¶ 7.

Throughout the course of its investigation, OSU and Perkins Coie exchanged hundreds of emails related to the selection, compilation, and review of material requested by Perkins Coie that enabled Perkins Coie to conduct its investigation. *Id*. at ¶ 8. Separately, Perkins Coie also provided periodic updates to Porter Wright, OSU, and the OAG. *See* First Paoletti Decl. at ¶ 14. Perkins Coie's updates provided facts that Porter Wright, OSU, and the OAG could consider related to the scope, significance, and legal risk and exposure related to the allegations, assisted OLA in providing legal advice to OSU, including strategies to address the legal risks. *Id*. at ¶ 14. The information provided by Perkins Coie to Porter Wright and OLA included, among other things, Perkins Coie's findings as to the breadth and extent of Strauss's conduct, the potential number of survivors and their likely claims, and the extent of OSU employees' knowledge of Strauss' conduct. *Id*. at ¶ 13.

The above information and facts Perkins Coie provided to Porter Wright and OLA for consideration were potentially directly relevant to the legal elements for plaintiffs' Title IX claims.

---

[4] *See Garrett, et al. v. The Ohio State Univ.*, Case No. 2:18-00692 (S.D. Ohio, July 16, 2018). More than 35 lawsuits involving more than 500 plaintiffs were eventually filed against OSU related to Strauss. Second Paoletti Decl. at ¶ 7.

Those claims require plaintiffs to prove that plaintiffs suffered sexual harassment by Strauss that deprived them of access to educational opportunities and benefits and that OSU administrators with authority to take corrective action knew of Strauss's conduct and were deliberately indifferent to it. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 703-705 (6th Cir. 2022). Thus, Perkins Coie's updates and communications to OSU constituted legal advice or facts that directly assisted OLA because OLA could "sift" through the same when providing legal advice to OSU related to the litigation. *Upjohn*, 449, U.S. at 390-91.

### C. **Plaintiffs' Arguments Lack Merit.**

The above facts, supported by sworn declarations from OSU's Senior Litigation Counsel and Senior Associate General Counsel, conclusively establish that communications between OSU and Perkins Coie meet and exceed what *Upjohn* and *FirstEnergy* require for legal advice and the attorney-client privilege to apply. Plaintiffs' various arguments to the contrary lack merit.

First, plaintiffs vaguely rely on purported deposition testimony by Dr. Drake that they do not quote or cite. *See* Plaintiffs' May 8, 2026 Position Statement at 1. It is unclear to OSU what testimony plaintiffs are referring to, and OSU is unaware of any testimony by Dr. Drake suggesting that communications between Perkins Coie and OSU were not legal advice protected by the attorney-client privilege. If plaintiffs file testimony they claim supports such an argument, OSU respectfully requests leave to reply.

Second, plaintiffs quote a July 30, 2018 email from Ben Johnson, OSU's Assistant Vice President for Media and Public Relations, stating that Porter Wright and Perkins Coie "were not appointed to defend the university in any litigation or to develop any defense strategy." *See* Plaintiffs' Position Statement at 1-2. In the very next sentence, based solely on Mr. Johnson's statement, plaintiffs make a leap in arguing, "Where an attorney is retained for non-legal functions,

no attorney-client relationship exists." *Id*. The fact that Porter Wright and Perkins Coie were not directly or primarily responsible for defending OSU in *litigation* or developing OSU's *defense strategy*, however, does not mean they did not provide legal advice to OSU or information that enabled or assisted Porter Wright or OLA to provide legal advice to OSU, including litigation-related advice. As thoroughly discussed above, both firms *did* provide such legal advice or information that assisted Porter Wright or OLA in providing legal advice to OSU. That is all *Upjohn* and *FirstEnergy* require for the privilege to apply.

Third, plaintiffs quote out-of-context a statement in a brief filed by Porter Wright on behalf of OSU in the separate Perkins Coie subpoena matter that "Ohio State separately engaged Porter Wright to oversee an independent, external investigation, unrelated to any future adversarial or litigation proceedings." *See* Plaintiffs' Position Statement at 2. Once again, Porter Wright's statement about "litigation" is not inconsistent with OSU's assertion of privilege. Porter Wright did not state or suggest that *Perkins Coie's communications with OSU* (1) were not legal advice to OSU or (2) did not contain facts or information that could facilitate, enable, or assist OLA in providing legal advice to OSU—which are privileged under *Upjohn* and *FirstEnergy*. For the reasons thoroughly discussed above, such communications are privileged.[5]

---

[5] It is also important to consider the context in which the above-quoted statement was made. Porter Wright's brief was filed in opposition to plaintiffs' motion requesting that the Court order both Perkins Coie and OSU (through Porter Wright) to participate in a preliminary pretrial conference in the above-captioned litigation (rather than in the separate Perkins Coie subpoena matter), even though OSU has been solely represented by Carpenter Lipps from the beginning of this eight-year litigation. *See* Pls' Motion, Case No. 2:19-mc-38, ECF No. 66. Porter Wright's brief correctly argued that neither Perkins Coie nor Porter Wright "should be subject to a last minute demand by Plaintiffs' counsel to appear at a status conference in which they are not involved, nor have ever made any appearance." ECF No. 67, PageID# 410. *In other words, Porter Wright was simply clarifying that OSU retained separate counsel for the investigation and the litigation.* It did not address whether the communications at issue here are privileged, which they are for the reasons discussed above. For the reasons, unsupported statements by attorneys in briefs, statements that are not under oath, or statements made in other proceedings (such as the statement here) are not evidence and are not subject to estoppel or judicial admissions. *See*, *e.g.*, *In re Ragone*, No. 13-51335, 2019 WL 2202941, at *5 (Bankr. N.D. Ohio May 21, 2019) (citing numerous cases, including *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("It is well established that statements appearing in a party's brief are not evidence.")); *Nilavar v. Mercy Health System-W. Ohio*, 254 F. Supp. 2d 897, 901 (S.D. Ohio 2003) (no judicial estoppel where position was not under oath and not accepted by the court); *In re Kattouah*, 452 B.R. 604, 608 (E.D. Mich. 2011) (judicial admissions are only binding in the case

Fourth, plaintiffs argue, while citing to no authority, that the "independent" nature of the investigation eliminates the attorney-client privilege. *FirstEnergy* holds otherwise. *See FirstEnergy*, 154 F.4th at 443 (FirstEnergy's communications with "independent auditor" were privileged and work product). A degree of independence from clients is always maintained by attorneys who provide legal advice or by other third-parties who assist attorneys in providing legal advice to clients, such as consultants, independent contractors, experts, accounting firms, engineers. This does **not** eliminate the privilege. *See, e.g. Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *15 (S.D. Ohio Nov. 13, 2012) (extending the privilege to third parties who assist attorneys in providing legal advice to client).[6] As a matter of sound policy, independent investigations should be encouraged by maintaining privilege, not discouraged, by eliminating privilege. The Court should uphold OSU's assertion of the attorney-client privilege.

## II.     THE ATTORNEY WORK PRODUCT DOCTRINE ALSO APPLIES.

The attorney work product doctrine provides separate broader protection from disclosure than the attorney-client privilege. *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). "Work-product protection applies if the company or counsel created the documents 'because of' a party's 'reasonable' anticipation of litigation, as opposed to its ordinary business purposes." *FirstEnergy*, 154 F.4th at 437. The work product doctrine extends broadly to facts obtained and recorded by the attorney, and the attorney's opinions and theories. *Id*. It also extends to materials prepared by an attorney's agents. *U.S. v. Nobles*, 422 U.S. 225, 238-39 (1975). The work product doctrine is an "intensely practical" doctrine that requires attention to the "circumstances

---

in which they were made); *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340–41 (6th Cir. 1997) (attorney statements that are not deliberate, clear, or unambiguous are not judicial admissions).

[6] *See also, M&C Holdings v. Great Am. Ins. Co*., 2021 WL 4453636, at *8 (S.D. Ohio Sept. 29, 2021) (privilege applies to non-lawyer third parties who facilitate legal advice); *Genesco, Inc. v. Visa U.S.A., Inc.*, 296 F.R.D. 559, 581 (M.D. Tenn. 2014) (recognizing *Upjohn* and holding that the privilege includes an agent, such as a forensic accounting firm, retained to assist legal counsel by conducting an investigation for the purpose of providing legal advice).

surrounding the documents' creation." *FirstEnergy*, 154 F.4th at 438. The fact that there was a dual purpose for seeking legal advice, such as a business purpose, does not eliminate work product protection.  *See id*. at 438 ("[I]t will be the rare company that will not also have business purposes for seeking essential legal advice" when faced with "high-stakes" allegations).

As discussed above, the communications at issue are protected by the attorney work product doctrine. The Paoletti declarations affirmatively establish that Porter Wright, Perkins Coie, and Carpenter Lipps were hired because both litigation and a federal administrative proceeding were anticipated and then occurred.  As the Court stated, the First Paoletti Declaration makes "very clear that all the communications between Ohio State and Perkins Coie would be covered by the work product protection" under *FirstEnergy*. Tr. of May 8, 2026 Status Conference at PageID# 11277:13-17. This Court also correctly observed that the work product doctrine can apply to an investigation that is independent. *Id*. at PageID# 11278:6-25. The Second Paoletti Declaration provides further support for these conclusions, including clarifying Porter Wright's statement in an unrelated brief in the separate subpoena matter regarding Perkins Coie's retention. *See* Case No. 2:19-mc-38, ECF No. 67. Specifically, OSU retained Porter Wright, which then retained Perkins Coie to conduct an independent investigation and provide updates to Porter Wright and OLA throughout the course of its investigation, because of anticipated, and then actual, legal and regulatory threats. *See* Second Paoletti Decl. at ¶ 9. While Perkins Coie was not retained to provide direct legal advice related to litigation and regulatory actions, the information Perkins Coie provided to Porter Wright and OLA as its investigation unfolded assisted OLA in providing such legal advice to the University. *Id*.

Plaintiffs' additional argument that OSU is attempting to shield factual information from discovery lacks merit. While work product does not apply to documents created by OSU in the

9

ordinary course of business, communications related to Perkins Coie's collection of such documents reflect Perkins Coie's judgment regarding the relevance of such documents and constitute Perkins Coie's opinion work product. *See Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985), (holding that selection and identification of documents by counsel was protected as opinion work product and stating: "In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case such as this, involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research."); s*ee also M.H. v. Akron City Sch. Dist. Bd. of Educ.*, No. 5:18-CV-870, 2019 WL 4346274, at *7 (N.D. Ohio Sept. 12, 2019). (same). Indeed, if such information were discoverable, it would have a chilling effect on parties considering factual investigations or compiling information to prepare for adversarial proceedings. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613, 616 (S.D.N.Y. 1977) (stating that without the protection of the work product doctrine, counsel may not have felt free to compile information or been able to adequately prepare his client to give testimony).

## III.  <u>CONCLUSION</u>.

For the foregoing reasons, OSU's assertions of the attorney-client privilege and attorney work product doctrine should be upheld. Should the Court require additional information or evidence, such as providing representative samples of the communications to the Court for its *in camera* review, OSU will do so.[7]

---

[7] OSU reserves the right, and respectfully requests the opportunity, to respond to any arguments made by plaintiffs that are outside the scope of their May 5 Position Statement or the issues raised by the Court at the status conference.

Respectfully submitted,

DAVE YOST
ATTORNEY GENERAL OF OHIO

/s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
Michael N. Beekhuizen (0065722)
Michael J. King (0072597)
David J. Barthel (0079307)
Tyler K. Ibom (0085928)
Joseph B. Kunkel (0087007)
Gregory R. Dick (0097816)
CARPENTER LIPPS LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
Phone: (614) 365-4100
Fax: (614) 365-9145
carpenter@carpenterlipps.com
bricker@carpenterlipps.com
beekhuizen@carpenterlipps.com
king@carpenterlipps.com
barthel@carpenterlipps.com
ibom@carpenterlipps.com
kunkel@carpenterlipps.com
dick@carpenterlipps.com

*Special Counsel for Defendant*
*The Ohio State University*

11

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on May 13, 2026.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel.  The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Michael H. Carpenter

*Trial Attorney for Defendant*
*The Ohio State University*